UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  v.<br><br>JIN GUANGHUA,<br>          Defendant. | Criminal Action No. 23-91-2 (CKK) |

**MEMORANDUM OPINION & ORDER**
(January 8, 2025)

At a recent status hearing in this matter, Defendant Jin Guanghua reported that he "intends to proceed to trial swiftly," indicated that he would object to proposed continuances, and requested that the Court set a trial date. *See* Min. Order (Dec. 6, 2024). The Government "responded that moving toward trial would be premature" because "this case is unusually complex due to the volume of discovery, need for foreign witnesses, and complexity of the underlying facts." *Id.* At the Court's order, the Government filed a [33] Motion for Exclusion of Time Under the Speedy Trial Act ("Gov't's Mot."). Jin then filed a [34] Response in Opposition to that motion ("Def.'s Resp."). Having considered the parties' briefing, the present record, and the applicable law, the Court now **GRANTS** the Government's Motion and **ORDERS** that the Speedy Trial Act clock be tolled for a period of 180 days beginning from January 10, 2025 due to the unusual complexity of this matter. 18 U.S.C. § 3161(h)(7)(B)(ii).

**I. BACKGROUND**

In March 2023, a grand jury returned a 12-count indictment charging Jin—alongside Co-Defendants Sim Hyon-Sop, Qin Guoming, and Han Linlin—with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344, 1349 (Count One); Conspiracy to Violate and Violations

1

of the International Emergency Economic Powers Act, in violation of 50 U.S.C. § 1705(a) (Counts Two through Six); and Conspiracy to Launder Monetary Instruments and Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956(h), (a)(2)(A) (Counts Seven through Twelve). Indictment, ECF No. 13.  The gravamen of the Government's allegations is that Jin and his Co-Defendants engaged in a decade-long conspiracy to generate revenue for the Democratic People's Republic of Korea ("North Korea") by procuring bulk shipments of raw tobacco to North Korean state-owned entities for use in counterfeit cigarette trafficking and by helping these North Korean entities illegally access the U.S. financial system to buy tobacco with U.S. dollars. *See generally id.*  Jin—a Chinese national and Australian resident—is alleged to have operated business entities registered across the globe that served as intermediaries for these transactions and obfuscated the true purpose of the tobacco shipments. *Id.* ¶¶47–52.

Although the record is unclear on this point, Jin claims to have been arrested in Australia sometime in 2023, where he was detained while awaiting extradition to the United States. *See* Def.'s Resp. at 1–2.  In September 2024, Jin was extradited to the United States and made his initial appearance in this District before Magistrate Judge G. Michael Harvey. Min. Entry (Sept. 30, 2024).  Magistrate Judge Harvey ordered that Jin be detained. *Id.*  Jin's Co-Defendants remain at large and are fugitives. *See* Reassignment Order, ECF No. 23.

## II. DISCUSSION

"The Speedy Trial Act requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." *Henderson v. United States*, 476 U.S. 321, 326 (1986).[1]  The Act provides for several

---

[1] Because the Speedy Trial Act is concerned with the *latest* of these dates, the relevant triggering date for purposes of the Act in this case is September 30, 2024—the date Jin first appeared before a judicial officer in this District—not the date of his indictment or the date of his detention in Australia prior to extradition. *See* Min. Entry (Sept. 30, 2024).

2

"periods of delay" which "shall be excluded" from the calculation of a defendant's 70-day deadline. 18 U.S.C. § 3161(h). Among these is Section 3161(h)(7)(A), which applies when a court finds that "the ends of justice served by taking such action"—that is, excluding time and continuing pre-trial proceedings instead of moving to trial—"outweigh the best interest of the public and the defendant in a speedy trial."

"The substantive balancing underlying" the decision whether to grant an excludable ends-of-justice continuance "is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014). But the Act provides a non-exclusive list of factors that the court "shall consider in determining whether to grant a continuance" under Section 3161(h)(7). 18 U.S.C. § 3161(h)(7)(B). Most relevant here is the consideration:

> Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for proceedings or for the trial itself within the time limits established by this section.

*Id.* § 3161(h)(7)(B)(ii). Based on the totality of the circumstances, the Court concludes that this case is so unusual and complex due to the nature of this prosecution that it must toll Speedy Trial time for 180 days beginning on January 10, 2025.

*First*, the nature of this prosecution leaves the Court with a firm conviction that adequate preparation for trial cannot occur on an ordinary timetable. This case concerns a decade-long conspiracy involving four named co-conspirators, twelve counts, more than a dozen foreign business entities, hundreds of relevant transactions using foreign bank accounts, and millions of dollars. *See* Gov't's Mot. at 1–5; *see generally* Indictment. Courts have invoked Section 3161(h)(7)(B)(ii) in similarly complex matters—including over a defendant's objection. *See United States v. Speight*, 941 F. Supp. 2d 115, 118 (D.D.C. 2013) (JEB) (noting the case involved "an allegedly lengthy and far-reaching conspiracy" and applying

3

Section 3161(h)(7)(B)(ii) over defendant's objection); *United States v. Banks*, 761 F.3d 1163, 1177 (10th Cir. 2014) (affirming application of Section 3161(h)(7)(B)(ii) in bank and mail fraud prosecution where underlying charges "spanned several years . . . and implicated Defendants in crimes involving forty-two companies"); *United States v. Salad*, 779 F. Supp. 2d 509, 513–14 (E.D. Va. 2011) (applying Section 3161(h)(7)(B)(ii) over defendant's objection in multi-defendant international piracy prosecution).

*Second*, this case is particularly complex because it is likely to involve classified information. The Government has "requested the appointment of a [Classified Information Security Officer] CISO" and "anticipates filing a motion pursuant to the Classified Information Procedures Act (CIPA), Section 4." Gov't's Mot. at 2 n.1. "Although CIPA briefing does not render a case complex or unusual *per se*, multiple courts hav[e] tolled Speedy Trial time on this basis." *United States v. Raymond*, 656 F. Supp. 3d 236, 240 (D.D.C. 2013) (CKK) (citing *Salad*, 779 F. Supp. 2d at 513; *United States v. Warsame*, No. 04-cr-29, 2007 WL 748281 (D. Minn. Mar. 8, 2007)). The Court is presently unaware of the precise contours of CIPA briefing in this matter. But bearing in mind that this case concerns alleged violations of sanctions regimes aimed at inhibiting the proliferation of weapons of mass destruction in North Korea, the Court is sensitive to the possibility that proceedings pursuant to CIPA may be necessary and extensive.

*Third*, the volume and nature of the evidence weigh in favor of finding this case unusually complex. According to the Government, documentary discovery in this matter encompasses more than 26,000 pages, including foreign bank records and financial transactions. Gov't's Mot. at 2. Jin's prior counsel requested an ends-of-justice continuance after receiving just the first tranche of this discovery because reviewing it with Jin "would be time-consuming given the volume of discovery materials." Min. Order (Oct. 8, 2024). Jin's review of the discovery will be particularly

time-consuming because he is presently detained and will likely be unable to access discovery materials outside the physical presence of his attorney or his attorney's representative. *See United States v. Salahmand*, No. 08-cr-192, 2008 WL 11356766, at *2 (D.D.C. Oct. 30, 2008) (CKK) (noting this issue). Aside from documentary evidence, this case will also involve recorded statements from an undercover agent, expert testimony regarding the North Korean government and U.S. sanctions regimes, and the testimony of foreign witnesses—some of whom the Government anticipates deposing remotely pursuant to Federal Rule of Criminal Procedure 15. *See* Gov't's Mot. at 2. The sheer volume and variety of the discovery and evidence in this matter weighs in favor of finding this case unusual and complex and concluding that it is unreasonable to expect adequate preparation for proceedings or for the trial itself without an ends-of-justice continuance.[2]

*Fourth*, this complexity is exacerbated further by the prevalence of foreign languages in this matter and Jin's own need for English-to-Chinese interpretation. Courts in this Circuit and elsewhere have considered the necessity of translation in applying Section 3161(h)(7)(B)(ii). *See, e.g.*, *Rice*, 746 F.3d at 1078 (holding a case where wiretapped conversation were in Spanish "was sufficiently complex to justify the continuance"); *United States v. Pargas-Rivas*, 689 F. Supp. 2d 25, 28 (D.D.C. 2009) (RMC) (similar); *United States v. Perez-Alcala*, No. 12-20066, 2012 WL 2798797, at *1 (D. Kan. July 9, 2012) (noting that, even after the Government had translated documents, "defense counsel will need an opportunity to review and determine the accuracy of

---

[2] *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 204 (D.C. Cir. 2013) (describing the need to access "witnesses residing outside the United States" as a "perfectly adequate reason[]" for granting an ends-of-justice continuance); *United States v. Morrow*, 102 F. Supp. 3d 232, 242 (D.D.C. 2015) (CKK) (discussing "possible expert testimony on DNA, hair, fingerprint, and firearm analysis, and the possible testimony of lay witnesses from the banks, as well as the number of potential witnesses at trial); *Raymond*, 656 F. Supp. 3d at 240 (noting "that a substantial amount of evidence and witnesses reside abroad"); *Salad*, 779 F. Supp. 2d at 513 (recognizing the "logistical difficulties" associated with the need "for counsel to seek information and evidence from outside the United States as a result of the location of the crimes alleged").

said translations"); *United States v. Yanez*, No. 12-cr-199, 2012 WL 5987068, at *1 (N.D. Okla. Nov. 29, 2012) (similar). In this case, Jin's prior counsel cited "the need for translation" when requesting an earlier ends-of-justice continuance. Min. Order (Oct. 8, 2024). And the Court anticipates that the continuing need for translation, in combination with Jin's detention, will render pretrial proceedings in this matter unusually difficult.

*Finally*, the Court recognizes Jin and his counsel's representation that—notwithstanding all the above—"Jin's own assessment of the time he needs to prepare for trial" weighs against granting the Government's requested continuance. Def.'s Resp. at 5. The Court has carefully considered Jin's interest in proceeding to trial swiftly, the interest of the public in the swift resolution of this matter, and the defense's assessment of the necessary preparations. But the Court is also mindful that the Government anticipates the continued provision of "additional discoverable materials" to Jin "on a rolling basis." Gov't's Mot. at 2 n.2. And the Court notes that Jin's counsel has already represented to the Court that he "anticipates [engaging in] significant pretrial briefing," which will undoubtedly divide the parties' attention and hamper trial preparation. Min. Order (Dec. 6, 2024).[3]

In light of the considerations described above, the Court concludes that this "case is so unusual [and] so complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits" ordinarily applicable under the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii). For that reason, the Court also concludes that the "ends of justice served by" continuing pretrial proceedings and excluding Speedy Trial time "outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Finally,

---

[3] Although the Speedy Trial Act automatically excludes periods of delay resulting from pretrial motions practice, *see* 18 U.S.C. § 3161(h)(1)(D), Courts also consider the expected volume of, and delay occasioned by, such motions practice when weighing prospective tolling under Section 3161(h)(7)(B)(ii), *see, e.g.*, *Raymond*, 656 F. Supp. 3d at 240–41; *Warsame*, 2007 WL 748281, at *4.

considering the nature of the complexities inherent in this matter, the parties' representations about the scope of anticipated pretrial proceedings, and the Court's experience with similarly complex matters, the Court further concludes that an excludable continuance of 180 days is warranted under the circumstances.

### III. CONCLUSION & ORDER

Accordingly, it is, this 8th day of January 2025, hereby:

**ORDERED** that the Government's [33] Motion for Exclusion of Time Under the Speedy Trial Act is **GRANTED**; and it is further

**ORDERED** that Defendant Jin Guanghua's Speedy Trial Act clock be tolled for a period of 180 days, beginning from January 10, 2025 and continuing to July 9, 2025.

Taking into account this continuance, the Court calculates that Jin's new 70-day deadline is September 17, 2025 and that Jin's new 90-day deadline is October 7, 2025.

**SO ORDERED.**

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge