**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

## <u>DEFENDANT'S MOTION FOR LEAVE TO UNMASK COOPERATING COMPANY 1<br>OR FOR AN EVIDENTIARY HEARING</u>

The government's case against Mr. Jin depends largely upon evidence obtained from a single entity—a tobacco supplier. Mr. Jin has thus far complied with the government's request to refrain from identifying that entity and has referred to it, in public filings, as Cooperating Company 1 (CC1). To continue doing so, however, would undermine both Mr. Jin's defense and the public's right to know what happens in court. Therefore, Mr. Jin hereby moves through counsel for leave to unmask CC1 or, in the alternative, for an evidentiary hearing.

### PROCEDURAL HISTORY

The government indicted Mr. Jin on March 21, 2023. Many of the allegations against Mr. Jin expressly referred to CC1 or its purported representatives. *See* Indictment ¶¶ 53–54, 56–60, 62–66, 75. The Indictment described CC1 only as "a tobacco company located outside of Asia." *Id.* ¶ 53.

Undersigned counsel entered his Notice of Appearance on November 15, 2024. ECF No. 30. On March 14, 2025, we asked the government whether court filings should redact or anonymize references to CC1. The government replied as follows:

> On the public filings, [CC1] has asked that they be permitted to testify under a pseudonym, given concerns that they have about safety. The indictment masks their identity and also their location. [CC1]'s position is that even identifying them as a tobacco supplier from a specific location would be identifying, given their industry.

We would request that you refer to [CC1] as a masked entity, and their location likewise masked, until we can get this issue before the Court for review.

The defense has already filed numerous motions that turned on CC1's actions and trustworthiness. *See* ECF Nos. 46, 47, 73, 77. We addressed CC1's denials of knowingly conducting business with North Korea, which were contradicted by CC1's own emails showing a course of business that lasted for years, which CC1 hoped to continue. ECF No. 46 at 9–10; ECF No. 73 at 5–7; ECF No. 77 at 1–3. This persistent deception raises serious doubts about CC1's honesty. See ECF No. 46 at 10. We also addressed CC1's strong motivation to curry favor with the U.S. government, both to access frozen assets and to avoid criminal prosecution itself. See ECF No. 46 at 6–10. The government's concealment of these lies and crimes raises further concerns. See ECF No. 73 at 2–8; ECF No. 77 at 1–5. In litigating these issues    , we have complied with the government's request for anonymity. *See* ECF No. 46 at 2 n.2.

On May 28, 2025, by email, we followed up with the government about various discovery issues. We stated that we believed there was no reason for CC1 to remain anonymous, and asked whether the government intended to keep CC1 and its witnesses anonymous at trial. The government responded that it would file a motion *in limine* concerning CC1's anonymity. It did not answer our question regarding anonymity at trial.

## ARGUMENT

The government has provided only the vaguest possible grounds to keep CC1's identity secret. It has presented no evidence of any actual threat to CC1. Neither has it shown that unmasking CC1 would impose any other significant harm. By contrast, preserving CC1's anonymity would seriously prejudice the defense case. Even pretrial restrictions could hinder Mr. Jin's investigation and motions, while tainting him in the world's eyes.

Neither should "the important interests of the public and the press (as a part of that public) in open judicial proceedings [be] rejected and cast aside as of little value or significance." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 407 (1979) (Blackmun, J., dissenting in part). The press and the public have "an intense need and a deserved right to know about the administration of justice . . . and all the actors in the judicial arena." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 604 (1980) (Blackmun, J., concurring). Naturally, those actors include witnesses, whose "open examination . . . is much more conducive to the cleaning up of the truth, than the private and secret examination . . . ." *Id.* at 597 (Brennan, J., concurring in judgment) (quoting 3 William Blackstone, Commentaries *373).

The public has a right to know what CC1 is, and Mr. Jin has a need to tell them. The Court should permit him to do so.

I.   **GIVEN THE FAR GREATER PREJUDICE TO MR. JIN FROM HIS ACCUSER'S ANONYMITY THAN TO CC1 FROM BEING PUBLICLY IDENTIFIED, AND THE PUBLIC'S STRONG INTEREST IN KNOWING THE ENTITY AT THE HEART OF A CRIMINAL PROCEEDING, THE GOVERNMENT CANNOT SHOW THAT CC1 IS ENTITLED TO ANONYMITY.**

"[H]aving judicial proceedings fully open to the public so that the public may fully assess the merits of the lawsuit and the quality of the courts is in the public interest." *Qualls v. Rumsfeld*, 228 F.R.D. 8, 13 (D.D.C. 2005). More than that, the presumption of public access to court proceedings—a presumption that "is both customary and constitutionally-embedded"—is "a bedrock principle of our judicial system." *In re Sealed Case*, 971 F.3d 324, 325-26 (D.C. Cir. 2020) (quotations and alterations omitted). "Public openness may cause all trial participants to perform their duties more conscientiously, induce unknown witnesses to come forward with relevant testimony, and generally foster an appearance of fairness, thereby heightening respect for the judicial process." *In re U.S. Office of Personnel Mgmt. Data Security Breach Litig.*, 928 F.3d 42, 82 (D.C. Cir. 2019) (Williams, J., dissenting in part) (quotations omitted).

3

In criminal cases in particular, considering the constitutional rights at stake, circumstances overcoming public access "will be rare . . . and the balance of interests must be struck with special care." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). Such concerns "extend[] beyond the actual proof at trial." *Presley v. Georgia*, 558 U.S. 209, 212 (2010). "Any time a court limits public access— even to a small part of a case, and even for a limited period—it adds to the slow drip that can erode public confidence over time." *Tolton v. Jones Day*, C.A. No. 19-945 (RDM), 2019 WL 4305789, at *2 (D.D.C. Sept. 11, 2019).

**A.  The government bears the burden to show that CC1 must be kept anonymous.**

Here, because the government seeks to keep CC1 anonymous, it bears the burden of proving that anonymity is justified.  "The presumption of public access is overcome 'only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Nat'l Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008) (quoting *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for the Dist. of Ariz.*, 156 F.3d 940, 949 (9th Cir. 1998)). "[B]ecause pseudonymous filing impinges on values key to fair adjudication and a free society," *In re U.S. Office of Personnel Mgmt.*, 928 F.3d at 81 (Williams, J., dissenting in part), "[t]he rare dispensation of allowing parties to proceed pseudonymously is only justified in the critical case, or the unusual case." *Qualls*, 228 F.R.D. at 10 (quotations omitted). To "seek [this] rare dispensation from the court," an entity must "bear[] the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." *Sealed Case*, 971 F.3d at 326 (quotation omitted); *see In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) ("there is a strong presumption in favor of public access to judicial proceedings" (quotations omitted)); *see also, e.g.*, *Doe 1 v. Benoit*, No. 19-mc-00059, 2018 WL 11364383, at *4 (D.D.C. Nov. 20,

2018) ("The plaintiff has failed to meet the 'heavy burden' of establishing that her privacy interests outweigh the public's interest in knowing her [and witnesses'] identity").

**B. This Court may apply the *James* test or the *Hubbard* test but, under either (or both), the government cannot meet its burden to support anonymity for CC1.**

In civil cases, when a party requests to proceed pseudonymously, courts should begin by considering five factors derived from *James v. Jacobson*. *See In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019) ("*Whistleblower Case*") (quoting *James*, 6 F.3d 233, 238 (4th Cir. 1993)).[1] These factors are:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* CC1's desire for anonymity is somewhat analogous to a civil party's request for the same. *Cf. Benoit*, 2018 WL 11364383, at *3-4 (applying *James* factors where plaintiff seeks to use pseudonymity for herself and several witnesses); *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 152 (D.D.C. 2011) (applying *James* factors "given the nature of the information that plaintiff seeks to file under seal and *ex parte*").

Recently, however, this Court has applied the *Hubbard* sealing factors to a nonparty's motion for anonymity in a criminal case. *United States v. Lichtenstein*, — F. Supp. 3d —, Crim.

---

[1] In the D.C. Circuit, the *James* factors have sometimes been referred to as the *Chao* factors. Regardless of terminology, the factors are the same. *Compare Chao*, 587 F. Supp. 2d at 99, *with James*, 6 F.3d at 238.

No. 23-239 (CKK), 2025 WL 782339, at *2 (D.D.C. Mar. 10, 2025) (citing *Leopold*, 964 F.3d at 1127, 1131); *see United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). These factors are:

> (1) the need for public access to the documents at issue;
>
> (2) the extent of previous public access to the documents;
>
> (3) the fact that someone has objected to disclosure, and the identity of that person;
>
> (4) the strength of any property and privacy interests asserted;
>
> (5) the possibility of prejudice to those opposing disclosure; and
>
> (6) the purposes for which the documents were introduced during the judicial proceedings.

*Leopold*, 964 F.3d at 1131.

Both tests address similar concerns and include many overlapping criteria. *See, e.g.*, *Kiakombua v. McAleenan*, No. 19-cv-1872 (KBJ), 2019 WL 11322784, at *1–2 (D.D.C. July 3, 2019) (Ketanji Brown Jackson, J.) (describing *James* and *Hubbard* as "two different but analogous tests" and "agree[ing] with Chief Judge Howell's assessment that the *James* and *Hubbard* factors address the same two general concerns").[2] Regardless of the precise test applied, these circumstances warrant public unmasking of CC1.

---

[2] *See also Lichtenstein*, 2025 WL 782339, at *2 (incorporating the *James* factors into the *Hubbard* analysis and finding both to favor the same outcome); *Benoit*, 2018 WL 11364383, at *4 ("Although this Court has analyzed the motion under the [*James*] factors, the result would be no different under the *Hubbard* analysis"); *Doe v. Sessions*, C.A. No. 18-0004 (RC), 2018 WL 4637014, at *3 (D.D.C. Sept. 27, 2018) ("The [*James*] and *Hubbard* factors weigh the same two general concerns"); *Yaman*, 786 F. Supp. 2d at 152 n.2 (noting "that the outcome of its analysis would be the same under *Hubbard*" as under *James*); *cf. Whistleblower Case*, 931 F.3d at 97 (*James* factors "serve well as guideposts from which a court ought to begin its analysis," but "should not lead a trial court to engage in a wooden exercise of ticking the five boxes").

### i. *The public needs and deserves access to the identity of CC1, which is essential to many of the issues before the Court in a criminal case.*

The first and sixth *Hubbard* factors favor disclosure.[3] The public is entitled to understand judicial rulings, especially in a criminal prosecution, and CC1's identity goes to many important disputes that the Court must resolve.

"[T]he presumption of transparency is normally accentuated in cases like this one where the government is a party." *Doe v. Burrows*, C.A. No. 24-3570, 2025 WL 1158071, at *3 (D.D.C. Apr. 21, 2015) (quotation omitted); *cf. Sealed Case*, 971 F.3d at 329 ("there is a heightened public interest when an individual or entity files a suit against the government"). In particular, courts "have attached a heightened public interest" to criminal proceedings. *Burrows*, 2025 WL 1158071, at *3.

Furthermore, CC1 plays a crucial role in the government's case, and the defense has filed numerous motions based on it. Even a much smaller role than this one would support disclosure. *See Torrens*, 560 F. Supp. 3d 283, 294 (D.D.C. 2021) (sixth *Hubbard* factor favored disclosure when the information was "submitted for the Court's consideration" through reference in submissions to support a plea agreement); *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149 (D.D.C. 2010) (finding that the need for public access favors disclosure even when the minor role of purportedly damaging allegations "may dilute, but does not destroy, the public's need to access them"). That information was introduced for substantive purposes "will oftentimes carry great weight when a sealed document is considered as part of judicial decisionmaking." *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022) (quotations omitted). "Disclosure is the norm

---

[3] The *James* test has no equivalent to the first, second, or sixth *Hubbard* factors. Presumably, this divergence is because those factors are document-specific, whereas party anonymity would affect all documents in the litigation.

where the parties explicitly intended the Court to rely on the sealed materials in adjudicating their dispute." *Burrows*, 2025 WL 1158071, at *4 (cleaned up).

Furthermore, the disparity of treatment between CC1 and the companies associated with Mr. Jin raises concerns about "whether the agency has reasonably and evenhandedly applied the statutory and regulatory scheme." *Sealed Case*, 971 F.3d at 329. In other words, when the government has prosecuted Mr. Jin for conducting business with North Korea but not CC1 for doing the same, "[t]he public has a particularly strong interest in . . . understanding the government's exercise of discretion in these cases." *Torrens*, 560 F. Supp. 3d at 294. Such understanding requires knowledge of CC1's identity, so the public can assess the government's decisions in the context of CC1's full activity.

### ii. CC1 has asserted neither property nor privacy interests, and must prove any risk of retaliation.

The first and second *James* factors support unmasking CC1, as does the fourth *Hubbard* factor. There are no property rights at issue, CC1 has not identified any significant intrusions on personal privacy, and its purported fear of retaliation is unfounded. Indeed, its supposed fear of retribution—premised on North Korea's ability to identify it just from its location—is difficult to reconcile with its representations that it did no more than unwittingly ship tobacco to China. North Korea would not know every company that supplied its business partners; it would know the companies that it transacted business with directly.

Privacy interests also are not at stake. As a company, CC1 has no personal privacy rights in keeping its identity secret. *See Sealed Case*, 971 F.3d at 327 ("it is far from clear whether companies even have 'personal' privacy rights beyond the traditional privileges . . . ."); *cf. Fed. Commc'ns Comm'n v. AT&T Inc.*, 562 U.S. 397, 403-06 (2011) (explaining that "personal privacy" generally does not refer to the privacy interests of corporations). Even if it did, this case does not

"involve[e] matters of a highly sensitive and personal nature." *Chao*, 587 F. Supp. 2d at 99

(quoting *Doe v. Frank*, 951 F.2d 320, 322-23 (11th Cir. 1992)); *see Hubbard*, 650 F.2d at 324

("Valid privacy interests might be asserted . . . in documents which reveal the intimate details of

individual lives, sexual or otherwise"); *Burrows*, 2025 WL 1158071, at *4 (finding no privacy

interest under *Hubbard* because the information "does not reveal the type of intimate details this

factor covers and thus should be released"). Such matters must go beyond mere grounds for

embarrassment. "Personal embarrassment is normally not a sufficient basis for permitting

anonymous litigation." *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 96 (D.D.C. 2015)

(citing authority); *see also Doe v. Fed. Bureau of Investigation*, C.A. No. 10-49 (RMC), 2010 WL

11673793, at *2 (D.D.C. Aug. 11 2010) (allegations of misconduct are "embarrassing, and

potentially not good for future employment, but not so personal or sensitive to call for

pseudonymous litigation"). They are limited to "intimate issues such as sexual activities,

reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors." *Sealed

Case*, 971 F.3d at 327. CC1's name would not reveal any such intimate details.

    Although CC1 asserts possible retaliation by North Korea, that retaliation is most likely

the mere withdrawal of business. Economic concerns are not enough to justify concealing one's

identity from the public. *See Zapp*, 746 F. Supp. 2d at 149-50 (concerns about effects on

"reputation and property interests as a practicing attorney" are insubstantial under *Hubbard* and

thus do not favor sealing); *Qualls*, 228 F.R.D. at 12 ("a threat of economic harm alone does not

generally permit a court to let litigants proceeds under pseudonym"); *see also Sealed Case*, 971

F.3d at 328 ("the Refinery itself faces no risk of physical or mental harm either. The asserted

injuries are purely economic"); *Doe v. Teti*, No. 1:15–mc–01380, 2015 WL 6689862, at *2 (D.D.C.

Oct. 19, 2015) (rejecting argument that privacy interests at issue are more than economic); *West*

*Coast Prods., Inc. v. Does 1–15829*, 275 F.R.D. 9, 13 (D.D.C. 2011) (finding desire to avoid copyright litigation not significant enough to justify anonymous filing).

To the extent that CC1 does claim to fear physical danger, it must prove that fear to be justified, yet has not done so. "[S]peculative and attenuated" concerns are "too general to support [an] asserted need for secrecy." *Torrens*, 560 F. Supp. 3d at 293. More specifically, "[v]ague and unsubstantiated fears of retaliation are not sufficient to support pseudonymous treatment." *Tolton*, 2019 WL 4305789, at *3; *see, e.g.*, *Sealed Case*, 971 F.3d at 327 ("But the Refinery offers nothing concrete to establish that revealing its identity would cause it any cognizable harm. . . . There is no showing of a substantial risk of privacy injury that *would* occur").[4] Although the government supports CC1's request, "[t]o justify secrecy, the government must articulate a *specific* threat and may not generally invoke its interests . . . without articulating how [disclosure] might undermine particular security interests." *Torrens*, 560 F. Supp. 3d at 294.

"Courts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests." *Sealed Case*, 971 F.3d at 328 (quoting *Doe v. Public Citizen*, 749 F.3d 246, 274 (4th Cir. 2014)). And those are all that CC1 has offered.

---

[4]    *See also Benoit*, 2018 WL 11364383, at *3 ("the Court remains unconvinced that the plaintiff has shown a non-speculative risk of the type of physical or mental harm that typically justifies the need to file under a pseudonym"); *Teti*, 2015 WL 6689862, at *3 ("Doe does not provide any evidence that disclosure will pose a risk of retaliatory physical or mental harm"); *Qualls*, 228 F.R.D. at 12 (rejecting pseudonymity based on "vague, unsubstantiated fears of retaliatory actions by higher-ups").

### iii. CC1, as a corporation, would suffer no prejudice from unmasking. By contrast, its continued anonymity could seriously hinder Mr. Jin's defense.

The third and fifth *Hubbard* factors, and the remainder of the *James* factors, support unmasking.[5] CC1 is not a vulnerable individual but a corporate entity. Mr. Jin, on the other hand, is a single person facing the full might of the U.S. government. By nature of his position, and of the details of this prosecution, he faces much greater prejudice than does CC1.

Even read narrowly, the third and fourth *James* factors support unmasking, because CC1 is not a child (or any kind of natural person) and Mr. Jin is not a governmental entity. *See Bernabei & Wachtel*, 85 F. Supp. 3d at 96 ("Plaintiff was an adult at the time of the events in question and is suing private individuals and entities, factors which weigh against anonymity"); *Doe v. Cabrera*, 307 F.R.D. 1, 7–8 (D.D.C. 2014) (that plaintiff is a minor and defendant is a private litigant both weigh against anonymity). Read more broadly, however, it becomes clearer still that these factors disfavor anonymity. Children, of course, are much less able to defend themselves than are adults. *See Cabrera*, 307 F.R.D. at 7 (citing *Doe v. De Amigos, LLC*, C.A. No. 11-1755 (ABJ), 2012 WL 13047579 (D.D.C. Apr. 30, 2012)); *Yaman*, 786 F. Supp. 2d at 153-54 (citing *Doe v. Del Rio,* 241 F.R.D. 154, 158 (S.D.N.Y. 2006)). Similarly, the government is treated less favorably in recognition that "governmental bodies do not share the concerns about 'reputation' that private *individuals* have when they are publicly charged with wrongdoing." *Cabrera*, 307 F.R.D. at 8 (emphasis added) (quoting *De Amigos*, 2012 WL 13047579, at *3); *see Teti*, 2015 WL 6689862, at *3 (examining reasons for anonymity in suits against government entities). Courts have

---

[5]    Under the third *Hubbard* factor, the fact of CC1's request for anonymity and the government's support for that request weigh slightly in favor of granting that request. That factor, however, considers not just the objection but also the identity of the party objecting. Furthermore, "this factor must be considered in the context of the fourth and fifth factors." *Torrens*, 560 F. Supp. 3d at 293. That CC1 is a corporation with no significant interests and facing no prejudice, whereas Mr. Jin is an individual whose freedom is jeopardized by anonymity, shifts the balance towards unmasking.

expanded this reasoning to recognize power disparities and the comparative risk of unfairness. *See Benoit*, 2018 WL 11364383, at *4 (less risk of unfairness to government agencies than to an individual government employee); *De Amigos*, 2012 WL 13047579, at *2 (young adults have a greater need for privacy than would older adults). This reasoning is consistent with the fifth *James* factor, as well as with the *Hubbard* factors, which likewise consider the identity of any objectors and the risks of prejudice.

CC1 is a corporation. Such entities typically possess considerable resources and legal expertise. Moreover, like the government, they do not face stigma in the way that individual human beings do. *See De Amigos*, 2012 WL 13047579, at *3 (where the defendant is a private corporation, rather than an individual, "the stigma that the courts feared would attach to the defendants in those cases is not of particular concern here"). Just as importantly, in this case, CC1 is aligned with the government against Mr. Jin. Individual defendants in criminal trials are far more susceptible to prejudice than the government and its allies. *See James*, 6 F.3d at 239 n.3.

These particular facts illustrate those general concerns. CC1 is not at any risk of "legal prejudice—i.e., harm in future litigation." *Zapp*, 746 F. Supp. 2d at 150; *see Burrows*, 2025 WL 1158071, at *4 ("Plaintiff has identified only generalized reputational and employment harm as well as embarrassment that would follow from disclosure, rather than how disclosure would harm him in future suits"). By contrast, Mr. Jin faces up to 30 years in prison. *See* 18 U.S.C. §§ 1344, 1349. Anonymity at trial would make such a penalty far more likely. *See* Section II, *infra*. Similar problems would arise at any evidentiary hearings requiring cross-examination. But even less severe pretrial restrictions could undermine Mr. Jin's defense.

The public may believe that CC1 really does face a risk of harm, which it may wrongly infer comes from Mr. Jin, or it may condemn Mr. Jin for his perceived association with those who

would necessitate such protections. *Cf. Tolton*, 2019 WL 4305789, at *4 ("[P]seudonymous treatment carries some risk of unfairness to the opposing party . . . because Plaintiffs' argument for pseudonymous treatment is premised on the unsupported contention that the [defendant] will seek to retaliate . . . ."). Mr. Jin therefore "does have a strong interest in avoiding the tarnish that comes with [CC1's] request for anonymity." *Id.*

There are also numerous concerns about full truth and accuracy. See *Waller*, 467 U.S. at 46 ("In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury"). Possible witnesses against CC1 must know of its involvement if they are to reveal themselves. *See U.S. Office of Personnel Mgmt.*, 928 F.3d at 82 ("Public openness may . . . induce unknown witnesses to come forward with relevant testimony") (Williams, J., dissenting in part). CC1, freed from accountability or risk of contradiction, may feel emboldened to misrepresent the facts even more than it already has. *See Richmond Newspapers*, 448 U.S. at 597 ("a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal") (Brennan, J., concurring in judgment) (quoting 3 William Blackstone, Commentaries *373). And masking CC1 likely means masking its agents and employees. "The use of so many pseudonyms makes it more likely that the defendants' ability to defend the action would be compromised" by anonymity. *Benoit*, 2018 WL 11364383, at *4.

## II. RESTRICTIONS AT TRIAL, OR ANY RESTRICTIONS ON MR. JIN'S INVESTIGATION, WOULD VIOLATE THE CONFRONTATION CLAUSE.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. This "right" is actually two rights: not only "the right physically to face those who testify against him," but also "the right to conduct cross-examination." *United States v. Lattimore*, 525 F. Supp. 3d 142, 146 (D.D.C. 2021) (quoting *Coy*

*v. Iowa*, 487 U.S. 1012, 1017 (1988)). The latter requires identification of witnesses and disclosure of their origin. *See Smith v. Illinois*, 390 U.S. 129, 131 (1968). "The witness' name and address open countless avenues of in-court examination and out-of-court investigation." *Id.* Yet, the government has requested to hide from the jury not only the name of CC1, but even which continent it is from.

A witness may testify anonymously only if the government "establish[es] that the witness or his family faces a concrete risk of serious harm" from testifying, and "the defendant will still be able to effectively cross-examine the witness." *United States v. Abu Khatallah*, No. 14-cr-00141 (CRC), 2017 WL 11494061, at *3 (D.D.C. Sept. 28, 2017). Neither prong is met here. CC1's vague concerns about safety are far from proof of a threat "that is 'actual and not the result of conjecture.'" *Id.* (quoting *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969)). We also cannot cross-examine CC1 at trial if we are not able to investigate it thoroughly, and it is simply impossible to cross-examine someone without revealing anything potentially identifying. For example, any reference to past activity would reveal CC1's location, unless it were phrased in terms so general as to be useless. Neither could the defense refer to any publicized accounts of wrongdoing. Again, there is also the risk that officers and employees would share in this protection, or that the jury will impute the perceived risk to Mr. Jin.

Therefore, Mr. Jin must be permitted to investigate fully and to identify CC1 at trial.

## III.    IN THE ALTERNATIVE, AN EVIDENTIARY HEARING IS NECESSARY TO ASCERTAIN CC1'S NEED FOR ANONYMITY.

If the Court declines to unmask CC1 immediately, it should order an evidentiary hearing. As discussed above, the law is clear that purported threats to witnesses must be "concrete" and "actual," *Abu Khatallah*, 2017 WL 11494061, at *3, not "[v]ague and unsubstantiated." Tolton, 2019 WL 4305789, at *3. The burden of showing such threats is on the government. Section I,

supra. Given CC1's history of lying, and the government's unquestioning acceptance of those lies, their statements must be carefully examined by the Court. Therefore, rather than denying our motion, the Court should hold a hearing at which the government may present evidence to meet its burden.

## CONCLUSION

For all of the foregoing reasons, the Court should expressly permit the defense to identify CC1 in all public filings and hearings, and should deny any requests by the government to impose sanctions for doing so or to order that CC1 be kept anonymous. If the Court declines to do so, it should hold an evidentiary hearing on the issue.

<div style="margin-left:40%">

Respectfully submitted,
By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

</div>

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,
By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com