UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | }<br>}<br>} |
| | } Criminal No. 23-CR-91-CKK |
| v. | }<br>} |
| GUANGHUA JIN, | }<br>} |
| Defendant. | }<br>}<br>} |

**DEFENDANT'S REPLY TO
THE UNITED STATES' OPPOSITION TO
HIS MOTION *IN LIMINE* TO ADMIT FOREIGN LAW**

After repeatedly citing U.N. sanctions and seeking to introduce evidence about U.N. sanctions, the government now claims that there is no reason for the court or the jury to consider U.N. sanctions. Likewise, it denies the relevance of the law of the country in which the most significant transactions took place.

The government also ignores the rule that specifically governs the admission of foreign law. The government repeatedly argues that foreign law is not admissible under the Rules of Evidence. But Rule of Criminal Procedure 26.1 specifically states that the contents of foreign law are an issue of law, to be determined by the Court, based on materials that do not need to comply with the Rules of Evidence. Neither do the disputed contents of those laws prevent the Court from making such a determination.

For the reasons given below, the Court should permit Mr. Jin to introduce at trial, without contradiction, the fact that neither U.N. sanctions nor Argentinian law prohibit the sale of tobacco to North Korea.

1

I.  **Under Rule 26.1, Which Applies Here, Foreign Law Is an Issue of Law Determined by the Court. No Particular Evidence Is Required, and Supporting Materials Need Not Be Admissible in Their Own Right.**

The government argues, at length, that foreign laws are inadmissible under the Federal Rules of Evidence and would be inappropriate to prove to a jury. In doing so, the government simply ignores the framework for resolving issues of foreign law. In recognition of these "undesirable practical consequences," treatment of foreign law as an issue of fact "was subsequently rejected with . . . Federal Rule of Criminal Procedure 26.1." *Shen v. Garland*, 109 F.4th 1144, 1154 (9th Cir. 2024) (quotation omitted). Under that Rule, "[i]ssues of foreign law are questions of law, but in deciding such issues a court may consider any relevant material or source--including testimony--without regard to the Federal Rules of Evidence." Fed. R. Crim. P. 26.1.

The government acknowledges the existence of Rule 26.1 only in a footnote—although, even there, it ignores half of the text—to argue that this motion should be denied for the failure to give "reasonable written notice." But the government cites no authority that a motion *in limine*, filed months before trial, is not reasonable written notice. Neither is there any reason for the Court to conclude as much. Motions *in limine* are useful precisely because they permit the Court to resolve such disputes in advance of trial. *See, e.g.*, *United States v. Wilkins*, 538 F. Supp. 3d 49, 63 (D.D.C. 2021) ("Motions in limine are designed to narrow the evidentiary issues at trial. Such pre-trial rulings, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations prior to trial." (cleaned up)). A ruling at this stage would permit the Court to decide the issue without confusing the jury or delaying the trial, and would provide counsel time to plan their trial strategy around the foreign law that they know will or will not be introduced.

Under Rule 26.1, disputes over the content of foreign law are legal issues for the Court to resolve. *See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 585 U.S. 33, 42, 43–44

(2018) (describing similarities between interpretation of domestic and foreign laws).[1] Therefore, any issue of foreign law runs no risk of confusing the jury. Jurors will not be asked to decide whether selling tobacco to North Korea is permitted or prohibited by U.N. sanctions or Argentine law: they will simply be told the answer, either by the Court itself or by one of the parties. The legal authorities underlying this determination do not need to be shown to the jury, and the Court may consider them regardless of whether they satisfy the Federal Rules of Evidence.

In particular, the government is entirely wrong to assert that foreign law must be presented through an expert, "for the Rule says that judges 'may' rather than 'must' receive expert testimony and adds that courts may consider 'any relevant material or source.' " *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628 (7th Cir. 2010) (quoting Fed. R. Civ. P. 44.1);[2] *see United States v. Bankman-Fried*, No. S6 22-cr-0673 (LAK), 2023 WL 6162865, at *1 (S.D.N.Y. Sept. 21, 2023) (excluding expert testimony by a foreign lawyer because the meaning of legal documents governed by foreign law is a question for the judge). Indeed, courts are free to disregard the parties' submissions and conduct their own research. *See Animal Sci. Prods.*, 585 U.S. at 42 ("Correspondingly, in ascertaining foreign law, courts are not limited to materials submitted by the parties; instead, they may consider any relevant material or source, whether or not admissible under the Federal Rules of Evidence." (cleaned up)); *see also, e.g.*, *United States v. Peterson*, 812 F.2d 486, 491 (9th Cir. 1987) (considering the constitution of the Philippines, Philippine statutes,

---

[1]  Although the Supreme Court was describing Civil Rule 44.1, Rule 26.1 "establishes substantially the same rule for criminal cases." *Animal Sci. Prods.*, 585 U.S. at 42 n.4 (quotation omitted).

[2]  The pertinent language of Civil Rule 44.1 is extremely similar to Rule 16.1: "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."

and a Philippine law review note). And this "is an improvement over prior practice for a number of reasons." Arthur R. Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death-Knell for a Die-Hard Doctrine*, 65 Mich. L. Rev. 613, 659 (1967). In fact, even at the adoption of Rule 26.1, "federal courts [had] not felt bound by the testimony of experts and upon occasion [had] placed little or no credence in their opinions." *Id.* at 658. The government's purported need for expert testimony is not supported by any case law.[3]

## II. The Minimal Risk of Juror Nullification Is Outweighed by the Relevance.

Rule 26.1 precludes any risk of jury confusion. Neither is there any risk of jury nullification. The government provides no theory as to why an American jury might acquit a defendant in an American trial under American law, particularly on such an emotive topic as international sanctions. Two of the cited cases do not even relate to foreign law. *See United States v. Buchanan*, Crim. No. 24-256 (CKK), 2025 WL 1380430, at *7 (D.D.C. May 13, 2025) (topics including the defendant's "wife's poor health, his substance abuse, his mental health issues, his prior military service, and video footage of his arrest in the presence of his infirm wife"); *United States v. Rivera*, No. 13–CR–149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (evidence of the defendant's good conduct). *Napout* dealt, not with international

---

[3] Neither *Ganem v. Heckler* nor *United States v. McKenna* rejects an argument on foreign law for lack of expert testimony. *Ganem* states that expert testimony is—or, rather, 40 years ago was—"generally" included in "the basic method by which foreign law is proved." 746 F.2d 844, 854 (D.C. Cir. 1984) (citing Miller, *supra*, at 658). But that statement is descriptive, rather than prescriptive, and the main citation actually described practice before adoption of Rule 26.1. *See* Miller, *supra*, at 658 ("Written or oral expert testimony accompanied by extracts from foreign legal materials probably will continue to be the basic mode of proving foreign law."). In context, the significance of that sentence was that foreign law could be determined without an opinion by the government of the country at issue. *See also Animal Sci. Prods.*, 585 U.S. at 43–44 (statement of foreign government is not binding). *McKenna* states only that opinion testimony "may be appropriate" for foreign law. Crim. A. No. 91–446, 1992 WL 95933, at *1 n.1 (E.D. La. Apr. 28, 1992).

4

sanctions, but simply with bribes, which an American jury is far more apt to consider a subject of purely local regulation. Furthermore, the significance of intent—which the court did find relevant—was undermined by the need to infer that defendants believed the pertinent codes of conduct imposed duties identical to those imposed by foreign law, which "is so attenuated that it borders on speculation." No. 15-CR-252 (PKC), 2017 WL 6375729, at *12 (E.D.N.Y. Dec. 12, 2017). Here, there is no need for such an inference. The law itself is directly relevant to Mr. Jin's good faith.

### III. The Government Has Already Admitted That the Contents of U.N. Sanctions Are Relevant. Those Sanctions Do Not Prohibit Selling Tobacco to North Korea. The Court Should Permit Mr. Jin to Introduce This Fact.

The government does not argue that tobacco sales are within the scope of U.N. sanctions.[4] It argues that introducing those sanctions would confuse jurors, but that argument assumes the question to be one of fact for the jury, which it is not. *See* Fed. R. Crim. P. 26.1. This leaves only the government's arguments that U.N. sanctions are not relevant. The government itself has already given the lie to that argument.

The government has cited U.N. sanctions since it indicted Mr. Jin. Indeed, the government specifically stated that his activities were "in contravention of United Nations . . . prohibitions on such activity." Indictment ¶ 5. When Mr. Jin moved to strike those references, the government argued that "broad UN sanctions . . . bear upon the defendant's willfulness as to the IEEPA charges." ECF 66 at 10. The government argued that the U.N. sanctions "provide necessary context and background on U.S. sanctions and also make the defendant's argument that he . . . was unaware of U.S. or international sanctions on North Korea even more implausible." *Id.* at 11. It has

---

[4] Mr. Jin concedes that individual countries implementing the U.N. sanctions regime may do so by effecting laws that are broader than the U.N. sanctions resolutions themselves. Nevertheless, for the reasons given below, the extent of those resolutions is relevant.

5

unambiguously admitted that awareness of U.N. sanctions is relevant to Mr. Jin's state of mind. *See id.* at 11 n.8 ("Efforts to evade UN sanctions concurrently or prior to the imposition of U.S. sanctions provide further proof of the defendant's knowledge of the limitations on doing business with North Korea more generally and lend support to the Government's position that the defendant was aware of and took actions to evade U.S. sanctions."). The government went so far as to tell this Court that even without U.S. sanctions, Mr. Jin "would have been operating in violation of the broad umbrella of UN sanctions," which "helps to explain many of the measures the defendant and the Winney Entities took during the course of their business engagements to obfuscate the nature and beneficiary of the transactions." *Id.* at 11. In the same round of briefs as its opposition to foreign law, the government also argues that Mr. Jin's apparent interest in U.N. sanctions was relevant evidence. ECF 113 at 4.

Somehow, the government now claims "certain evidence may reference the *general existence* of U.N. sanctions," but that the substance of those sanctions is "plainly inapplicable." ECF 114 at 6. To phrase it differently, the government considered U.N. sanctions relevant when it assumed that they helped its case, and insists that they aren't now that it knows otherwise. But the government was right the first time. The contents of the U.N. sanctions are relevant to Mr. Jin's intent, his knowledge of possible sanctions on selling tobacco to North Korea, and the interpretation of his actions. *See Napout*, 2017 WL 6375729, at *11-12 (evidence of foreign law is relevant to show lack of intent); *cf. Marcoux v. United States*, 405 F.2d 719, 722 & n.22 (9th Cir. 1968) (rejecting defendant's argument based on foreign law that was unsupported by other evidence and contradicted by examination of the statute).

Furthermore, although the government claims to have renounced any reliance on U.N. sanctions, it still intends to refer to them at trial. This could create the impression in jurors' minds

that Mr. Jin is guilty of violating international law. Mr. Jin must be permitted to rebut this impression by making clear that the sanctions do not prohibit the actions he took.

IV. **Argentine Law, Which Does Not Prohibit Sales of Tobacco to North Korea, Is Relevant to Mr. Jin's State of Mind and to a Range of Other Issues Before the Court.**

That Argentinian law does not prohibit the sale of tobacco to North Korea is also relevant in this case.

First, as the government has claimed, the majority of Winney's purchases of tobacco were made from CTJ, an Argentinian company. Therefore, the legality of tobacco exports to North Korea from Argentina is relevant to rebut the government's argument that Winney removed references to North Korea from shipping records to hide North Korean involvement. If the jurors learn that it was, in fact, legal to export tobacco to North Korea, whether under U.N. sanctions or Argentina law, it would be more likely to accept an innocent explanation for not including North Korea in the shipping records.

Second, the defense anticipates that the evidence at trial will show that, during the undercover operation, Mr. Jin repeatedly told the undercover agents that his conduct was in compliance with the law, while the undercover agents claimed the opposite: that Mr. Jin's export of tobacco to North Korea violated the laws of "multiple countries." The jury needs to know that Mr. Jin was in fact correct in his assertions—that neither U.N. nor Argentinian law prohibited the export of tobacco to North Korea—to assess Mr. Jin's knowledge and state of mind during the undercover operation.

Third, the legality of tobacco exports under Argentina law is also relevant to the credibility of CTJ—a key cooperator who is supplying the government with a prosecution witness at trial. CTJ began cooperating with the government in 2019, only after it learned that its bank accounts had been frozen at the behest of the U.S. government. While cooperating with the government,

7

CTJ also repeatedly lied about its sales to North Korea, claiming that it was unaware that its tobacco sales to Winney were then exported to North Korea. Why did CTJ lie? The fact that tobacco sales to North Korea from Argentina was legal makes it more likely that CTJ not because of a fear for legal consequences, but lied because it was aware of the U.S. government's attitude towards North Korea and wanted to hide its involvement with North Korea to appease the government.

Finally, to the extent that the Court is not satisfied that Argentinian law permits sales of tobacco to North Korea, the government has failed to show that it prohibits such sales. Therefore, the Court should at least preclude the government at trial from contradicting any statements that Mr. Jin was aware of any such prohibitions.

## CONCLUSION

For all of the foregoing reasons, the Court should permit Mr. Jin to introduce at trial evidence that neither the United Nations nor Argentina prohibit sale of raw tobacco to North Korea.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 79785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that I served a copy of the foregoing reply via ECF which automatically sends a copy to all counsel of record.

                                            Respectfully submitted,

                                            <u>By:/s/ Eugene Gorokhov</u>
                                            Eugene Gorokhov, Esq.