UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | } |
| | } |
| v. | } Criminal No. 23-CR-91-CKK |
| | } |
| GUANGHUA JIN, | } |
| | } |
| Defendant. | } |

## DEFENDANT'S SUPPLEMENT TO MOTIONS TO DISMISS

Pursuant to the Court's July 31, 2025 Order, ECF No. 126, Defendant Jin Guanghua ("Mr. Jin") respectfully submits this Supplement to his pending motions to dismiss. ECF Nos. 52-54.

### ARGUMENT

The Court's July 31, 2025 Order asked the parties to address four issues related to Mr. Jin's pending motions to dismiss. For ease of reference, Mr. Jin has reproduced the Court's questions below, and will address them in the order presented.

1) **Does Congress's power to specify the place of criminal trials "by Law" when an offense is "not committed within any State" apply to cases in which an offense is not "committed" within the boundaries of a single State, or only to cases in which an offense is not "committed" within the boundaries of any of the States? See U.S. Const. Art. III, § 2, cl. 3**

While the defense has been unable to find authority directly answering this question, several lines of reasoning support the second interpretation of the Venue Exception Clause: i.e., that Congress's power to specify the place of trial "by Law" under Article III, Section 2, Clause 3, is limited to cases where an offense is not committed within the boundaries of *any* State.

1

First, the language of Article III, Section 2 itself supports the second interpretation. It states: "…when not committed within *any* State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. Art. III, § 2, cl. 3. The term "any State" in the Constitution naturally fits the second interpretation, but not the first.

Second, the Venue Exception Clause has generally and consistently been treated as empowering Congress to specify a place of trial for extraterritorial offenses. *See, e.g.*, *Fuld v. PLO*, 145 S. Ct. 2090, 2115 (2025) (citing Article III, Section 2, Clause 3 for proposition that "Congress's and the Judiciary's extraterritorial powers are evident in the Constitution.") (Thomas, J., concurring); *Reid v. Covert*, 354 U.S. 1, 7-8 (1957) ("If this language [of Article III] is permitted to have its obvious meaning, § 2 is applicable to criminal trials *outside of the States* as a group without regard to where the offense is committed or the trial held.") (emphasis added); *United States v. Jackalow,* 66 U.S. 484, 486 (1861) ("[the district court's] jurisdiction depends upon two facts, first, that the offence was committed out of the jurisdiction of *any other of the States of the Union*; and, second, that the prisoner was first apprehended in the district of New Jersey) (emphasis added). Conversely, there is no authority applying that clause to domestic offenses spanning multiple districts.

Third, where the Venue Exception Clause applies, there is no restriction on the place of trial. *See Cook v. United States*, 138 U.S. 157, 182 (1891) ("The words, 'the trial shall be at such place or places as the congress may by law have directed,' impose no restriction as to the place of trial, except that the trial cannot occur until congress designates the place."). In other words, Congress can pick a completely arbitrary location for the place of trial when the offense is "not committed within any State" within the meaning of Article III. By contrast, the Supreme Court has viewed multi-district offenses as required to be tried in one of the districts where the offense

2

was committed, and *not* in an arbitrary location. *See Smith v. United States*, 599 U.S. 236, 244 (2023) ("We have held that a trial may be held 'where any part of a crime can be proved to have been done.' As a result, the Venue Clause permits a defendant charged with conspiracy to be tried in any State in which any co-conspirator took any overt act in furtherance of the endeavor.") (internal citations and quotation marks omitted).

Fourth, with reference to 18 U.S.C. § 3237, which provides that trial for a crime committed in more than one district may be prosecuted "in any district in which such offense was begun, continued, or completed," 18 U.S.C. § 3237(a), the Court may have considered whether the existence of § 3237 implies that Congress' power to specify the place of trial under the Venue Exception Clause extends to cases where a crime is committed in more than one State. We respectfully submit that it does not.

Congress's power to enact 18 U.S.C. § 3237 derives not from the Venue Exception Clause, but from its power to define crimes. As the Supreme Court has observed, 18 U.S.C. § 3237 was originally not a venue statute at all, but "a part of the same section of the statute which defined conspiracy." *See Hyde v. United States*, 225 U.S. 347, 360-61 (1912) (quoting predecessor statute with similar language). Thus, in enacting § 3237, Congress was not exercising its power to specify a place of trial, but simply defining multi-State crimes as committed in each State where a part of the crime took place. *See id.* ("That section provides that 'when any offense against the United States is begun in one judicial circuit and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein.'"). Thus, the fact that Congress enacted 18 U.S.C. § 3237 does not imply that it has the power to

3

specify the place of criminal trials 'by Law'" whenever an offense is not committed within a single State.

Given the foregoing reasons, the Court should hold that the Venue Exception Clause applies only to cases in which an offense is not "committed" within the boundaries of any of the States.

2) **Should the Court determine the location where an offense is "committed" for purposes of Article III, Section 2, Clause 3, by identifying the location where the "essential conduct elements" were completed, or by reference to some other unit of analysis?** *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999).

Mr. Jin agrees that the correct unit of analysis is the "essential conduct elements" of the offense, as required by *Rodriguez-Moreno*. The *Rodriguez-Moreno* test has a long history, and has been consistently applied by the Supreme Court for determining the *locus delicti* of the crime. 526 U.S. 275, 279. In performing the test, the court must "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* (citing *United States v. Cabrales*, 524 U.S. 1, 6-7; *Travis v. United States*, 364 U.S. 631, 635-637 (1961); *United States v. Cores*, 356 U.S. 405, 408-409 (1958); and *United States v. Anderson*, 328 U.S. 699, 703-706 (1946).

3) **If the Court considers the correct unit of analysis to be the "essential conduct elements" of the offenses:**

   a. **What are the relevant "essential conduct elements" for each of the offenses charged in the Indictment?**

   b. **Where were those elements completed?**

For Count One, conspiracy to commit bank fraud, the essence of a conspiracy charge is the defendant's knowingly entering into an unlawful agreement. *See United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017) (explaining that conspiracy to commit bank fraud under 18 U.S.C. § 1349

4

"has two elements: (1) that two or more persons agreed to commit bank fraud; and (2) that at some time during the conspiracy, the defendant had knowledge of the criminal objective of the agreement and willfully joined the conspiracy with the intent to further its unlawful purpose."). The essential conduct element of conspiracy, therefore, is the defendant's joining of an unlawful agreement.

For conspiracy offenses, courts have also held that venue is proper in any district where a conspirator performed an overt act, and apply this rule in addition to the "essential conduct element" test. *See United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014) ("Because neither Auernheimer nor his co-conspirator Spitler performed any 'essential conduct element' of the underlying CFAA violation or any overt act in furtherance of the conspiracy in New Jersey, venue was improper on [the conspiracy to violate the CFAA count]."). The history of the overt acts rule for conspiracy offenses can be traced back to *Hyde v. United States*, 225 U.S. 347 (1912), and is premised on treating the defendant as having "constructive presence" in the district where an overt act was performed by a co-conspirator. *Id.* at 362 ("This court has recognized, therefore, that there may be a constructive presence in a state, distinct from a personal presence, by which a crime may be consummated.")

The "essential conduct element" of Count One, i.e., entering into an agreement, if proven, was completed abroad.

The alleged overt acts were similarly performed abroad. The indictment alleges four categories of overt acts:

(1) Various wire transfers that involved U.S. financial institutions as intermediaries. ECF No. 13, ¶ 50-54;

5

(2) The registration of various Winney entities and name changes of the companies. *Id.* at ¶ 52;

(3) The alleged removal of references to North Korea from shipping records. *Id.* at ¶ 58-59;

(4) Co-defendant's Han's communications with foreign banks and with CTJ regarding due diligence issues. *Id.* at ¶ 71-75.

The only category of overt acts that could even arguably be deemed "completed" in the United States are the wire transfers processed by U.S. correspondent banks, though even as to this category of overt acts, we submit that wire transfers should be deemed "performed" where the wire transfers are sent or received, and not where an intermediary bank processing the wire is located. *See United States v. Sitzmann*, 893 F.3d 811 (D.C. Cir. 2018) (upholding venue in D.C. where defendant wired funds from Florida to D.C.). But the Court need not resolve whether an intermediary bank's location can constitute the place where a wire transfer is "performed," because even if it can, no bank is located in the District of Columbia.[1]

For Count Two, conspiracy to violate IEEPA, the analysis is essentially the same as Count One. The statute criminalizing an IEEPA conspiracy, 50 U.S.C. § 1705, uses substantially similar language as the federal bank fraud conspiracy under 18 U.S.C. § 1349. *Compare* 50 U.S.C. § 1705(a) ("It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or

---

[1]   As detailed in another pending motion, *see* ECF No. 128, the government has identified eight U.S. banks relevant to this case. They are: (1) Deutsche Bank, with headquarters in New York and Delaware; (2) Wells Fargo, headquartered in Texas and South Dakota; (3) JPMorgan Chase Bank, headquartered in Michigan and Ohio; (4) Citibank, headquartered in South Dakota; (5) Bank of New York Mellon, headquartered in New York and California; (6) The Federal Reserve, which has banks in various cities but not this District; (7) HSBC, headquartered in Virginia and Delaware, and (8) Standard Chartered, where its U.S. branch is headquartered in New York.

cause a violation of any license, order, regulation or prohibition issued under this chapter.") *with* 18 U.S.C. § 1349 ("Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). Thus, an IEEPA conspiracy has the same essential conduct element as a bank fraud conspiracy—knowingly joining an unlawful agreement. That element was completed abroad. The indictment also does not separately identify any overt acts particular to the IEEPA conspiracy. *See* ECF No. 13 ¶ 76-78. Thus, the same reasons why no overt act was performed in the District of Columbia as to Count One would also apply to Count Two.

For Counts Three through Six, the substantive IEEPA Counts, the relevant "essential conduct element" of those Counts is violating or causing a violation of the North Korea Sanctions Regulations through the "exportation" of financial services. *See* 50 U.S.C. § 1705(a) ("It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter."); ECF No. 13 at ¶ 80 (alleging that Mr. Jin and co-defendants "did knowingly and willfully export, attempt to export, and cause U.S. persons and entities…to export and attempt to export goods and services…"). As with the overt acts analysis for Counts One and Two, Mr. Jin respectfully submits that the better view is to treat the alleged violations of IEEPA as performed abroad, where the wire transfers were sent or received. However, even if the site of the U.S. correspondent banks is used for purposes of determining where the "exportation" occurred, there is still no exportation that occurred from the District of Columbia.

Previously, the government has urged the Court to uphold venue for the substantive IEEPA Counts on the basis that OFAC is headquartered in the District of Columbia, and the defendant did

7

not obtain OFAC licenses when the exportation occurred. *See* ECF No. 70 at 10-11. Under *Rodriguez-Moreno,* however, the failure to obtain an OFAC license would not qualify as an "essential conduct element."

The Supreme Court has distinguished "essential conduct elements" from "circumstance elements." While the former can support venue, the latter cannot. This distinction is best appreciated by contrasting *Rodriguez-Moreno* with a case that the Court decided a year earlier, *United States v. Cabrales*, 524 U.S. 1 (1998). In *Rodriguez-Moreno*, the Supreme Court held that for a charge of using a firearm during and in relation to a crime of violence, both the location where the firearm was used *and* the location of the crime of violence can support venue. *Rodriguez-Moreno*, 526 U.S. at 280 ("We interpret § 924(c)(1) to contain two distinct conduct elements—the 'using and carrying' of a gun and the commission of a kidnaping.") By contrast, in *Cabrales*, the defendant was charged with money laundering of drug proceeds. *Cabrales*, 524 U.S. at 3-4. The money laundering activities occurred in Florida, while the drug sales took place in Missouri. *Id.* The Supreme Court held that venue for money laundering may not be predicated on where the underlying crime that generated the money (in that case, drug sales) took place. *Id.* at 6. Explaining this difference in result, the Supreme Court stated that "the money laundering statutes at issue [in *Cabrales*]…did not proscribe 'the anterior criminal conduct that yielded the funds allegedly laundered'" but "given the 'during and in relation to' language [of 924(c)], the underlying crime of violence is a critical part of the § 924(c)(1) offense." *Rodriguez-Moreno*, 526 U.S. at 280, n.4.

Applying the foregoing analysis to the substantive IEEPA counts, the alleged failure to obtain OFAC licenses is, at best, a "circumstance element" and not an "essential conduct element" of the offense. The regulations that Mr. Jin are accused of violating are not licensing regimes that

require all persons to obtain licenses. The core of those regulations simply prohibit the exportation of goods and services to North Korea, while employing a license system to function as exceptions to that general rule. Thus, the failure to obtain an OFAC license is a "circumstance" that made the exportation illegal, but is not itself conduct that violates IEEPA.

For Count Seven, conspiracy to commit money laundering, the "essential conduct element" of that conspiracy is, as with Counts One and Two, the unlawful agreement. That element is alleged to have been completed abroad. The overt acts of the alleged money laundering conspiracy are the wire transfers which, even if deemed performed based on the locations of the correspondent banks, were not in the District of Columbia.

Finally, for Counts Eight through Twelve, the substantive money laundering counts, the relevant "essential conduct element" is the transportation of funds. *See* 18 U.S.C. § 1956(a)(2)(A) ("Whoever transports, transmits, or transfers…a monetary instrument or funds…"). As explained above, these transportation activities did not occur in the District of Columbia.

4) **If the Court holds that Counts One through Six of the Indictment involve permissible domestic applications of 18 U.S.C. § 1344 and 50 U.S.C. § 1705 because the Indictment alleges that "conduct relevant to" the "focus" of each of those statues occurred within the United States, will the court be required to hold that venue must be laid in a State or District in which the offenses charged in those counts were "committed"?** *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016); U.S. Const. Art. III. § 2, cl. 3.

As the Court has noted, the determination of venue presents interrelated issues with the defendant's Motion to Dismiss for Extraterritoriality.

Mr. Jin submits that, as a general matter, where there is a "domestic application" of a criminal statute, such that the "conduct relevant to" the "focus" of the statute occurred in the United States, that means the "essential conduct element" of the statute was performed in the United States. The offense was therefore "committed" in those States or districts where the "conduct

9

relevant to the focus" of the statute occurred, and the offense would have to be tried in those States or districts.

There may be rare exceptions to this general rule, such that even though the "conduct relevant to the focus" of an offense occurred in the United States, the offense was still not committed "within any State." The Ninth Circuit identified such a circumstance in *United States v. Lozoya*, 982 F.3d 648 (9th Cir. 2020), where the Court held that offenses committed in navigable airspace above the United States were not committed within any State, but still in the United States. *Id.* at 655. It might also apply when crimes are committed, for example, on U.S. territory that is not a part of any State. Those exceptions have no application here, however, because to the extent the "conduct relevant to the focus" of the offense occurred in the United States, they occurred in those States or districts where the banks were located, and no bank was located in the District of Columbia.

Finally, although courts have not directly addressed whether the "conduct relevant to the focus" analysis under *RJR Nabisco* is the same as the "essential conduct element" test of *Rodriguez-Moreno*, some courts have applied the rules governing venue—i.e., the "essential conduct element test," to determine issues of extraterritoriality. *See United States v. Ojedokun*, 16 F.4th 1091, 1107 (4th Cir. 2021) ("although Ojedokun has correctly reminded that venue is not the same as jurisdiction, venue rules endeavor to permit the prosecution of a crime only in the place where it occurred and can consequently shed light on where the intangible conduct of an agreement happens.") (internal quotations omitted.).

## CONCLUSION

The Court should hold that: (1) Congress's power to specify the place of trial is limited to cases where an offense is not committed within the boundaries of any of the States; (2) the location

10

for where an offense is committed is determined by the "essential conduct elements" test; (3) no essential conduct element of any of the charged offenses were committed in the District of Columbia; and (4) if Counts One through Six of the indictment involve permissible domestic applications of the relevant statutes, then those Counts must be prosecuted in the districts where the relevant conduct occurred.

        Respectfully submitted,

        By: /s/ Eugene Gorokhov
        Eugene Gorokhov, Esq.
        D.C. Bar No. 979785
        Burnham & Gorokhov, PLLC
        1634 I Street NW, Suite 575
        Washington, D.C. 20006
        (202) 386-6920 (phone)
        (202) 765-2173 (fax)
        eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

>Respectfully submitted,
>
>By: /s/ Eugene Gorokhov
>Eugene Gorokhov, Esq.
>D.C. Bar No. 979785
>Burnham & Gorokhov, PLLC
>1634 I Street NW, Suite 575
>Washington, D.C. 20006
>(202) 386-6920 (phone)
>(202) 765-2173 (fax)
>eugene@burnhamgorokhov.com