UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA } | |
| } | |
| v. } | Criminal No. 23-CR-91-CKK |
| } | |
| GUANGHUA JIN, } | |
| } | |
| Defendant. } | |
| } | |
| _____ } | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
TO COURT'S JULY 31, 2025 ORDER REQUESTING ADDITIONAL BRIEFING**

Pursuant to the Court's July 31, 2025 Order, ECF No. 126, Defendant Jin Guanghua ("Mr. Jin.") respectfully submits this Reply to the government's Response to Court's July 31, 2025 Order Requesting Additional Briefing. ECF No. 133.

**ARGUMENT**

The Court's July 31, 2025 Order asked the parties to address four issues related to Mr. Jin's pending motions to dismiss. Both parties have submitted supplements. Though the parties appear to agree on the resolution of certain issues, there are also crucial differences between the respective positions taken. In this reply, we address those differences, by reference to the Court's four questions.

**I.  CONGRESS'S POWER TO SPECIFY THE PLACE OF TRIAL FOR DOMESTIC OFFENSES IS LIMITED COMPARED TO ITS POWER TO SPECIFY THE PLACE OF TRIAL FOR EXTRATERRITORIAL OFFENSES**

In Mr. Jin's Supplement, the defense has advanced four reasons why Congress's power to specify the place of trial under the Venue Exception Clause of Article III, Section 2, Clause 3— i.e., for crimes "not committed within any State"—does not include multi-State domestic crimes.

1

*See* ECF No. 132 at 1-4. The government appears to take a contrary position. *See* ECF No. 133 at 2 (arguing that "Congress's power under the Jury Trial Clause…includes power to set venue rules both for crimes that are not committed within a single state or within the boundaries of any state.").

The government's brief advances a single sentence in support of its conclusion: the constitutionality of 18 U.S.C. § 3237. ECF No. 133 at 2. Mr. Jin has addressed why the existence of § 3237 does not imply that the specific provision at issue empowers Congress to set a place of trial "by Law," as that phrase is used in Article III. *See* ECF No. 132 at 3 (explaining that § 3237 is enacted from Congress's power to define crimes, and not on any exception to the Constitution's venue requirement), and respectfully incorporates that argument in this reply.

## II.   THE PARTIES AGREE THAT ESSENTIAL CONDUCT ELEMENTS GOVERN THE QUESTION OF WHERE A CRIME IS "COMMITTED."

The parties agree that for determining where a crime is "committed" under the Constitution, the "essential conduct elements" test of *Rodriguez-Moreno* governs.

## III.  THE GOVERNMENT'S ANALYSIS OF WHERE THE CRIMES ARE COMMITTED IGNORES OR FAILS TO SPECIFY THE DISTRICT OR STATES WHERE THE ACTS ARE PERFORMED

Although the government appears to identify substantially the same "essential conduct elements" for the offenses as the defense, *see* ECF No. 133 at 3 (stating that "the essential conduct element of the bank fraud conspiracy (Count One) is that an agreement existed to commit bank fraud, and the Defendant entered into an agreement"), *id.* at 4 ("essential conduct element of substantive IEEPA counts is "the export or attempted export…[of] financial services"); *id.* at 6 ("essential conduct element of the substantive money laundering counts…is that the Defendant transported, transmitted, or transferred.. a monetary instrument or funds."), its analysis of this issue is deeply flawed because <u>the government</u> <u>never actually identifies the specific locations, i.e., the</u>

2

States or Districts, where the relevant conduct occurred. *See* ECF No. 133 at 4 (stating as to Count One that "the conspirators transmitted their fraudulent information into the *United States* to the banks processing their transactions.")(emphasis added); *id.* at 5 (stating as to Count Two through Six that "the Defendant and his co-conspirators caused the false information to be transmitted to the United States."); *id.* at 6 (stating as to Counts Seven through Twelve that "the Defendant initiated the processing of the pertinent funds while abroad and then transmitted the false information into the United States.").

This Court's third question directed the parties to apply *Rodriguez-Moreno*'s "essential conduct elements" test to the offenses charged. In other words, determining the specific districts and States in the United States where the crimes were "committed" for purposes of venue. Thus, it is not enough to say that this conduct occurred in the United States. The Court needs to know which States or districts, if in the United States, that the conduct occurred in.

Assuming, *arguendo*, that initiating a wire transfer abroad is equivalent to "transmitting false information" to U.S. banks located in U.S. territory, and that this further constitutes conduct performed in the United States, it is still necessary to determine whether any of this occurred in the District of Columbia. The government's brief elides this analysis, instead relying on the broad assertion that this conduct occurred in the United States. *Cf.* ECF No. 133 at 5 (arguing that failure to obtain OFAC license "occurred in the District of Columbia."). The only specific conduct it identifies as occurring in the District of Columbia, i.e., the failure to obtain an OFAC license, is, as Mr. Jin explained in his brief, merely a "circumstance element" and not an "essential conduct element" of the substantive IEEPA counts. *See* ECF No. 132 at 8-9.

## IV. THE COURT'S RULING ON EXTRATERRITORIALITY DETERMINES THE ISSUE OF VENUE.

The parties also diverge on their answers to the Court's fourth question: whether finding a permissible "domestic application" of Counts One through Six requires finding that venue must be laid in the States or districts where the "conduct relevant to the focus" of the statutes occurred. The government argues that the Court may find permissible domestic application of the statutes at issue, but venue may nevertheless be laid in the District of Columbia because the crimes allegedly began outside the United States.

Mr. Jin has extensively addressed the issue in his reply brief to the Motion to Dismiss for Venue, and argued there why 18 U.S.C. § 3238 applies only to extraterritorial offenses, and so cannot be relied upon to establish venue in the District of Columbia on any offenses that are deemed "domestic applications" of U.S. law. He respectfully invites the Court's attention to his arguments on this issue. *See* ECF No. 79 at 5-10. Here, we briefly address *United States v. Campos*, 137 F.4th 840 (D.C. Cir., May 23, 2025), which was decided after the parties originally briefed this issue, but which the government now relies upon in support of its position. In short, *Campos* does not support the government's argument that the Court can use 18 U.S.C. § 3238 to establish venue in the District of Columbia for crimes that are deemed "domestic applications" of U.S. law.

First, although *Campos* involved a conspiracy both abroad and in the United States, the D.C. Circuit specifically held that the underlying statute that Campos was charged with, the crime of conspiracy to distribute drugs in violation of 21 U.S.C. § 963, is an *extraterritorial* statute. 137 F.4th at 848 ("the crime of conspiracy under 21 U.S.C. § 963 has extraterritorial application through Section 959(c)."). By relying on the extraterritoriality of § 963 to uphold Campos's trial in the District of Columbia under 18 U.S.C. § 3238, the D.C. Circuit evidently believed, as Mr. Jin

4

has asserted repeatedly, that 18 U.S.C. § 3238 applies only to extraterritorial offenses. Thus, *Campos* would actually support Mr. Jin's argument that here, where the government is seeking to uphold the charges in the indictment on the ground that these crimes are "domestic applications" of U.S. law, it may not simultaneously rely on 18 U.S.C. § 3238 to establish venue in the District of Columbia.

Second, Campos' venue argument was also reviewed under a plain error standard because Campos did not preserve the issue in the district court. *See id.* at 847 ("assuming plain error review is available…appellant fails to show plain error that affected her 'substantial rights.'"). And plain error review requires: "(1) a legal error that was (2) 'plain' (a term that is synonymous with 'clear or 'obvious'), and that (3) affected the appellant's substantial rights." *United States v. Sitzmann*, 893 F3d 811, 830 (D.C. Cir. 2018) (quoting *United States v Sullivan*, 451 F.3d 884, 892 (D.C. Cir. 2006). That is obviously not the case for Mr. Jin's venue arguments. Thus, whatever support *Campos* can offer for the government's position is limited by the standard of review on appeal.

## CONCLUSION

The Court should grant the defendant's motions to dismiss.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com