**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **v.** | :    **No.: 23-CR-91 (CKK)** |
| | : |
| **JIN GUANGHUA,** | : |
| | : |
| **Defendant.** | : |
| | : |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, proposes the following jury instructions.[1] The government generally has no objection to the Pattern Criminal Jury Instructions for the District of Columbia, 2025 Release ("Redbook"), as appropriate, based on the developments at trial.

### A.    Instructions Before and During Trial

1.    Preliminary Instructions Before Trial, Redbook 1.102

2.    Definitions, Redbook 1.103

3.    Notetaking by Jurors, Redbook 1.105

4.    Preliminary Instruction to Jury Where Identity of Alternates not Disclosed, Redbook 1.107

5.    Juror's Recognition of a Witness or Other Party Connected to the Case, Redbook 1.108

---

[1] The government has consulted with the Defendant and has noted the Defendant's objections—and the government's responses—where applicable.  The Defendant has separately proposed additional jury instructions, to which the Government objects.  The Defendant's instructions and the government's objections are so noted.

6.   Witness's or Defendant's Use of Interpreter, Redbook 1.110

7.   Specialized Opinion Testimony, Redbook 2.215

8.   Transcripts of Tape Recordings, Redbook 2.310

9.   Translation of Foreign Language Document or Recording, Redbook 2.311

10.  Cautionary Instruction on the Use of the Internet and Publicity, Redbook 1.202

11.  Stipulation of Fact, Redbook 1.103 (to be given at time of first stipulation, if any)

12.  Stipulation of Testimony, Redbook 1.103 (to be given at time of first stipulation, if any)

**B.    Final Instructions**

1.    Furnishing the Jury with a Copy of the Instructions, Redbook 2.100

2.    Function of the Court, Redbook 2.101

3.    Function of the Jury, Redbook 2.102

4.    Jury's Recollection Controls, Redbook 2.103

5.    Notetaking by Jurors, Redbook 1.105

6.    Evidence in the Case, Redbook 2.104

7.    Statements of Counsel, Redbook 2.105

8.    Indictment Not Evidence, Redbook 2.106

9.    Burden of Proof—Presumption of Innocence, Redbook 2.107

10.   Reasonable Doubt, Redbook 2.108

11.   Direct and Circumstantial Evidence, Redbook 2.109

12.   Nature of Charges Not to Be Considered, Redbook 2.110

13.   Number of Witnesses, Redbook 2.111

14.   Inadmissible and Stricken Evidence, Redbook 2.112

2

15.    Credibility of Witnesses, Redbook 2.200

16.    Testimony of Immunized Witness, Redbook 2.204 (*as applicable*)

17.    Law Enforcement Officer's Testimony, Redbook 2.207

18.    Right of Defendant Not to Testify, Redbook 2.208 *or* Defendant as Witness, Redbook 2.209 (*as applicable*)

19.    Specialized Opinion (Expert) Testimony, Redbook 2.215

20.    Evaluation of Prior Inconsistent Statement of a Witness, Redbook 2.216 (*as applicable*)

21.    Evaluation of Prior Consistent Statement of Witness, Redbook 2.217

22.    Motive, Redbook 2.307

23.    Transcripts of Tape Recordings, Redbook 2.310

24.    Translation of Foreign Language Document or Recording, Redbook 2.311

25.    Other Crimes Evidence, Redbook 2.321

> ***Defense Objection***: The Defendant objects to the inclusion of instruction 2.321 because "the government has not filed a Rule 404(b) notice. Evidence of other crimes is inadmissible, and therefore no instruction on other crimes evidence is needed, unless the judge permits the introduction of unnoticed Rule 404(b) evidence."

> ***Government Response***: To the extent the Court determines that any of the government's evidence constitutes evidence under Rule 404(b), the instruction on Other Crimes Evidence would be appropriate.

26.    Summary of the Indictment

27.    <u>Count One</u>: Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Sections 1344(1) & (2), 1349 [see proposal below]

28.    <u>Count Two</u>: Conspiracy to Violate the International Emergency Economic Powers Act in violation of Title 50, United States Code, Section 1705 [see proposal below]

29.    <u>Counts Three through Six</u>: Violations of the International Emergency Economic Powers Act, in violation of Title 50, United States Code, Section 1705 [see proposal below]

30. <u>Count Seven:</u> Conspiracy to Launder Monetary Instruments in violation of Title 18, United States Code, Section 1956(h) [see proposal below]

31. <u>Counts Eight through Twelve</u>: Laundering of Monetary Instruments in violation of Title 18, United States Code, Sections 1956(a)(2)(A), 2 [see proposal below]

32. Theories of Liability [see proposal below]

     a. Willfully Causing an Act to be Done, Redbook 3.102
     b. Aiding and Abetting, Redbook 3.200
     c. Co-Conspirator Liability, Redbook 7.103 & adapted from Third Circuit

33. Attempt [see proposal below]

34. Proof of "on or about," Redbook 3.103

35. Proof of State of Mind, Redbook 3.101

36. Multiple Counts – One Defendant, Redbook 2.402

37. Unanimity—General, Redbook 2.405

38. Verdict Form Explanation, Redbook 2.407

39. Redacted Exhibits, Redbook 2.500 (*as applicable*)

40. Exhibits During Deliberations, Redbook 2.501

41. Selection of Foreperson, Redbook 2.502

42. Possible Punishment Not Relevant, Redbook 2.505

43. Witness's and Defendant's Use of Interpreter, Redbook 2.507

44. Cautionary Instruction on Publicity, Communication, and Research, Redbook 2.508

45. Communication Between Court and Jury During Jury's Deliberations, Redbook 2.509

46. Attitude and Conduct of Jurors in Deliberations, Redbook 2.510

47. Excusing Alternate Jurors, Redbook 2.511

48. Returning Verdict and Possibility of a Poll

**Proposed Instruction ##**

**COUNT ONE: CONSPIRACY TO COMMIT BANK FRAUD[2]**

**18 U.S.C. § 1344(1) & (2), 1349**

Count One charges Mr. Jin with conspiracy to commit bank fraud.  It charges that, beginning between at least in or around February 2009 until, at the latest, in or around March 2019, the defendant and his co-conspirators knowingly engaged in a conspiracy to execute a scheme or artifice to (i) defraud a financial institution, as defined in 18 U.S.C. § 20; and (ii) to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises—specifically, by concealing from one or more financial institutions in the United States that they were engaged in financial transactions for the benefit of North Korea and North Korean entities and through the use of Chinese front companies.

> **Defense Objection:** The Defendant objects to the underlined language.  As discussed in the Defendant's Motion to Dismiss Count One, conviction under 18 U.S.C. § 1344(2) requires that there be an *affirmative* misrepresentation.  ECF 45 at 18 ("acts of concealment or omission are not prosecutable under subsection 2, but must proceed under subsection 1 as part of a 'scheme to defraud'") (citing *United States v. Colton*, 231 F.3d 890, 904 (4th Cir. 2000); *United States v. Steffen*, 687 F.3d 1104, 1110(8th Cir. 2012); *United States v. Briggs*, 939 F.2d 222, 225 (5th Cir. 1991).  The government's language misstates the law by implying that the jury can convict Mr. Jin under § 1344(2) by relying on the alleged concealment of North Korean entities.

> **Government Response:** The underlined language tracks the charging language in the Indictment, and specifically defines the conspiracy as charged, rather than addressing the elements of the offense.  *See* ECF No. 13 at 47.  Moreover, the Defendant's concealment from the banks of the true nature of his business is an affirmative representation that will be proven at trial through documentary evidence.

---

[2] Adapted from *United States v. Young-Bey*, *et al.*, 21-cr-661, Dkt. 224 (CKK) (D.D.C. 2024); *United States v. Atilla*, 15 Cr. 867 (RMB) (S.D.N.Y. 2017) (transcript of jury charge attached hereto as Exhibit A); *United States v. Germine*, 22-cr-161 (JDB) (jury instructions attached hereto as Exhibit B).

_It is against the law to agree with someone to commit bank fraud_. The principles I will discuss below, although I am discussing them in the context of Count One, which charges a conspiracy to commit the crime of bank fraud, also apply to Counts Two and Seven—Conspiracy to Violate the International Emergency Economic Powers Act and Conspiracy to Launder Monetary Instruments.

> **_Defense Objection_**: The Defendant objects to the underlined language because it is self-evident and unnecessary.

> **_Government Response_**: The underlined language is an accurate statement that has been used in conspiracy counts in other cases in this District. _See_ Ex. B at 22.

### _Elements of Conspiracy_

A conspiracy is an agreement by two or more persons to join together to accomplish some unlawful purpose.[3]  It is a kind of criminal partnership that is a separate charge from any substantive crimes with which the defendant is also charged.  The essence of the crime of conspiracy is an agreement or understanding to violate the law, and thus, a conspiracy may exist even if it should fail in its purposes.[4]

To prove a conspiracy to commit bank fraud, as charged in Count One, the government must prove the following elements beyond a reasonable doubt.  They are:

1. Between on or about February 2009 and on or about March 2019, an agreement existed between two or more persons to commit the crime of bank fraud;

2. Second, that Mr. Jin intentionally, knowingly, and voluntarily joined that agreement with the intent to achieve the illegal objective of committing the offense of bank fraud.[5]

---

[3] _Germine_ at 22.
[4] _Atilla_, Ex. A at 2391; _see also_ Redbook 7.102, 2025 Edition.
[5] _Young-Bey_, Dkt. 224 at 27.

The crime of bank fraud has three elements that the government must prove beyond a reasonable doubt.  I will discuss those three elements later.

*Existence of a Conspiracy*

The first element of the crime of conspiracy is the existence of an agreement.  The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either explicitly or implicitly, to work together to achieve the overall objectives of the conspiracy.  The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding.  The government does not have to prove that all members of the conspiracy directly met, or discussed between themselves their unlawful objectives, or agreed to all the details, or agreed to what the means were by which the objectives would be accomplished.[6]

On the other hand, merely because people get together and talk about common interests or do similar things does not necessarily show that an agreement exists to commit a crime.  The government must prove beyond a reasonable doubt that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish the common and unlawful objective of committing the crime.[7]

You may consider both direct evidence and circumstantial evidence in deciding whether the government has proved beyond a reasonable doubt that an agreement or mutual understanding existed.  You may find the existence of a conspiracy based on reasonable inferences drawn from the actions and statements of the alleged members of the conspiracy, from the circumstances surrounding the scheme, and from evidence of related facts and circumstances which prove that

---

[6] *Germine*, Ex. B at 23.
[7] *Id.*; *see also* Redbook Instruction 7.102, 2025 Edition.

the activities of the participants in a criminal venture could not have been carried out except as the result of a preconceived agreement, scheme, or understanding.[8]

_Success Is Irrelevant_

It does not matter whether the persons who formed the agreement actually carried out their plans or whether the agreement ultimately was successful, although proof concerning the accomplishment of the object of a conspiracy may be evidence of the existence of the conspiracy itself. In other words, success in carrying out an act, if you believe it was carried out, may be proof of the agreement itself. But as I just said, it is not necessary that a conspiracy actually succeed in its purpose for you to conclude that it existed.[9]

_"Knowingly," "intentionally," and "unlawfully"_

If you conclude that the United States has proven beyond a reasonable doubt that the conspiracy you are considering existed, and that the conspiracy had as its objectives one of the illegal purposes charged in the indictment, then you must next determine whether Mr. Jin intentionally participated in that conspiracy with knowledge of its unlawful objectives, and with the intent to further its unlawful objectives.[10]

The government must prove beyond a reasonable doubt that Mr. Jin knowingly and intentionally entered into the conspiracy with criminal intent—that is, with a purpose to violate the law—and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objectives.

---

[8] _Germine_, Ex. B at 23.
[9] _Germine_, Ex. B at 24.
[10] _Id._

"Unlawfully" simply means contrary to law.  <u>A defendant does not need to have known</u> <u>that he was breaking any particular law, but he must have been aware of the generally unlawful</u> <u>nature of his acts.</u>[11]

> ***Defense Objection***: The Defendant objects to the underlined language and proposes adding the following language: "A defendant does not need to know the specific legal statutes he violated, but he must know that his conduct was in violation of the laws of the United States.  In this case, the government must prove beyond a reasonable doubt that Mr. Jin knew that it was illegal under United States law to conduct financial transactions that pass through U.S. financial institutions if those transactions are for the benefit of North Korea."  The Defendant cites to *United States v. Burden*, 934 F.3d 675, 689-93 (D.C. Cir. 2019) in support of his proposed language.
>
> The Defendant further notes that the government has conceded that it must prove that the defendant "knew that his conduct was in violation of *U.S. law*, as opposed to foreign law or U.N. sanctions."  ECF 121 at 7 (internal quotations omitted.).  Because of the international character of this case, the defendant's proposed language would clarify for the jury on the issue of mens rea.
>
> ***Government Response***: The government's proposed instruction is consistent with *Burden* and the standard set out in *Bryan v. United States*, 524 U.S. 184, 191 (1998).  For the conspiracy count, the government need only prove that the defendant and his co-conspirators agreed to enter into an agreement to achieve one of the unlawful objectives of the conspiracy, which, in this case, is bank fraud.  To prove bank fraud, the Defendant did not need specific knowledge that it was illegal under U.S. law to conduct financial transactions for the benefit of North Korea.  It is self-evident that the law the Defendant is charged with breaking is a U.S. law.

The terms "knowingly" and "intentionally" mean that to find Mr. Jin joined the conspiracy, you must conclude beyond a reasonable doubt that in doing so, he knew what he was doing.  In other words, you must conclude that Mr. Jin took the actions in question deliberately, purposely, and voluntarily.  That is, Mr. Jin's acts must have been the product of his conscious objective, rather than the product of a mistake or accident, or mere negligence, or some other innocent reason.[12]

---

[11] *Id.*
[12] *Germine*, Ex. B at 24-25.

It is not necessary for the government to show that the defendant was fully informed as to all the details of the conspiracy for you to infer knowledge on his part. To have guilty knowledge, the defendant need not know the full extent of the conspiracy or all of the activities of all of its participants.[13] It is also not necessary for the defendant to know every other member of the conspiracy. In fact, the defendant may know only one other member of the conspiracy and still be a co-conspirator. It is enough if he participated as a conspirator unlawfully and knowingly as I have defined those terms.[14]

> **Defense Objection**: The Defendant has proposed adding the following language to the end of this paragraph: "However, the defendant must have knowledge of the unlawful objectives charged in this case, and knowingly and intentionally agreed to participate in those objectives."

> **Government Response**: The Defendant's proposed language is duplicative of language included at the beginning of this section. Specifically, the instructions already state: "If you conclude that the United States has proven beyond a reasonable doubt that the conspiracy you are considering existed, and that the conspiracy had as its objectives one of the illegal purposes charged in the indictment, then you must next determine whether Mr. Jin intentionally participated in that conspiracy with knowledge of its unlawful objectives, and with the intent to further its unlawful objectives."

A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy. But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy.[15]

---

[13] *Id.* at 25.
[14] *Id.*
[15] Redbook Instruction 7.102, 2025 Edition.

*Duration and Extent of the Defendant's Joining of the Agreement*

The duration and extent of the defendant's joining of the agreement has no bearing on the issue of the defendant's guilt. The defendant need not have joined the conspiracy at the outset. With regard to liability for conspiracy (although not substantive offenses), the defendant may have joined the conspiracy at any time in its progress, and will still be held responsible for all that was done before he joined, if those acts were reasonably foreseeable and within the scope of the defendant's agreement, and for all that was done during the conspiracy's existence while he or she was a member. Each member of a conspiracy may perform separate and distinct acts, or no acts at all. Some conspirators may play major roles, while others play only minor roles in the scheme. An equal role is not what the law requires, and a defendant does not need to perform any specific act beyond joining the conspiratorial agreement.[16]

But proof that a defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if the defendant approved of what was happening or did not object to it. Similarly, just because a defendant may have done something that happened to help a conspiracy does not necessarily make the defendant a conspirator. These are all things that you may consider in deciding whether the government has proved that a defendant joined a conspiracy. But without more, they are not enough.[17]

*Termination of a Conspiracy*

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. Similarly, once a

---

[16] *Germine*, Ex. B at 25.
[17] *Young-Bey*, Dkt. 224 at 29-30.

person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until its termination.[18]

It is not essential that the government prove that a particular conspiracy alleged in the indictment started or ended on any of the specific dates described for that conspiracy. It is sufficient if you find that the conspiracy was formed and that it existed within the time set forth in the indictment.[19]

In sum, you must find beyond a reasonable doubt that Mr. Jin, with an understanding of the unlawful nature of the conspiracy, intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering its illegal undertaking—that is to say, Mr. Jin became a conspirator.

**Elements of Bank Fraud**

I have already instructed you as to what a conspiracy is and how you should go about determining whether one existed and whether the defendant knowingly joined and participated in it.[20] The objects of a conspiracy are the illegal goals the co-conspirators agree or hope to achieve.[21] As I have already mentioned, Count One of the indictment charges the defendant with participating in a conspiracy to commit bank fraud. Thus, in order to find the defendant guilty of conspiracy to commit bank fraud, you must find beyond a reasonable doubt that the object of the conspiracy charged in Count One was to commit the crime of bank fraud, based on the elements I am about to describe to you.

The first element of bank fraud is that a person (i) knowingly executed a scheme or artifice to defraud a financial institution; or (ii) in the alternative, that a person knowingly executed a

---

[18] *Germine*, Ex. B at 26-27.
[19] *Id.* at 27.
[20] *Atilla*, Ex. A at 2412-13.
[21] *Id.* at 2395.

scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretense, representations, or promises that were material to the scheme.[22]

The second element is that the defendant executed or participated in the scheme knowingly, willfully, and with specific intent to <u>defraud a financial institution or to obtain money, funds, credits, assets, securities, or other property owned by or under the custody or control of a financial institution</u>.[23]

> **Defense Objection:** The Defendant objects to the underlined language and has proposed the following language: "defraud, that is, to deceive or cheat someone for the purpose of either causing a financial loss to another or bringing about a financial gain to the defendant or another person." The Defendant cited *United States v. Young Bey*, 1:21-CR-61-CKK, ECF No. 224, at 40-43 in support of his proposed language.

> **Government Response:** The proposed language from *Young-Bey* (i) ignores that the government has alleged, in the alternative, that the defendant "knowingly executed a scheme or artifice to defraud a financial institution; and (ii) ignores subsequent language from *Young-Bey*, which states that the government *need not* prove that "the defendant's scheme created a risk of financial loss to the bank or financial institution," *Young-Bey*, ECF No. 224 at 38, or that "the defendant's purpose was to cause a loss to the victim." *Id.* at 39; *see also United States v. Young-Bey*, 21-Cr.-661 (CKK), 2024 WL 308470, *7-8 (D.D.C. Jan. 27, 2024) (reviewing pattern jury instructions from multiple Circuits on the issue). Moreover, for the reasons discussed in the government's Supplemental Briefing on *Kousisis v. United States*, ECF No. 91, and its Motion *in Limine* to Preclude Arguments Contrary to the Law, ECF No. 103 at 4-5, bank fraud does not require the government to prove whether the Defendant intended to or actually caused a loss.

And the third element is that the financial institution in question that was the subject of the scheme or artifice, was, at the time of the execution of the fraudulent scheme, a financial institution, a term that I will define momentarily.[24]

---

[22] *Id.* at 2378.
[23] *Atilla*, Ex. A at 2381-2382.
[24] *Id.* at 2383-84.

*Element One*

With respect to the first element, the government needs to prove either of the two alternatives: one, that there existed a scheme or artifice to defraud a financial institution; or two, that there was a scheme or artifice to obtain money, funds, credits, assets, securities, or other property owned by or under the custody or control of that financial institution by means of false or fraudulent pretenses, representations, or promises. These two concepts are not necessarily mutually exclusive. If you find that either one of the schemes or artifices existed or that both existed, then the first element of bank fraud is satisfied. However, you must be unanimous in your view as to the type of scheme or artifice that existed.[25]

For the first alternative, a scheme to defraud a financial institution is a pattern or course of conduct concerning a material matter designed to deceive a financial institution into releasing money or property.[26]

In order to establish the existence of a scheme, the government is not required to establish that the scheme actually succeeded—that is, that the defendant realized any gain from the scheme or that the intended victim suffered any loss. The issue is whether there was such a scheme. Thus, it is not necessary for the government to prove that the scheme succeeded, just that the scheme was devised and employed.[27]

> **Defense Objection:** The Defendant objects to the underlined language and has proposed the following instruction: "In order to establish the existence of a scheme, the government must prove that the purpose of the scheme was to cause a financial loss to another or bring about a financial gain to the defendant or another person. However, the government is not required to establish that the scheme actually succeeded." *See United States v. Young-Bey*, 1:21-CR-61-CKK, ECF No. 224, at 40-43.

---

[25] *Id.* at 2379.
[26] *Id.* at 2379.
[27] *Id.* at 2381.

> ***Government Response:*** For the reasons discussed in ECF No. 91 and ECF No. 103, the Defendant's proposed language is an inaccurate statement of the law.  Moreover, as discussed above, the Defendant's citation to *Young-Bey* ignores subsequent language, which states that the government need not prove that "the defendant's scheme created a risk of financial loss to the bank or financial institution," *Young-Bey*, ECF No. 224 at 38, or that "the defendant's purpose was to cause a loss to the victim."  *Id.* at 39; *see also United States v. Young-Bey*, 21-Cr.-661 (CKK), 2024 WL 308470, *7-8 (D.D.C. Jan. 27, 2024) (reviewing pattern jury instructions from multiple Circuits on the issue).

The second of the two types of schemes mentioned includes one to obtain money or property owned by or under the custody and control of a financial institution by means of false or fraudulent pretenses, representations, or promises as described in the indictment.

Under either alternative, a scheme or artifice is any plan, pattern, or course of action intended to deceive or cheat someone out of money or property by using materially false or fraudulent pretenses, representations, or promises, reasonably calculated to deceive.[28]

<u>False or fraudulent pretenses, representations, or promises are any actual or direct false statements, known to be false or made with reckless indifference to the truth, deceitful statements, half-truths, concealment of facts that are material or important to the matter, all of which were knowingly made or concealed with the intent to defraud.[29]  The misrepresentations may be written, oral, or arise from a course of conduct intended to communicate false facts to the financial institution.  The deceptive means that are prohibited are not limited to active misrepresentations or lies told to the financial institution.  Just as affirmatively stating facts as true when the facts are not true may constitute a false representation, the law recognizes that false representations need not be based on spoken or written words alone.  The deception may arise from the intentional</u>

---

[28] *Young-Bey* at 38.
[29] *Id.* at 38-39.

omission or concealment of facts that make what was written, said, or done deliberately misleading.[30]

> ***Defense Objection***: The Defendant objects to the underlined language for the reasons stated in its objection to the underlined language at the beginning of this proposed instruction: namely, that § 1344(2) requires an affirmative misrepresentation.

> ***Government Response***: As discussed above, the Defendant's concealment from the banks of the true nature of his business by, *inter alia*, providing false or fraudulent documents was done with the intent to defraud and constitutes an affirmative representation.

False representations and pretenses must also be material. A misrepresentation or pretense is material if it would be important to a reasonable person in making a decision about a particular matter.[31] However, whether a pretense, representation, or promise is material does not depend upon whether a person was actually deceived, or relied on it, or should have known it was false or fraudulent. Nor is it required that the government show that the defendant's purpose was to cause a loss to the victim. Moreover, it is irrelevant whether the person acting on the pretense, representation, or promise did so negligently, carelessly, irresponsibly or could have done something more to prevent the offense.[32]

## Element Two

With respect to the second element, an act is done knowingly if it is done voluntarily and deliberately, rather than mistakenly or inadvertently.[33]

Willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say, with a bad purpose to disobey or disregard the law—

---

[30] *Atilla* at 2380.
[31] *Id.* at 2380-81.
[32] *Young-Bey* at 39.
[33] *Id.*

here, either by intending to defraud a financial institution or by providing false or fraudulent information to the same.[34]

Unlawfully means simply contrary to law.  <u>A defendant need not have known that he or she was breaking any particular law or any particular rule.  A defendant need only have been aware of the generally unlawful nature of his or her acts or plans.</u>[35]

> ***Defense Objection:*** The Defendant objects to the underlined language and has proposed the following language: "A defendant does not need to know the specific legal statutes he violated, but he must know that his conduct was in violation of the laws of the United States.  In this case, the government must prove beyond a reasonable doubt that Mr. Jin knew that it was illegal to conduct financial transactions that pass through U.S. financial institutions if those transactions are for the benefit of North Korea.  *See* Defendant's objection to definition of "unlawfully," above, at 9.

> ***Government Response:*** As discussed above, the Defendant's proposed instruction is overly broad.  For Count One, the government need only prove that the defendant and his co-conspirators agreed to enter into an agreement to achieve one of the unlawful objectives of the conspiracy—to commit bank fraud.  To prove the existence of the conspiracy to commit bank fraud, the government need not prove that the Defendant had specific knowledge that it was illegal under U.S. law to conduct financial transactions for the benefit of North Korea.  *See generally*, *Atilla* at 2378-84 (setting out elements of substantive bank fraud offense); *id.* at 2412-13 (setting out the elements of bank fraud conspiracy).

Regarding intent to defraud, direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past they committed an act with fraudulent intent.  Such direct proof is not required.[36]

Someone's intent ordinarily cannot be proved directly because there is no way of knowing what a person is actually thinking, but you may infer the person's intent from the surrounding circumstances.  You may consider any statement made or acts done or omitted by the defendant,

---

[34] *Atilla* at 2383; *see also* First Circuit Pattern Jury Instructions 4.18.1344.
[35] *Atilla* at 2383.
[36] *Young-Bey*, Dkt. 224 at 39-40.

and all other facts and circumstances received in evidence, which indicate the defendant's intent. You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts the defendant intentionally did or did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.[37]

*Element Three*

The third element is that the banks in question must have been financial institutions. As relevant here, a financial institution includes:

1. A depository institution, holding insurance with the United States Federal Deposit Insurance Corporation (FDIC) or a depository institution holding company;

2. A Federal Reserve bank or a member bank of the Federal Reserve System;

3.  An organization operating under section 25(a) of the Federal Reserve Act, that is to say, banking corporation authorized to do foreign banking business; or

4. A branch or agency of a foreign bank.[38]

I instruct you that an agency of a foreign bank is defined as an office or a place of business of a foreign bank located in any State of the United States at which credit balances are maintained

---

[37] *Id.* at 40; *see also* First Circuit Pattern Jury Instructions 4.18.1344.
[38] 18 U.S.C. § 20.

incidental to or arising out of the exercise of banking powers, checks are paid, or money is lent, but at which deposits may not be accepted from the United States.

A branch of a foreign bank means any office or any place of business of a foreign bank located in any State of the United States at which deposits are received.[39]

The government need not show that the defendant knew that the banks in question were statutorily defined financial institutions to satisfy this third element.[40]

---

[39] 12 U.S.C. § 3101.
[40] *Atilla* at 2383-84; *see also* First Circuit Pattern Jury Instructions 4.18.1344.

**Proposed Instruction ##**

**COUNT TWO: CONSPIRACY TO VIOLATE THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT**

**50 U.S.C. § 1705**

Count Two charges the defendant with conspiracy to violate the International Emergency Economic Powers Act, or IEEPA.  Specifically, the indictment alleges that from on or about March 15, 2016, to in or around March 2019, the defendant and his co-conspirators conspired to knowingly and willfully export and cause U.S. persons and entities—specifically, financial institutions located in the United States—to export financial services with and for the benefit of the Foreign Trade Bank, North Korea, and North Korean entities, without prior authorization or a license from the Department of the Treasury.

Under IEEPA, the term "U.S. person" means any U.S. citizen, permanent resident alien, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States.[41]

I have already instructed you as to what a conspiracy is and how you should go about determining whether one existed and whether the defendant knowingly and intentionally joined and participated in it, and those same principles apply to Count Two as they did to Count One. The only difference is that the conspiracy in Count Two alleges an underlying crime of a violation of IEEPA.

Thus, to sustain its burden of proof with respect to the conspiracy charge in Count Two, the government must prove beyond a reasonable doubt each of the following elements:

---

[41] 31 C.F.R. § 544.312.

First, the Government must prove that an agreement existed between two or more persons to violate IEEPA.

Second, the government must prove that the defendant intentionally, knowingly, and voluntarily joined that conspiracy, with the intent to achieve its unlawful objective, which was to violate IEEPA.[42]

> **Defense Objection:** The Defendant has proposed adding the following as a third element of conspiracy: "Third, the government must prove that the defendant acted willfully, i.e., the defendant knew that his conduct violated the law.  With respect to Count Two, the government must prove beyond a reasonable doubt that Mr. Jin knew that it was illegal under United States law to conduct financial transactions that pass through U.S. financial institutions if those transactions are for the benefit of North Korea."  *See United States v. Rosenthal*, 334 Fed. Appx. 841, 843 (9th Cir. 2009) (noting that "conspiracy charge here requires only the same *mens rea* necessary for conviction of the underlying substantive offenses") (citing *United States v. Hubbard*, 96 F.3d 1223, 1229 (9th Cir. 1996)); *United States v. Baker*, 63 F.3d 1478, 1493 (9th Cir. 1995)).

> **Government Response:** The government has provided an instruction on willfulness below. The Defendant's proposed instruction is not relevant to this element, which is about the Defendant's participation in the conspiracy. The government's proposed elements also align with Redbook 7.102 on conspiracy.  As discussed further herein, it is not accurate as to the required *mens rea* for IEEPA.

As I have mentioned, to find the defendant guilty of conspiracy to violate IEEPA, you need not find that a substantive violation of the IEEPA actually occurred, only that the defendant knowingly and intentionally participated in a conspiracy with knowledge of its unlawful purpose—here, to violate IEEPA.[43]

I will next discuss the substantive elements of IEEPA, which you also must consider in assessing the first element of Count Two.

---

[42] *Atilla*, Ex. A at 2406.

[43] *Id.*

**Proposed Instruction ##**

**COUNTS THREE THROUGH SIX: VIOLATIONS OF THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT**

**50 U.S.C. § 1705**

I am now going to discuss Counts Three through Six, which charge the defendant with the substantive offense of violating the International Emergency Economic Powers Act or IEEPA.

To find that the defendant has committed the substantive crime of violating IEEPA, you must find that the government has proved the following three elements beyond a reasonable doubt:

First, on or about the charged dates, the defendant exported, attempted to export, or caused U.S. persons and entities—*i.e.*, financial institutions located in the United States—to export or attempt to export goods or services, specifically, financial services, with or for the benefit of the Foreign Trade Bank, North Korea, or North Korean entities, without prior authorization or a license from the Department of the Treasury;

Second, the defendant acted knowingly and willfully; and

Third, that the defendant did not obtain a license from the Department of the Treasury's Office of Foreign Assets Control, or OFAC, to engage in the charged transactions.[44]

The charged exports of financial services are as follows:

o Count Three alleges that, on or about June 20, 2018, a U.S. financial institution exported a financial service by processing a transaction sent by Ruixi Trade Limited in the amount of $342,029.07, which was received by Winney Tobacco FZCO.

o Count Four alleges that, on or about June 20, 2018, a U.S. financial institution exported a financial service by processing a transaction sent by Yumei Trading Co.

---

[44] *Atilla*, Ex. A at 2405-06.

Limited in the amount of $357,889.07, which was received by Winney Tobacco FZCO.

- o Count Five alleges that, on or about July 12, 2018, a U.S. financial institution exported a financial service by processing a transaction sent by Sufuyang Trade Limited in the amount of $385,279.86, which was received by Winney Tobacco FZCO.

- o And Count Six alleges that on or about March 1, 2019, a U.S. financial institution exported a financial service by processing a transaction sent by Winney Tobacco FZCO in the amount of $230,236.80, which was received by Cooperativa de Tabacaleros de Jujuy (CTJ).

*License, Order, Regulation, or Prohibition*

In order to prove that the defendant committed substantive violations of IEEPA, the government must prove that the defendant violated, attempted to violate, or caused a U.S. person or entity to violate or attempt to violate a license, order, regulation, or prohibition issued pursuant to the IEEPA.

Under IEEPA, the term "U.S. person" means any U.S. citizen, permanent resident alien, entity, including U.S. financial institutions, organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States.[45]

I instruct you that the following orders, regulations, and prohibitions were in effect, as it pertains to Counts Three through Six:

---

[45] 31 C.F.R. § 544.312.

On June 28, 2005, the President issued Executive Order 13382, which targeted proliferators of weapons of mass destruction (WMD) and their support networks.  Pursuant to the authority granted by Executive Order 13382, the Secretary of the Treasury promulgated the Weapons of Mass Destruction Proliferators Sanctions Regulations, which, along with Executive Order 13382, prohibit transactions or dealings by any U.S. person or within the United States with individuals or entities called Specially Designated Nationals or SDNs, unless exempt or authorized by OFAC. Such persons and entities are identified on a publicly available list called the SDN List.

Pursuant to Executive Order 13382, the Department of the Treasury designated the following entities as SDNs for their connections to the North Korean WMD program and thereby prohibited the provision of funds, goods, or services by, to, or for the benefit of those entities:

On August 11, 2009, the Department of the Treasury designated as an SDN and identified on the SDN List the North Korean bank, Korea Kwangson Banking Corp. (KKBC).

On March 11, 2013, the Department of the Treasury designated as an SDN and identified on the SDN List North Korea's state-owned foreign exchange bank, the Foreign Trade Bank (FTB).

On September 26, 2016, OFAC designated and identified on the SDN list the Chinese company, Dandong Hongxiang Industrial Development (DHID), as an SDN, acting on behalf of sanctioned entities.

On March 15, 2016, the United States imposed country-wide sanctions on North Korea and issued Executive Order 13722, which prohibited the export and reexport, directly or indirectly, of goods, services, and technology to North Korea from the United States or by a U.S. person, wherever located, including financial services, unless exempt or authorized by OFAC.

*Defense Objection:* The Defendant objects to the underlined language above for the reasons discussed in the Motion to Strike Surplusage, ECF No. 43, and the Motion *in Limine* to Exclude Evidence Concerning North Korea's WMD Programs, ECF No. 108.

*Government Response:* The objected to language is part and parcel of the pertinent Executive Orders and Regulations. For example, Executive Order 13382 is titled, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters." Further, omitting the title of the pertinent regulations, which are titled the Weapons of Mass Destruction Proliferators Sanctions Regulations ("WMDPSR") leaves the jury without the information to understand which "regulations" the Court would be referring to in its instructions.

<u>Willfully</u>

I have already instructed you on the meaning of willfully. A defendant acts willfully if he acted with the intent to do something the law forbids, that is with bad purpose to disobey or to disregard the law. Here, as I have instructed you, the defendant is charged with violating certain orders, regulations, and prohibitions issued pursuant to IEEPA and related to North Korea and WMD proliferators. The government, however, does not need to prove that the defendant was aware of the specific laws that his conduct would violate. In other words, the defendant does not have to know that his conduct would violate a particular law, executive order, or federal regulation, but the government must prove beyond a reasonable doubt that the defendant acted with the bad purpose to disobey or disregard U.S. law. The defendant does not specifically have to know the manner in which he violated U.S. sanctions, as long as he intended to violate the above-described orders, regulations, and/or prohibitions issued pursuant to IEEPA and related to North Korea and WMD proliferators with his conduct.[46]

*Defense Objection*: The Defendant has proposed the following language: "I have already instructed you on the meaning of willfully. A defendant acts willfully if he acted with the intent to do something the law forbids, that is with bad purpose to disobey or to disregard the law. Here, it would be to violate the above-described licenses, orders, regulations, or prohibitions with respect to North Korea and the identified designated entities. The

---

[46] *Id.* at 2411; *see also United States v. Quinn*, 403 F. Supp. 2d 57 (D.D.C. 2005); *Quinn* 05-cr-18 (JDB), ECF No. 101-3; *United States v. Sobh*, 12-cr-00087 (D.D.C. 2015).

government does not need to prove that the defendant was aware of the specific law or rule that his conduct would violate, but it must prove that the defendant knew that his conduct was in violation of U.S. law, and the government must prove beyond a reasonable doubt that Mr. Jin knew that it was illegal to conduct financial transactions that pass through U.S. financial institutions if those transactions are for the benefit of North Korea."

**Government Response**: The defense's proposed language inaccurately describes the willfulness *mens rea* element. The government must prove beyond a reasonable doubt, by reference to facts and circumstances surrounding the case, that the defendant knew that his conduct was unlawful. It is not necessary for the government to prove that the defendant had read, was aware of, or had consulted the specific regulations governing his activities. The government instead must prove that he understood that his activities violated U.S. law.

<u>License</u>

The third element that the government must prove to establish a violation of IEEPA is that at the time of the transactions at issue, the defendant had not obtained a license from the Department of the Treasury's Office of Foreign Assets Control, or OFAC, to conduct the transactions in question.[47]

---

[47] *Id.*

**Proposed Instruction No. ##**

**COUNT SEVEN: MONEY LAUNDERING CONSPIRACY**

**18 U.S.C. § 1956(a)(2)(A)**

Count Seven charges that the defendant conspired to commit international money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A). I have already instructed you as to what a conspiracy is and how you should go about determining whether one existed and whether the defendant knowingly joined and participated in it, and those same principles apply to Count Seven as they did to Counts One and Two. The only difference is that the conspiracy in Count Seven alleges an underlying crime of a violation of the money laundering statute.

Thus, to sustain its burden of proof with respect to the conspiracy charge in Count Seven, the government must prove beyond a reasonable doubt each of the following elements:

First, the Government must prove that an agreement existed between two or more persons to commit the crime of money laundering.

Second, the government must prove that the defendant intentionally, knowingly, and voluntarily joined that conspiracy, with the intent to achieve its unlawful objective (*i.e.*, to commit money laundering).[48]

I will next discuss the substantive elements of money laundering, which you also must consider in assessing the first element of Count Seven.

---

[48] *Atilla*, Ex. A at 2406.

**Proposed Instruction No. ##**

**COUNTS EIGHT THROUGH TWELVE: LAUNDERING OF MONETARY**

**INSTRUMENTS**

**18 U.S.C. § 1956(a)(2)(A)[49]**

I am now going to discuss Counts Eight through Twelve, which charge the defendant with the substantive offense of international money laundering to promote a crime.

In order to prove the defendant guilty of money laundering, the government must prove beyond a reasonable doubt the following three elements:

First, on the charged dates, that the defendant knowingly transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a monetary instrument or funds;

Second, that the transportation, transmission, or transfer, or attempted transportation, transmission, or transfer was (i) from a place in the United States to or through a place outside the United States; or (ii) to a place in the United States from or through a place outside the United States; and

Third, that the defendant acted with the intent to promote the carrying on of a specified unlawful activity—here, that is violating the International Emergency Economic Powers Act, or IEEPA.

The charged transactions are as follows:

- Count Eight charges, on or about June 22, 2018, a transfer of $389,232.09 from Ruixi Trade Limited to Winney Tobacco FZCO utilizing a U.S. financial institution.

---

[49] Adapted from Statute and 8th Cir Model Instruction 6.18.1956D – Money Laundering—Movement of Monetary Instruments and Funds to Promote Specified Unlawful Activity.

- Count Nine charges, on or about June 26, 2018, a transfer of $383,479.13 from Ruixi Trade Limited to Winney Tobacco FZCO utilizing a U.S. financial institution.

- Count Ten charges, on or about July 16, 2018, a transfer of $336,190.50 from Sufuyang Trade Limited to Winney Tobacco FZCO utilizing U.S. financial institution.

- Count Eleven charges, on or about September 24, 2018, a transfer of $280,829.18 from Winney Tobacco FZCO to Cooperativa de Tabacaleros de Jujuy (CTJ) utilizing U.S financial institution.

- And Count Twelve charges, on or about October 10, 2018, a transfer of $494,208.00 from Winney Tobacco FZCO to Cooperativa de Tabacaleros de Jujuy (CTJ) utilizing a U.S. financial institution.

A "monetary instrument" means, among other things, coin or currency of the United States or of any other country—such as U.S. dollars—money orders, negotiable instruments or checks in bearer form or otherwise in such form that title thereto passes upon delivery.

"Funds" refers to money or negotiable paper, which can be converted into currency.[50]

"Transport," "transmit" and "transfer" are words that have an ordinary, everyday meaning.

The government need not prove that the defendant physically carried the funds or monetary instruments in order to prove that the defendant is responsible for transporting, transmitting, or transferring it. All that is required is proof that the defendant caused the funds or monetary instrument to be transported, transmitted, or transferred.[51]

With respect to the third element, I instruct you as a matter of law that the term "specified unlawful activity" includes a violation of IEEPA as charged in Counts Eight through Twelve.[52]

---

[50] *Atilla* at 2386.
[51] *Id.*
[52] *Id.* at 2387.

***Defense Objection:*** The Defendant has proposed adding the following language to the end of this instruction: "The government must prove beyond a reasonable doubt that in carrying out the alleged transportation, transmission, or transfer charged in each of Counts Seven through Twelve, the defendant acted with the intent of promoting the "specified unlawful activity," i.e., the violation of IEEPA."

***Government Response:*** The Defendant's proposal is duplicative of the language in the third element above ("Third, that the defendant acted with the intent to promote the carrying on of a specified unlawful activity—here, that is violating the International Emergency Economic Powers Act, or IEEPA."). It is not necessary to repeat that the government carries the burden of proof, as that is listed throughout the instructions.

**Proposed Instruction No. ##**

**THEORIES OF LIABILITY**

I will now explain to you the different theories of liability by which the defendant can be found guilty of a crime. These theories apply to the substantive offenses I just described, specifically the violations of IEEPA in Counts Three through Six and the violations of the money laundering statute in Counts Eight through Twelve.

**A.  Willfully Causing an Act to be Done (Redbook 3.102)**

First, you may find Mr. Jin guilty of a substantive offense without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense.  A defendant is responsible for an act which he willfully causes to be done if the act would be criminal if performed by him directly or by another.  To "cause" an act to be done means to bring it about.  You may convict the defendant of the offense charged if you find that the government has proved beyond a reasonable doubt each element of the offense and that the defendant willfully caused such an act to be done, with the intent to commit the crime.

**B.  Aiding and Abetting (Redbook 3.200)**

Second, you may find Mr. Jin guilty of a substantive offense, which in this case consists of Counts Three through Six, and Counts Eight through Twelve, without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed if he aided and abetted the commission of the crime.  Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender.  A person who aided and abetted another person in committing an offense or attempting to do so is sometimes also called an accomplice.

It makes no difference which label you attach.  If you find beyond a reasonable doubt that the crime was committed by someone—even if that person is not identified or caught—and that

Mr. Jin knowingly associated himself with the commission of the crime, participated in the crime as something he wished to bring about, and intended by his actions to make it succeed—then Mr. Jin is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

This theory of liability breaks down into five requirements, each of which the government must prove beyond a reasonable doubt:

### Requirements

**1.** First, that others committed or attempted to commit each of the elements of the underlying offense;

**2.** Second, that Mr. Jin knew that the offense was going to be committed or was being committed by others.

**3.** Third, that Mr. Jin performed an act or acts in furtherance of the offense.

**4.** Fourth, that Mr Jin knowingly performed that act or these acts for the purpose of bringing about the offense.

**5.** Fifth, that Mr. Jin performed that act or these acts with the intent that the offense succeed.

***Defense Objection:*** The Defendant has proposed adding the following language: Sixth, Mr. Jin acted with the same state of mind that is required for a conviction on each of the substantive Count or Counts.  This means that, for Counts Three through Six, the government must prove beyond a reasonable doubt that Mr. Jin acted knowingly and willfully, with knowledge that exporting or causing other persons, i.e., U.S. banks, to export financial services to North Korea from the United States is in violation of United States' laws.  And for Counts Eight through Twelve, the government must prove beyond a reasonable doubt that Mr. Jin acted knowingly and intentionally, with the purpose of promoting a violation of IEEPA, through the transportation of money.

***Government's Response:*** The government objects to changing the Redbook Instruction. The language the defendant proposes is duplicative of the Redbook Instruction language below ("but does not also prove beyond a reasonable doubt that it was Mr. Jin's intent and purpose to bring about the offense . . . "). The proposed instruction also confusingly cites to the different *mens rea* elements, and does so inaccurately.

The government must show some affirmative conduct by Mr. Jin in planning or carrying out the crime. That is, you must find that Mr. Jin's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. It is not necessary that you find that Mr. Jin's act or acts were themselves unlawful.

In deciding whether Mr. Jin had the required knowledge and intent to satisfy the fourth requirement of aiding and abetting, you may again consider both direct and circumstantial evidence, including Mr. Jin's words and actions and other facts and circumstances.

However, evidence that Mr. Jin merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find him guilty as an aider and abettor.

If the evidence shows that Mr. Jin knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was Mr. Jin's intent and purpose to bring about the offense, you may not find him guilty as an aider and abettor. Regardless of whether Mr. Jin is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that Mr. Jin personally acted with the required intent.

### C. Co-Conspirator Liability[53] (Redbook 7.103 & Third Circuit) [54]

The final theory of liability is co-conspirator liability. As I previously explained, a conspiracy is a kind of partnership in crime.

The members of a conspiracy may be responsible for each other's actions. Mr. Jin is responsible for an offense committed by another member of the conspiracy if Mr. Jin was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a natural consequence of, the conspiracy.

To find Mr. Jin guilty of a substantive offense, that is, Counts Three through Six, and Counts Eight through Twelve, under this theory of liability, you must find that the government proved beyond a reasonable doubt the following six requirements:

#### *Requirements*

**1.** From on or about March 2009, to on or about March 2019, there was a conspiracy to commit a violation of IEEPA, as charged in Count Two, and that between on or about February 2009 to on or about March 2019, there was a conspiracy to commit money laundering, as charged in Count Seven;

**2.** The specific offenses of violating the IEEPA (Counts Three through Six) or money laundering (Counts Eight through Twelve) was committed by a co-conspirator of Mr. Jin;

**3.** Mr. Jin had knowingly joined the conspiracy and was a member of the conspiracy at the time of the offense;

---

[53] First paragraph taken from U.S. Court of Appeals for the Third Circuit, Model Criminal Jury Instructions, 7.03 Responsibility For Substantive Offenses Committed By Co-Conspirators (Pinkerton Liability), *available at* https://www.ca3.uscourts.gov/model-criminal-jury-table-contents-and-instructions (last accessed Mar. 28, 2019).

[54] *See generally* Redbook Instruction 7.102, 2020 Edition; *United States v. Joly Germine.*, 22-cr-161; Eighth Circuit Pattern Jury Instructions, 2017 Edition; Eleventh Circuit Pattern Jury Instructions, 2020 Edition. Each paragraph or definition is annotated with the source from which it is derived.

**4.** The offense was committed during the existence of the conspiracy;

**5.** The offense was committed in furtherance of the conspiracy; and

**6.** The offense was a reasonably foreseeable consequence of the conspiracy. It is not necessary to find that the offense was intended as part of the original plan, only that it was a foreseeable consequence of the original plan.

The principles governing the crime of conspiracy charged in Counts One, Two, and Seven that I explained earlier apply here as well.

## Proposed Instruction No. ##
## ATTEMPT

Finally, in addition to being charged with the substantive offenses (violations of IEEPA in Counts Three through Six and violations of the money laundering statute in Counts Eight through Twelve), the defendant is also charged with attempting to commit the charged crimes. An attempt to commit a crime is a crime even if the defendant did not actually complete the crime.[55]

In order to find the defendant guilty of willfully attempting to commit a crime, you must find that the government proved beyond a reasonable doubt each of the following two elements:

*First*, that the defendant intended to commit the crime, as I have defined those offenses above.

*Second*, that the defendant took a substantial step toward committing the crime which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, you may not find the defendant guilty of attempt merely because the defendant thought about it. You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find the defendant guilty of attempting to commit a crime merely because the defendant made some plans to or some preparation for committing that crime. Instead, you must find that the defendant took some firm, clear, undeniable action to accomplish the defendant's intent to commit the crime. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

---

[55] *See United States v. Stewart Rhodes*, *et. al*., 22-cr-15 (APM) (D.D.C. November 21, 2022), ECF No. 400, at 28-29 (final instructions on attempt from January 6th trial).

A person may be guilty of an attempt to commit a crime even though he subsequently changed his mind and abandoned the effort to commit the crime or did something to prevent its commission.[56]

> ***Defense Objection:*** The Defendant objects to the proposed instruction on attempt, stating "[a]ll of the substantive offenses in this case are based upon completed financial transactions. Therefore, an 'attempt' theory of liability is inapplicable and needlessly confusing for the jury."

> ***Government Response***: The Indictment alleges liability under 18 U.S.C. § 2. The government may pursue alternative theories of relief.

---

[56] *See United States v. Young*, 613 F.3d 735, 745 (8th Cir. 2010) ("We emphasize that all of our sister circuits that have faced this issue have either held that a defendant cannot abandon a completed attempt or have alluded to such a determination."); *see also* Sixth Circuit Pattern Criminal Jury Instructions (2023), 5.01 Attempt – Basic Elements, Committee Commentary 5.01 ("No defense of withdrawal, abandonment or renunciation exists after the crime of attempt is complete with proof of intent and acts constituting a substantial step toward the substantive offense.") (citing *United States v. Alebbini*, 979 F.3d 537, 548 (6th Cir. 2020) (citing *United States v. Shelton*, 30 F.3d 702, 706 (6th Cir. 1994) ("[T]he attempt crime is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense.")).

## DEFENDANT JIN GUANGHUA'S PROPOSED INSTRUCTIONS

### Proposed Instruction No. ##

### GOOD FAITH[57]

A defendant's good faith is a complete defense to all of the Counts in this case.  If a defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, there would be no crime because a defendant who acted in good faith cannot be found to have acted with the unlawful intent required for any of the Counts.  Similarly, evidence of a mistake in judgment, an error in management, or carelessness cannot establish unlawful intent.

The burden of establishing criminal intent and the lack of good faith rests upon the government.  Mr. Jin is under no burden to prove his good faith; rather, the government must prove Mr. Jin's unlawful intent beyond a reasonable doubt.[58]

> **Government Objection:** The government submits that the above proposal is inconsistent with the law regarding when a good faith instruction is required.  The *mens rea* instructions adequately capture the government's burden such that a good faith instruction is not required.  *See United States v. Howard*, 245 F. Supp. 2d 24, 38 (D.D.C. 2003) (finding that the instructions accurately recited the level of intent that the government had to prove so that a separate instruction regarding the "good faith defense" was unnecessary); *United States v. Gambler*, 662 F.2d 834, 837 (D.C. Cir. 1981) (finding that where the "trial court took care to emphasize the Government's burden of proving the element of specific intent beyond a reasonable doubt," the "instructions sufficiently covered" the requested good

---

[57] Adapted from *United States v. Nejad*, 1:18-CR-224 (S.D.N.Y. 2018), ECF 308; *see also* Eleventh Circuit Pattern Jury Instructions, S17.

[58] *Cheek v. United States*, 488 U.S. 192, 202 (holding that good faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness even if the belief is not objectively reasonable); *United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008)("A theory of defense instruction is in order if there is 'sufficient evidence from which a reasonable jury could find' for the defendant on his theory."); *United States v. Udo*, 795 F.3d 24, 29 (upholding refusal to give separate good faith instruction where the district court instructed the jury "good faith is an absolute defense to the charges in this case," and "a defendant is under no burden to prove his good faith; rather the prosecution must prove that the defendant knew the deductions and credits were false or fraudulent."); *United States v. Gooding*, 2024 WL 2132055 (D.C. Cir. 2024) (noting that district court used Eleventh Circuit's pattern "good faith" instruction and no court has found it erroneous).

faith instruction); *United States v. Rae*, 645 F. App'x 376 (6th Cir. 2016) (finding that "the good faith requirement is effectively bundled into the willfulness instruction" such that no separate instruction regarding good faith was required); *United States v. Bowling*, No. 08-6184, 2009 WL 6854970, at *1 (10th Cir. Dec. 23, 2009) (stating that "a separate good faith instruction is not necessary 'because a finding of the intent to defraud . . . necessarily implies that there was no good faith'") (citing *United States v. Chavis*, 461 F.3d 1201, 1209 n.1 (10th Cir. 2006)..

Moreover, the Defendant selectively omitted portions of the 11th Circuit instruction, the entirety of which is included below. If the Court determines this instruction is necessary, the instruction should be included in full:

"'Good faith' is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt. An honestly held opinion or an honestly formed belief cannot be fraudulent intent – even if the opinion or belief is mistaken. Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent. But an honest belief that a business venture would ultimately succeed doesn't constitute good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent."

**Defense Response:** This is a vital instruction that informs the jury that if it finds Mr. Jin sincerely believed his conduct was lawful, then it cannot convict him. The defendant would not object to the entire instruction from the Eleventh Circuit. He only omitted the portion regarding "a business venture would ultimately succeed" because it did not seem to fit this case, where there is no allegation that the defendant defrauded investors or other stakeholders of a business.

Though the government claims that the instruction is "inconsistent with the law," its actual argument seems to be that its instructions already capture the good faith defense. However, the government's instructions do not adequately convey the idea of a good faith defense because the words "good faith" do not appear anywhere in the government's proposed instructions.

Because the government has not otherwise argued that the defendant's proposed instruction misstates the law, the Court should grant this vital instruction.

## Proposed Instruction No. ##

## MULTIPLE COUNTS[59]

Each count of the indictment charges a separate offense.  Moreover, Mr. Jin is entitled to have the issue of his guilt as to each of the crimes determined from his own conduct and from the evidence that applies to him, and not the evidence that applies to any other defendant.  You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the indictment.

In reaching your verdict, bear in mind that guilt is personal and individual.  Your verdict of guilty or not guilty must be based solely upon the evidence about the defendant.  The case on each count, stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to the defendant on any count should not control your decision as to any other count. No other considerations are proper.[60]

The fact that you may find that the government has proven the guilt of any other charged defendant in this case on any other count should not influence your verdict with respect to Mr. Jin. Likewise, the fact that you may find Mr. Jin guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment.

> **Government Objection:** The government has already proposed (at p. 2) that the Court provide Redbook Instruction 2.402, "Multiple Counts – One Defendant." The government objects to this proposal as duplicative and unnecessary.
>
> **Defense Response:** This instruction has been adapted to fit the fact that, although only Mr. Jin is on trial, the indictment charges multiple defendants, and the government will likely present evidence of communications and acts by alleged co-conspirators.  It correctly informs the jury that, regardless of the quanta of proof offered by the government as to the guilt of any alleged co-conspirator or co-defendant, its verdict in this case must be based

---

[59] Adapted from Redbook Instructions 2.402 and 2.404
[60] Sand, <u>Modern Federal Jury Instructions</u>, 3-8

upon the evidence applicable to Mr. Jin, and whether the government has proven Mr. Jin's guilt beyond a reasonable doubt.

Proposed Instruction No. ##

**VENUE - CONSPIRACY**[61]

For Counts One, Two, and Seven, the indictment alleges that an overt act in furtherance of the conspiracy occurred in the District of Columbia.  There is no requirement that the entire conspiracy take place here in the District of Columbia.  Before you may return a verdict of guilty on Counts One, Two, and Seven, however, if that is your decision, the government must convince you that either the unlawful agreement was formed in the District of Columbia, or that an overt act in furtherance of the agreement took place in the District of Columbia.

Unlike all the specific elements of the crimes charged that I have described elsewhere in these instructions, this fact regarding venue need only be proven by a preponderance of the evidence.  This means the government need only convince you that it is more likely than not that an overt act in furtherance of the conspiracy took place here.

The government, however, must prove all the offense-specific elements of any crime charged, as I have described elsewhere in these instructions, beyond a reasonable doubt.  The lesser standard of preponderance of the evidence only applies to your decision on the issue of venue.

> ***Government Objection***: Venue is not an issue from the jury unless there is a "genuine issue of material fact with regard to proper venue" and the defendant timely objects to venue prior to or at the close of the government's case-in-chief.  *United States v. Fahnbulleh*, 752 F.3d 470, 477 (D.C. Cir. 2014); *United States v. Nwoye*, 663 F.3d 460, 466 (D.C. Cir. 2011).  As discussed in the government's Opposition to the Defendant's Motion to Dismiss for Lack of Venue, ECF No. 70, and its supplemental briefing on the same, ECF No. 133,

---

[61] Adapted from Ninth Circuit Manual of Model Criminal Jury Instructions, § 6.32 (available at https://www.ce9.uscourts.gov/jury-instructions/node/1204).    This instruction and the one following may need to be modified based on the Court's ruling on the defendant's pending motion to dismiss for lack of venue and motion to dismiss for extraterritoriality.  For example, if the Court rules that venue is proper under § 3238 because the statutes are extraterritorial, then the venue instruction should be modified to require the Jury to find that the offenses began outside the United States, but was continued in the United States, and that Mr. Jin was arrested or first brought into the District of Columbia.

venue for all counts is proper under 18 U.S.C. § 3238. Venue is additionally proper for the substantive IEEPA counts under 18 U.S.C. § 3237.

Here, there is no genuine factual issue as to whether the Defendant's conduct *began* abroad—a fact the Defendant has conceded, *see generally* ECF No. 132 (discussing a range of conduct that occurred abroad)—and whether the Defendant was indicted in the District of Columbia. *See* ECF No. 13. Accordingly, a venue instruction is unnecessary in this case as to all counts. *See United States v. Slatten*, 865 F.3d 767, 789 & n.5 (D.C. Cir. 2017) (upholding lower court's decision to rule on venue and not present the question to the jury because the defendants failed to raise a genuine issue of material fact regarding venue). Further, with respect to § 3237, should the Court agree with the government's position and precedent in this District that the failure to obtain a license is sufficient to establish venue in the District of Columbia, there can be no genuine factual dispute as to whether the Defendant's conduct was committed in the District of Columbia.

Should the Court find that an instruction on venue is appropriate, the Government proposes the following instruction:

"In addition to the elements I have described for you, you must decide with respect to each of the Counts in the Indictment whether venue is proper in this District.

Congress has determined that certain acts begun or committed outside the territorial jurisdiction of the United States are chargeable under U.S. law. This applies to all Counts, although, as I will separately instruct you, venue for Counts Three through Six may be proper under a separate venue provision established by Congress. Thus, as to all Counts, the government need not prove that the crime was committed in this District or that the Defendant himself was present here. Instead, it is enough if you find that the Defendant had no last known residence in any United States District and that an Indictment was filed against the Defendant in the District of Columbia. Thus, for example, if you find that the Defendant began or committed the offense outside of the United States and that an Indictment was subsequently filed in the District of Columbia, venue would be appropriate in the District of Columbia.[62]

With respect to Counts Three through Six, which are the substantive IEEPA counts, you may also find venue to be proper if you find that an act or omission was begun, continued, or completed in this District. I instruct you that the failure to obtain a license is an omission. I further instruct you that the Department of the Treasury's Office of Foreign Assets Control, or OFAC, is located in the District of Columbia.[63]

---

[62] *See* 18 U.S.C. § 3238.

[63] *United States v. Hassanshahi*, 185 F. Supp. 3d 55, 57 (D.D.C. 2016) (citing *Johnston v. United States*, 351 U.S. 215, 221 (1956); *United States v. Oseguera Gonzalez*, 20-Cr.-40 (BAH), 2020 2L 342948, at *3 (D.D.C. Oct. 29, 2020).

I should note that on this issue—and this issue alone—the United States need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence.[64] Thus, for example, as to each of the Counts, the United States has satisfied its venue obligations if you conclude that it is more likely than not that the offense began outside the United States and that the Defendant was subsequently indicted in this District.  If you find that the government has failed to prove this venue requirement by a preponderance of the evidence as to any count, then you must acquit the defendant on that count."

***Defense Response:*** As the defense has noted in the footnote to the proposed instruction, this instruction may need to be modified depending on how the Court rules on the pending motions to dismiss.  This instruction is proposed in the event the Court decides that the offenses are "domestic applications" of U.S. law and venue may be based upon § 3237.

---

[64] *United States v. Morgan*, 393 F. 3d 192, 195 (D.C. Cir. 2004) (affirming that venue is governed by a preponderance standard).

**Proposed Instruction No. ##**

**VENUE – SUBSTANTIVE OFFENSES**[65]

For Counts Three through Six, and Counts Eight through Twelve, the indictment alleges that one or more acts in furtherance of the crimes charged occurred in the District of Columbia. There is no requirement that all aspects of the crime charged take place here in the District of Columbia. Before you may return a verdict of guilty on these Counts, however, if that is your decision, the government must convince you some act in furtherance of the crime took place in the District of Columbia.

Unlike all the specific elements of the crimes charged that I have described elsewhere in these instructions, this fact regarding venue need only be proven by a preponderance of the evidence. This means the government need only convince you that it is more likely than not that some act in furtherance of the crime charged took place here.

The government, however, must prove all the offense-specific elements of any crime charged, as I have described elsewhere in these instructions, beyond a reasonable doubt. The lesser standard of preponderance of the evidence only applies to your decision on the issue of venue.

> ***Government Objection:*** As discussed above, there is no genuine issue of material fact regarding venue; thus, no instruction on venue is necessary. However, to the extent the Court determines that a venue instruction is appropriate, the government's proposed instruction on venue, *see supra*, encompasses each of the Counts in the Indictment.
>
> ***Defense Response:*** See Defendant's response to the venue objection above.

---

[65] Adapted from Ninth Circuit Manual of Model Criminal Jury Instructions, § 6.32 (available at https://www.ce9.uscourts.gov/jury-instructions/node/1204).

**Proposed Instruction No. ##**

**EVIDENCE FOR LIMITED PURPOSE**[66]

You heard evidence about North Korea's Weapons of Mass Destruction program.  I instruct you that this evidence is admitted only for the limited purpose of giving you background information about why the United States adopted sanctions on North Korea, and why certain entities and persons are on the Specially Designated Nationals list.

I instruct you that Mr. Jin is not on trial for North Korea's pursuit of Weapons of Mass Destruction.  Nor is Mr. Jin on trial for supporting North Korea's WMD program.  You are only to consider the evidence about North Korea's WMD program for the limited purpose of understanding the reasons for the United States' adoption of sanctions and why certain entities and persons are on the SDN list, and for no other purpose.  Further, you should not let your feelings about North Korea, its WMD program,or its policies influence your verdict in this case.

> **Government Objection:** The government objects to this instruction, only to the extent that the Court removes the references to the WMD program above, at the Defendant's request.

---

[66] To be given during trial if the Court permits the government to introduce evidence regarding North Korea's WMD programs.  *See* Fed R. Evid. 105.

**Proposed Instruction No. ##**

**Charts and Summaries – Not Admitted as Evidence[67]**

There have been a number of summary charts and exhibits that were shown to you but not admitted into evidence. These charts and summary exhibits serve merely as a summary and analysis of testimony and documents in the case. The charts and exhibits are here to act as visual aids for you. They are not, however, evidence in themselves. They are graphic demonstrations of underlying evidence. It is the underlying evidence and the weight which you attribute to it that gives value and significance to these charts; the charts are no better than the underlying evidence.

If you decide that the charts and summary exhibits correctly present the underlying evidence contained in the testimony and exhibits on which they are based, you are entitled to consider them in analyzing and understanding the evidence. To the extent that the charts differ from what you determine the underlying evidence to be, you may reject them.

> ***Government Objection:*** The government objects as all of the charts the government intends to admit are summaries under Federal Rule of Evidence 1006, and thus the instruction is unnecessary.

---

[67] *United States v. Nejad*, 1:18-CR-224 (SDNY 2018), ECF No. 308, Instruction 49.

**Proposed Instruction No. ##**

**Charts and Summaries – Admitted As Evidence**[68]

Some of the exhibits that were admitted into evidence were in the form of charts and summaries. For these charts and summaries that were admitted into evidence, you should consider them as you would any other evidence, which includes assessing the accuracy of the information contained in those charts or summaries.

> ***Government Objection:*** The government objects to an instruction that differentiates between certain types of evidence.

---

[68] *United States v. Nejad*, 1:18-CR-224 (SDNY 2018), ECF No. 308, Instruction 50.

**Proposed Instruction No. ##**

**EVIDENCE – JUDICIAL NOTICE[69]**

I may take what is called "judicial notice" of public acts, places, facts, and events that I consider to be matters of common knowledge or matters that can be determined easily through undisputed sources. In this case, I took judicial notice of the following facts

First, United Nations sanctions on North Korea, which banned the export of luxury goods to North Korea, does not extend to the export of tobacco to North Korea.

Second, during the time period of the alleged conspiracy, that is, from 2009 to 2019, China has continuously and openly reported data of its export of tobacco products to North Korea to the United Nations, and that this information was publicly available on the United Nations' website.

When I take judicial notice of a particular fact, you may if you choose to do so, regard that fact as proven evidence. Because you are the sole judges of the facts, however, you are not required to accept any fact that is judicially noted.

> ***Government Objection:*** The government submits that, if the Court takes judicial notice of facts, the Court should give the appropriate Instruction as it is provided in the Redbook.

---

[69] To be given in the event that evidence about UN laws and China's export is admitted through judicial notice.  Adapted from Redbook Instruction No. 2.104.

**Proposed Instruction No. ##**

**EVIDENCE OF FOREIGN LAWS**

You have heard evidence about United Nations' Sanctions on North Korea as well as evidence about the laws of foreign countries. This evidence is admitted to provide background and context, and as bearing on Mr. Jin's knowledge and intent.

I instruct you, however, that Mr. Jin is only on trial for alleged violations of the laws of the United States. He is not on trial for violating United Nations' sanctions, or the laws of any other country. Thus, regardless of whether you find that Mr. Jin complied with, or violated, U.N. sanctions or any foreign country's laws, you should base your verdict in this case on the specific instructions I have given you regarding the charges against him, which are alleged violations of U.S. law.

> ***Government Objection***: The Government objects to this instruction as unnecessary and confusing for the reasons stated in its briefing regarding the admission of foreign law. ECF No. 114. Additionally, the Government submits that foreign law has no bearing on the Defendant's knowledge and intent. The only *mens rea* that is relevant with respect to the charges at issue is the Defendant's *mens rea* with respect to U.S. law.

> ***Defense Response: Government Objection***: The defense asserts that the instruction is necessary and the evidence is relevant for the reasons stated in ECF 104 - Motion in Limine to Admit Foreign Law, ECF 122 - Reply to Opposition to Motion in Limine to Admit Foreign Law, and ECF 140 - Supplement to Motion in Limine to Admit Statistics of China's Exports to North Korea.