UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            v.<br><br>JIN GUANGHUA,<br><br>            Defendant. | Criminal Action No. 23-091-2 (CKK) |

**MEMORANDUM OPINION & ORDER**
(September 10, 2025)

Defendant Jin Guanghua faces trial on seven counts charging him with participating in a bank-fraud, sanctions-evasion, and money-laundering conspiracy. *See* Indictment, ECF No. 13; Order, ECF No. 144 (dismissing certain counts for lack of proper venue). Jin has filed a motion to dismiss the indictment against him based on allegations that the Government presented false testimony by Government witness Fernando Bartoletti to the grand jury. Def.'s Mot., ECF No. 181. The Government opposes Jin's motion, noting that the testimony identified in Jin's motion was not, in fact, presented to the grand jury that returned the indictment in this case. Gov't's Opp'n, ECF No. 184. In his reply brief, Jin identified a second aspect of Bartoletti's testimony, which *was* presented to the grand jury that returned the indictment, that he alleges was also false. Def.'s Reply, ECF No. 187. At the Court's invitation, the Government filed a brief sur-reply to address this new argument for dismissal of the indictment.[1] Gov't's Sur-Reply, ECF No. 191.

---

[1] In a subsequent filing, Jin disputed the characterization of the argument raised in his reply brief as a "new" argument. *See* Def.'s Suppl., ECF No. 190. The argument at issue involves different facts than the argument presented in Jin's original motion because it relates to a different aspect of Bartoletti's grand jury testimony. *Compare* Def.'s Mot., ECF No. 181, at 5–7, *with* Def.'s Reply, ECF No. 187, at 1–2. The Court invited a sur-reply from the Government because the Court determined that it would be helpful to know the Government's position on how the relevant legal standards applied to these facts. In its order inviting a sur-reply, the Court described the argument as "new" to indicate why the Court was calling for a further submission from the Government and to direct the Government's attention to the difference between the factual basis for the argument in the reply brief and the argument in Jin's original motion.

1

Upon consideration of the parties' submissions, which include transcripts of the relevant grand jury proceedings and other relevant records, as well as the relevant legal authority and the entire present record, the Court shall **DENY** Jin's Motion.

## I. BACKGROUND

Fernando Bartoletti, a Government witness who is a "manager for administration and finance" for the cooperating company Cooperativa de Tabacaleros de Jujuy ("CTJ"), testified before Grand Jury 22-1 in this District on May 9, 2022. Gov't's Opp'n, ECF No. 184, at 1; Gov't's Ex. 1, ECF No. 184-1, at 13. Grand Jury 22-1 expired on August 8, 2022. *Id.* Later, on March 21, 2023, the Government read portions of Bartoletti's testimony to a separate grand jury panel, Grand Jury 22-9, which returned the indictment in this case later the same day. *Id.* at 1–2; *see* Indictment, ECF No. 13.

Jin's motion and reply focus on two different aspects of Bartoletti's grand jury testimony. The Court briefly describes the context for each piece of testimony.

### A. Bartoletti's testimony about the proposed sales contract

In his initial motion, Jin focuses on testimony in which Bartoletti discusses a proposed contract between CTJ and one of the Winney Entities, Winney Tobacco FZCO, for the sale of tobacco. *See* Def.'s Mot. at 4–7. Grand Jury 22-1 heard this testimony, but Grand Jury 22-9—the grand jury that returned the pending indictment—did not. Gov't's Opp'n, ECF No. 184, at 1–2.

The proposed contract provided that Winney Tobacco would be CTJ's "exclusive sales agency to sell and develop business in D.P.R.KOREA." Def.'s Ex. 3, ECF No. 181-3, at 2.

CTJ's business records, which Bartoletti certified as authentic and which were in the Government's possession at the time of his testimony, provide additional insight into CTJ's negotiations with Winney Tobacco. *See also* Gov't's Trial Exs. 200 (records), 200C (certificate of authenticity dated April 19, 2022). Among other things, these records indicate that during their

2

negotiations, CTJ proposed adding the following clause: "CTJ will not be obligated to make sales and dispatches if D.P.R. Korea is sanctioned by international organizations." *See* Def.'s Ex. 12, ECF No. 181-12, at 4.  An email from CTJ employee Patricio Lyons to Jin's codefendant James Han explains that this proposed addition was one of several amendments to the proposed contract that were "suggested by our attorney." *Id.* at 1.  In another email, Lyons states that CTJ's board of directors had been "informed" of the contract negotiations "from the first moment that [CTJ and the Winney Entities] started the negotiations" and "they agree[d]" in principle with the proposed agreement but were waiting for a quorum to provide "final approval."  Def.'s Ex. 9, ECF No. 181-9.  Other records indicate that the negotiations of the contract spanned several months, from July 2018 to December 2018.  *See* Def.'s Exs. 3, 17, ECF Nos. 181-3, 181-17.

When the Government asked Bartoletti about this contract before the grand jury, he minimized the extent of the parties' negotiations.  *See* Def.'s Ex. 18, ECF No. 181-18, at 50–52. First, when the Government asked him what CTJ's "management committee decide[d] about entering into such a contract with Winney," Bartoletti testified, "The subject did not progress— related to any contract with Winney in this sense, and we were—and we told him—CTJ told him that if and when those sanctions were lifted, then we could talk."  *Id.* at 50–51.  Later, the Government asked Bartoletti about the clause that CTJ had proposed adding to the contract regarding sanctions:

> Q:   Now let's go down to the—there's some highlighted portions later.  There's some portions in green here.  I understand from our prior conversations that the portion in green is what was added by CTJ's attorneys when they reviewed this document.
>
> A:   I think that this contract never even got to the consideration by the lawyers.
>
> Q:   Okay.  My mistake.  But this green language was added by CTJ during the discussion?

3

> A: Of the negotiation, it might be.
>
> Q: If we look down on Page 3 of the document, it says: CTJ will not be obligated to make sales and dispatches if DPR Korea is sanctioned by international organizations.
>
> A: Yes, that's correct.
>
> Q: So fair to say that at the time CTJ was—CTJ's employees—Mr. Lyons was discussing this with Mr. Han, the concern was that if sanctions were not lifted, CTJ could have an issue with this contract?
>
> A: Yes.

*Id.* at 51–52.

Immediately following this exchange, the Government asked Bartoletti about an email that Lyons sent to Han in which Lyons stated, "My bosses are willing to continue with the contract," noting "it is essential that the signing of the contract means an increase in sales," stating that "without a contract we are selling to NK an average of 180 Qtrs per year"—apparently referring to North Korea—and proposing that the contract include at least that quantity in estimated sales. *Id.* at 52; Def.'s Ex. 7, ECF No. 181-7, at 1.

When the Government asked Bartoletti whether he understood this email to mean that Lyons knew at the time that Han was sending tobacco to North Korea, Bartoletti said he did not. *See* Gov't's Ex. 1, 184-1, at 53 (unredacted version of Def.'s Ex. 18).[2] Explaining that his understanding of this email "may have to do with language and translation," Bartoletti testified that he believed "we were selling to China." *Id.*

---

[2] Because the Government redacted this portion of Bartoletti's testimony from its initial *Giglio* and Jencks Act production on September 1, 2025, Jin did not have access to this statement at the time of filing his initial motion. *See* Def.'s Mot., ECF No. 181, at 7–8. The Government later produced to Jin an unredacted transcript of this testimony, which he addressed in his reply brief. *See* Def.'s Reply, ECF No. 187, at 4–6. Although Jin argues that the Government's redaction of this statement from its *Giglio* and Jencks Act production "raises grave doubts about its compliance" with its discovery obligations, he does not request any specific relief at this juncture. *See id.* at 6.

4

As explained above, the Government did not present any of this testimony to the grand jury that returned the pending indictment. *See* Gov't's Opp'n, ECF No. 184, at 1–2.

**B. Bartoletti's testimony about his and CTJ's beliefs about the location of Winney's operations**

Later, in his reply brief, Jin focuses on other testimony that the Government *did* present to Grand Jury 22-9. *See* Def.'s Reply, ECF No. 187, at 1. Specifically, he focuses on the following exchange:

> Q: What is it that made you personally, or CTJ in general, believe that Winney was operating in China?
>
> A: Well, all the information that we had at the time led us to believe that this was going to China. Besides, the physical destination of the product was a port in China.

*Id.* at 1 (citing Gov't's Ex. 1, ECF No. 184-1 at 19–20). Jin argues that this testimony was false, that both Bartoletti and the Government knew it was false based on information in CTJ's business records, and that the presentation of this evidence substantially influenced Grand Jury 22-9's decision to indict. *See* Def.'s Reply, ECF No. 187, at 1–3.

Although Jin argued that this testimony was false for the first time in his reply brief, the testimony was available to him at the time he filed his original motion. *See* Def.'s Ex. 18, ECF No. 181-18, at 19–20 (exhibit to Jin's original motion containing this same testimony).

## II. LEGAL STANDARD

A district court has "no authority to dismiss [an] indictment on the basis of prosecutorial misconduct absent a finding that [the defendant was] prejudiced by the misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988). For nonconstitutional errors, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from

5

the substantial influence of such violations." *Id.* at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring in the judgment)). "This standard is so high that dismissal of an otherwise valid indictment is inappropriate even where the government failed to disclose substantial exculpatory evidence it possessed at the time of the grand jury." *See United States v. Borda*, 905 F. Supp. 2d 201, 204 (D.D.C. 2012) (GK) (quoting *United States v. Williams,* 504 U.S. 36, 54–55 (1992)).

### III. ANALYSIS

On the present record, none of the testimony that Jin has identified provides a valid ground for dismissal of the indictment.

*First*, the testimony identified in Jin's original motion was not, in fact, presented to the grand jury that returned the indictment in this case. The Government presented evidence to two separate grand jury panels in this case, and the second panel heard only some of Bartoletti's testimony—not including the portion that Jin raises in his original motion. *See* Gov't's Opp'n, ECF No. 184, at 1–2. Therefore, regardless of its truth or falsity, that testimony cannot have "substantially influenced the grand jury's decision to indict," nor can it give rise to a "grave doubt" about such an influence. *See Bank of Nova Scotia*, 487 U.S. at 256. This testimony therefore cannot provide a basis for dismissal of the indictment. *Id.*

*Second*, Jin has not shown that the testimony highlighted in his reply brief that *was* presented to the grand jury was clearly false.[3] The testimony at issue is a statement about beliefs, not an observable fact. *See* Gov't's Ex. 1, ECF No. 184-1, at 19–20. The testifying witness,

---

[3] As the Government correctly notes, arguments raised for the first time in a reply brief generally "may be disregarded due to concern that the opposing party would lose an opportunity to respond." Gov't's Sur-Reply, ECF No. 191, at 3 (quoting *United States v. Brown*, 249 F. Supp. 3d 287, 295 n.1 (D.D.C. 2017) (EGS)). However, in the interest of resolving arguments on the merits to the greatest extent possible, the Court elected not to disregard this argument and instead promptly called for a sur-reply from the Government. *See* Minute Order (Sept. 9, 2025). The Court therefore considers the material in Jin's reply brief on the same basis as that in his opening brief.

Bartoletti, was a "manager for administration and finance" at CTJ with no direct role in sales. *See id.* at 12–13. And there is no indication in the records Jin highlights that Bartoletti had personal knowledge of the contract negotiations or emails that indicate that others at CTJ had reason to suspect that Winney Tobacco was linked to North Korea. *See* Def.'s Exs. 3–17, ECF Nos. 181-3 to 181-17. Accordingly, rather than showing that Bartoletti's testimony was clearly false, Jin has shown only that there is other evidence in the record that the Government could have—but did not—present to the grand jury to impeach or provide additional context for Bartoletti's account of his and CTJ's beliefs about the location of Winney Tobacco's operations. *See id.* Meanwhile, the Government presented other evidence to the grand jury showing that CTJ employees may have known that the Winney Entities were purchasing tobacco for the purpose of sending it to North Korea. *See* Gov't's Sur-Reply, ECF No. 191, at 5–6 (describing testimony of Dawson Anglin). Because the Government is not required to disclose exculpatory evidence to a grand jury, its decision not to present additional evidence to impeach or provide further context for Bartoletti's statement of belief about the location of Winney Tobacco's operations is not grounds for dismissal of the indictment. *See Williams*, 504 U.S. at 54–55.

*Third*, even assuming, without deciding, that the testimony that Jin identifies includes one or more false or misleading statements that the Government had an obligation to correct, the record does not support the conclusion that the presentation of this testimony without further context or correction would warrant dismissal of the indictment. This court has "no authority to dismiss the indictment" based on nonconstitutional errors in the grand jury process unless those errors "substantially influenced the grand jury's decision to indict" or support a "grave doubt" that the decision to indict was free from such "substantial influence." *See Bank of Nova Scotia*, 487 U.S. at 256. The present record shows that the Government presented ample evidence to support the

7

grand jury's decision to indict. *See* Mem. Op. & Order, ECF No. 146, at 3–4 (reaching the same conclusion earlier in this history of this case). There is therefore no persuasive reason to hold that Bartoletti's statement of belief about the location of Winney Tobacco's operations may have substantially influenced the grand jury's conclusion that there was probable cause to believe that Jin and his codefendants committed the offenses charged in the indictment. Therefore, the defects in the grand jury process that Jin asserts cannot support the dismissal of the indictment. *See Bank of Nova Scotia*, 487 U.S. at 256.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Jin's [181] Second Motion to Dismiss for False Testimony Presented to the Grand Jury is **DENIED**.

**SO ORDERED.**

**Dated:** September 10, 2025

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
United States District Judge