**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

**MOTION *IN LIMINE* REGARDING THE SCOPE OF CROSS-EXAMINATION**
**REQUIRED BY THE SIXTH AMENDMENT AND FED. R. EVID. 611(b)**

Guanghua Jin, through counsel, respectfully moves this Court to permit him to confront and cross-examine the witnesses against him at trial in a manner consistent with the Sixth Amendment's Confrontation Clause, and Fed. R. Evid. 611(b).

**BACKGROUND**

During Mr. Jin's first trial, the government relied on the tactic of asking narrow questions on direct examination of its witnesses, avoiding matters that would impugn the credibility of the witness or their testimony. The government then objected when Mr. Jin asked, on cross-examination, questions designed to draw out those issues.

To give one example, as detailed elsewhere, the government sought to curtail cross-examination of its forensic accountant on a mass of records that he reviewed by claiming that he would only testify based on documents relating to financial transactions, even though the other documents would have undermined his objectivity and the reliability of his opinions. Tr. 9/18/25 AM at 17.

In another example, the government put on a law enforcement witness to read emails to the jury, including emails about a company called "Complant," which the government argued was important to showing the defendants' knowledge and intent. Tr. 9/24/25 PM at 71. The emails suggested that Complant–which other evidence showed worked with Winney as a consignee on

1

some shipments from CTJ–was penalized for smuggling tobacco and weapons into North Korea. When defense counsel sought to probe this witness regarding her actual knowledge about Complant, which was based on her involvement in investigations, the government objected that such questions were "beyond the scope," and the Court agreed. *Id*. at 71-72. Had counsel been permitted to ask this question, counsel had reason to believe that the agent would have testified that the truth behind Complant was far different from what was suggested by the email–that Complant in fact never smuggled tobacco or weapons, but was penalized simply for selling a ship to North Korea. Nevertheless, the Court permitted the government to have the witness read a hearsay email–allowing the jury to infer that Winney was using a logistics company that smuggled tobacco and weapons into North Korea–but would not permit counsel to probe the witness's actual knowledge. This is not consistent with the Sixth Amendment confrontation right, Fed. R. Evid. 611(b), nor with the D.C. Circuit law on the proper scope of cross-examination.

As with the foregoing example, the Court granted the vast majority of the government's objections, obliterating critical aspects of Mr. Jin's defense. *See, e.g.*, Tr. 9/18/25 AM at 9 (precluding cross-examination on topic of the prosecution team's "discretionary decisions" in handling the investigation of CTJ that would have exposed lack of thoroughness and good faith in the investigation); Tr. 9/19/25 PM at 48-53 (prohibiting cross-examination of government's expert regarding prior opinion that was inconsistent with the evidence, testified to by the witness before the grand jury, based on government's claim that it did not elicit this opinion during trial and it was thus "outside the scope"); Tr. 9/19/25 PM at 87 (sustaining objection regarding expert witness's knowledge of benign reasons that DHID–a company involved in numerous charged transactions in the indictment–may have made payments on behalf of North Korea based on objection that such testimony was outside the scope of direct); Tr. 9/22/25 AM at 16; Tr. 9/22/25

PM at 5 (placing broad limitations on scope of bias cross-examination of the sole CTJ witness and a participant in the government's undercover investigation); Tr. 9/18/25 AM at 30-31 (prohibiting cross-examination of government's forensic accountant who carried out the bulk of the investigation regarding his role in the investigation, his relationship with prosecutors, and his influence on them); Tr. 9/23/25 AM at 69-73 (declining to permit defense counsel to introduce sworn certificate and question CTJ's witness-cooperator about it, where on direct the witness provided materially inaccurate testimony about the majority of records he certified, reflecting at least a careless attitude to sworn testimony); Tr. 9/23/25 PM at 7 (prohibiting defense counsel from questioning CTJ witness regarding the government's failure to interview or investigate his colleagues, based on "hearsay" objection that did not call for any out-of-court statement); Tr. 9/22/25 PM at 10 (sustaining "beyond the scope" objection when defense counsel sought to question government agent who conducted the undercover operation regarding the number of phone calls that were recorded with Mr. Han and Mr. Jin to show that the recording admitted at trial was only a minute fraction of the total evidence, thereby casting doubt on the government's case); Tr. 9/22/25 PM at 11 (prohibiting defense counsel from questioning the same agent, at whose direction the CTJ cooperators acted, about CTJ's refusal to tell Winney why a $220,000 was frozen, which would have explained Mr. Han's state of mind in making statements on a recording that was introduced by the government); Tr. 9/24/25 AM at 105-133 (after permitting the government to question a translator about employee salaries on a Chinese-language spreadsheet intended to show employee salaries were low, refusing to permit defense counsel to question witness about Mr. Jin's salary, on the same spreadsheet).

As a result of the government's objections and the Court's limitation of his cross-examination of witnesses, Mr. Jin was deprived of his right to meaningfully confront the witnesses

3

against him or put on a defense, and left him fighting the government's case with one arm tied behind his back.  Had he been permitted a meaningful opportunity to put on a defense, it is highly unlikely that this case would have required a retrial.  On retrial, Mr. Jin should be permitted to defend himself with the benefit of his Sixth Amendment right to confront the witnesses against him.

## ARGUMENT

The Supreme Court has described cross-examination as "the greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158 (1970).  Defense counsel must be "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318 (1974). Denial of the right to effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Id*.; *see also United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006) ("[P]articularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial, the district court should be cautious in limiting cross-examination.") (citation omitted).

Under Rule 611(b), both the subject matter of direct examination *and* issues affecting witness credibility are proper subjects for cross-examination. *See United States v. Arnott,* 704 F.2d 322, 324 (6th Cir. 1983).  "The rule in this circuit . . . is that Rule 611(b) is to be given an expansive reading." *United States v. Johnson*, 859 F.2d 241 (D.C. Cir. 1988).  And just as "[t]he government is not limited on cross-examination of defense witnesses to those portions of an event which are favorable to the defense," *United States v. Raper*, 676 F.2d 841, 847 (D.C. Cir. 1982), the defense is not limited either. *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996), *as amended*

(Jan. 28, 1997) (describing "very wide latitude that should be accorded defense counsel [on cross-examination] in a criminal case where prior discovery is necessarily limited"). As a result, little counts as "outside the scope" for purposes of cross-examination. *See United States v. Tomblin*, 46 F.3d 1369, 1386 (5th Cir. 1995) ("The subject matter of direct examination, for the purpose of cross-examination, is 'liberally construed to include all inferences and implications arising from such testimony.'") (quoting *Arnott,* 704 F.2d at 324)); *Irons v. FBI,* 880 F.2d 1446, 1462 (1st Cir.1989) (en banc) (noting, in dictum, that by testifying on direct examination, witnesses may "expose themselves [on cross-examination] to a range of questions which may go well beyond what the witness, or the examiner on direct, chooses to present during the case in chief"). Indeed, cross-examination "need only be reasonably related" to direct examination.  *Macaulay v. Anas*, 321 F.3d 45, 53 (1st Cir. 2003)

"It is always open in a criminal case for the defendant to explain away the force of specific items of the government's proof by showing the existence of other hypotheses." *Id*.; *see also United States v. Whitmore*, 359 F.3d 609, 618-24 (D.C. Cir. 2004) (reversing where district court prohibited the defendant from cross-examining a critical government witness about past misconduct under Federal Rule of Evidence 608(b)); *United States v. Anderson*, 881 F.2d 1128, 1142-43 (D.C. Cir. 1989) (finding reversible error where district court did not allow defense counsel to "cross-examine a key government witness for bias arising from a recently dismissed murder indictment" even absent express agreement to cooperate).

Precluding cross-examination is thus reversible error unless the cross-examination is only "marginally relevant." *United States v. Cornell Foster*, 982 F.2d 551, 553 (D.C. Cir. 1993) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 678-79)). "Certainly, Rule 403 does not mean that a court may exclude [arguably cumulative] evidence that will cause delay regardless of its probative value.

If the evidence is *crucial,* the judge would abuse his discretion in excluding it." *Id.* at 555 (quoting 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶403[06] (1992) (alteration in opinion)).

In *Cornell Foster*, for example, the district court disallowed defense counsel from questioning a police officer about his compliance with standard procedures–a line of questioning that would have exposed "substandard police work" and "might have bolstered Foster's position that [the officer] had a motive for wrongly identifying him." *Id*. at 554.  The defense sought to show that the defendant's arrest was suspicious because of the scant amount of cash he was carrying.  *Id*. To explain this, the police officer testified about a third man who allegedly collected cash from the defendant, even though in his earlier preliminary hearing testimony, the police officer had said nothing about this third man. *Id*. The court stopped the defense from probing the issue. *See id*. Writing for the panel, then-Judge Ruth Bader Ginsburg held that the first line of questioning about the officer's substandard work was more than "marginally relevant" and should have been allowed.  *Id.* So too regarding the second line of questioning about the officer's silence at the preliminary hearing regarding this third man.  *Id.* at 554-55.  Notably, even though counsel was able to expose the officer's silence about the third man in his report, the Court held that the officer's silence at the preliminary hearing was not cumulative, and that this error required reversal of the conviction.  *Id.*

Similarly, in *United States v. James Anthony Foster*, the D.C. Circuit reversed where the district court prohibited the defense from probing the testifying officer on matters relating to his observation of not only the defendant, but others involved in an alleged drug transaction. 986 F.2d 541, 545 (D.C. Cir. 1993). The Court held this was erroneous because "both lines of inquiry sought to elicit relevant evidence" in that they went to the fundamental question of whether the officer's

observations were accurate and reliable. *Id.* at 545. In sum, courts have committed reversible error when they stop questioning about an officer's investigation, even when those questions might seem cumulative.

The lines of cross-examination that this Court prohibited in Mr. Jin's first trial were far more than "marginally relevant." For example, lines of questioning intended to show that witnesses had previously made inaccurate statements under oath went to the heart of their credibility, and were squarely within the scope of Fed. R. 611(b). Lines of questioning that would cast doubt on the completeness, accuracy, objectivity, and thoroughness of the government's expert were admissible, and should have been permitted.

Similarly, questions about the investigation should have been allowed. Specifically, the government's handling of CTJ–a company at the heart of the charged conduct, who also supplied much of the evidence introduced by the government, and participated in the undercover investigation–was a proper subject for cross-examination. It would have shown "substandard police work" that cannot be relied upon. *Cornell Foster*, 982 F.2d at 554.

Given the protections of the Sixth Amendment and the wide berth of Rule 611(b), Mr. Jin should have been able to correct the misleading impression left by direct testimony. This includes testimony about salaries, misleading or incomplete information that appeared in emails, incomplete information about key companies such as DHID, and incomplete information about what an expert purporting to give objective opinions about key matters in the case actually knew, saw, and previously claimed during his work on the case. When the D.C. Circuit held that the defense was "always open in a criminal case for the defendant to explain away the force of specific items of the government's proof," it was speaking specifically about cross-examination. *Foster*, 986 F.2d at 545.

A trial without meaningful cross-examination is a mere formality.  Mr. Jin cannot have a fair trial if he is not permitted to meaningfully confront the witnesses against him.   On retrial, the Court should afford Mr. Jin wide latitude on cross-examination in order to meaningfully confront the witnesses against him.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

A copy of the foregoing motion was filed via ECF, which automatically sends a copy to all counsel of record.

Respectfully submitted,
By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Burnham & Gorokhov, PLLC
1634 I Street NW, Suite 575
Washington, D.C. 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

1