**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,    )
       )
       v.    )     No. 23CR91-CKK
       )
GUANGHUA JIN.    )

## MOTION FOR AN EVIDENTIARY HEARING, TO COMPEL THE GOVERNMENT TO COMPLY WITH ITS *BRADY* OBLIGATIONS , AND TO COMPEL THE GOVERNMENT TO IDENTIFY THE EVIDENCE THAT IT DESTROYED

Guanghua Jin, through counsel, respectfully moves the Court for an evidentiary hearing to ensure the government's compliance with its Brady, Giglio, and other disclosure obligations. Specifically, a hearing should be held to (1) determine what steps, if any, the government has taken to comply with its disclosure obligations, (2) require the government to state, on the record, which of Mr. Jin's disclosure requests it claims do not constitute *Brady*, *Giglio*, or Rule 16 material, (3) require the government to identify evidence that it has deleted or otherwise destroyed, and (4) determine whether, and to what extent, the case is infected with disclosure violations by the government.  In support of this motion, Mr. Jin states as follows:

### BACKGROUND

Over the course of more than a year, Mr. Jin has sought *Brady* and *Giglio* information from the government.  *See, e.g.*, ECF 276-4, 276-5, 276-6 (prior *Brady* letters).  Most recently, on February 23, 2026, undersigned counsel sent the government a letter seeking additional information and documents pursuant to *Brady* and *Giglio*.  Exhibit 1–Defense Correspondence to Government Dated 2/23/25.  Many of the requests in the letter were addressed to specific and narrowly tailored items of *Brady* and *Giglio* evidence revealed to exist through the government's Jencks productions from the first trial.

For example, the defense sought "[a]ll follow-up communications with CTJ relating to CTJ's request for a bank letter," and specifically identified the relevant circumstances for these communications: in 2021, CTJ had requested then AUSA Grady to sign a draft letter addressed to JPMorgan falsely claiming that CTJ never transacted with North Korea. *Id.* CTJ's draft letter to AUSA Grady was never produced before trial. The government eventually produced the draft letter in February 2026 (5 months after trial), and the defense sought follow-up communications between the government and CTJ on this matter, including communications showing how the government handled this request.

On March 2, 2026, the government responded as follows:

> We will not be making any further production responsive to these requests, as I am not aware of any documents that are responsive/discoverable. I appreciate that your requests also ask for information related to things that are not documented—both things that were never documented (like oral communications) but also things that may have been deleted (like old emails)—I also have no responsive information to produce at this time. I will continue to keep an eye/ear out for documents/information that relate to the CTJ and UC issues you identified in your letter (and that I know are important to your proposed impeachment plans at trial).

Exhibit 2–C. Magnani Email to E. Gorokhov and Z. Zhang Dated 3/2/25.

The government's claim that there are no responsive documents not only strains credulity, but has resulted in continued suppression of exculpatory evidence.

## ARGUMENT

The government's "response" is open to three interpretations: (1) the government contends that the item requested is not *Brady* (i.e., "as I am not aware of any documents that are responsive/<u>discoverable</u>"), *see* Exhibit 2 (emphasis added); (2) the item never existed (i.e., "things that were never documented"), or (3) the item existed but was destroyed (i.e., " things that may

have been deleted").[1]  Under any of those scenarios, the government's failure to provide responsive documents and information violates *Brady*.

To use a concrete example: Mr. Jin requested that the government produce an email written by Dawson Anglin on January 24, 2022 to DHS, regarding errors in the DHS's write-up of an undercover investigation.  The email assuredly exists, because on that same day, Anglin wrote an email to AUSA Seifert (heavily redacted) stating: "I sent an e-mail to HSI today to get clarification on a part in their UC meeting write up that I think was written incorrectly."  Exhibit 3 - Anglin email dated 1/24/22 at 2.  The information is *Brady* because, at a minimum, it shows that DHS made errors in documenting the undercover investigation, which impeaches the thoroughness and reliability of its work.  Additionally, because Anglin relied on HSI's reporting to prepare the criminal complaint, and because complaint featured a number of false factual allegations, this suggests that the same errors were repeated.  This also makes the information impeaching and thus producible under *Giglio*.  The specific email written by Anglin would identify the error, and to the extent that this error made its way into important documents, including documents submitted under oath–like the criminal complaint, it would impeach Anglin by showing that he relied on an "write-up" that he later conceded to be incorrect. This fact would also expose that DHS's sloppy work impacted other aspects of the government's case, and would show the sloppiness of Anglin and others who failed to double-check that work.  The email is a document that can be used to impeach

---

[1]     That case-related communications may have been deleted raises a serious issue.  The US Attorney's Manual directs that "Prosecution team members should preserve for later review and possible disclosure all substantive e-communications created or received by team members during the course of an investigation and prosecution, and all e-communications sent to or received from lay witnesses, regardless of content.  E-communications should be preserved in their native electronic format; when that is not feasible, another method of preservation should be identified and used."  USAM § 9-5.004, available at https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.004

Anglin and others. But the government's response makes it impossible to determine whether it is withholding this email because (1) it claims the email is not *Brady/Giglio*, i.e., it is not "responsive/discoverable," or (2) because the email has been deleted.

To take another example, as described in the Background Section, Mr. Jin requested all follow-up communications with CTJ regarding CTJ's request for a bank letter. Ex. 1 at 1-2. In CTJ's request, its attorney asked AUSA Grady to represent falsely that the Department of Justice determined that CTJ never transacted with North Korea. Anglin advised against signing the letter, stating: "we cannot sign the letter the way it is written. CTJ had extensive historical business with North Korea." In the same email chain, Dawson Anglin and AUSA Grady then discussed helping CTJ with banks in other ways.

Mr. Jin requested the government's follow-up communications with CTJ because, having determined that it sought a false letter, the government's response to this would fall within the scope of *Brady* and *Giglio*. It showed that the government was willing to tolerate falsehoods, and even an attempt by CTJ to commit bank fraud was something that could broker no complaint by the government. The government engaged in willful blindness, and Mr. Jin is entitled to present evidence of this fact in his defense. AUSA Grady's communications to CTJ in the follow up to that request for a fraudulent letter is exculpatory evidence impeaching CTJ and the thoroughness and integrity of the investigation. They are also admissible as a statement of a party-opponent. Fed. R. Evid. 801(d)(2). Yet, based on the government's response, it is unclear whether (1) the government disagrees that the communications are *Brady/Giglio*, (2) there were no written communications between AUSA Grady and CTJ's counsel despite the clear intention to respond, or (3) these communications were deleted.

The deletion of records raises a particularly serious issue, separate and apart from failure to search for *Brady* or failure to produce it.  Under the Fifth Amendment, the government has a duty to preserve evidence that has apparent exculpatory value.  *California v. Trombetta*, 467 U.S. 479, 489 (1984).  The CTJ bank letter clearly has such value.  When defense counsel requested the letter, the government stated that it was uncertain that it still possessed the letter. Exhibit 4 – Email from C. Magnani to E. Gorokhov and Z. Zhang dated 2/16/26 ("On the Peralta attachment, I can tell you that I haven't been able to find it (or even confirm whether there actually was an attachment) but I planned on asking Dawson tomorrow if he can check his old emails (he was on the thread, I believe) to see if he has it.  So give me a chance to do that and I'll revert.").  Eventually, the government apparently obtained the letter from Dawson Anglin, not from the records of AUSA Grady.  *Id*. This is problematic because AUSA Grady would have been the person to communicate with CTJ in the wake of the false latter, and to the extent those communications show the government continued working with CTJ and failed to investigate why its lawyer sent a false letter for the government to endorse, they are clearly exculpatory.  Relatedly, the fact that the government did not know if the letter even existed means the government has not undertaken to search for exculpatory evidence, in accordance with its duty to do so.

As a final example, Mr. Jin requested–and subsequently filed a motion to compel–*Brady* information relating to the fact that Patricio Lyons instructed James Han to remove references to North Korea on bills of lading.  ECF 276.  The government acknowledges that *Brady* includes information that is not documented.  *See* Exhibit 2 ("I appreciate that your requests also ask for information related to things that are not documented.")  However, the government has not disclosed how it learned that Patricio Lyons instructed Mr. Han to change the bills of lading.

The government's response does *not* suggest that it made any attempt to seek this information from Agent Tarango, which it has a duty to do. *See*, e.g., *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) (collecting cases from the Fifth, Seventh, and D.C. Circuits discussing the government's duty to seek out exculpatory information). Agent Tarango is a member of the prosecution team. His knowledge is imputed to the government. By not seeking out this information from Agent Tarango, the government is intentionally suppressing *Brady* information.

Moreover, the government's failure to produce even a single document related to the UC investigation strains credulity, considering that an investigation of this nature should generate significant documentation. As former FBI agent Michael Clarke details in his affidavit, there should be documentation relating to the planning and approval of the undercover investigation, and documentation of every contact with Patricio Lyons and Fernando Bartoletti. Exhibit 5 – Declaration of M. Clarke. Such documentation would include any exculpatory information gained from the investigation (such as Lyons' role in changing the bills of lading), as well as any impeaching information regarding its cooperating sources. *Id.* Consistent with Mr. Clarke's declaration, the US Attorney's manual specifies as *Giglio* information agents'

> (1) failure to follow legal or agency requirements for the collection and handling of evidence, obtaining statements, recording communications, and obtaining consents to search or to record communications[, and]

> (2) failure to comply with agency procedures for supervising the activities of a cooperating person (C.I., C.S., CHS, etc.)

USAM § 9.5-100.

The government has evaded providing any information regarding the existence of such documentation through vague statements that signify nothing. *See* Exhibit 2 ("We will not be making any further production responsive to these requests, as I am not aware of any documents that are responsive/discoverable."). If the prosecution team (which includes DHS) failed to

6

document the undercover investigation, including exculpatory information learned during the course of the investigation, the government must disclose this fact because it is *Brady*. If the government previously had documentation but failed to preserve the documentation, it must disclose this fact as *Brady*. And to the extent the government believes that the information sought is not disclosable because it is not exculpatory or impeaching, it must make this clear, so that the record is clear for future litigation in this Court and, if necessary, on appeal.

## CONCLUSION

The foregoing examples are merely an illustration of the fact that the government has thwarted Mr. Jin's efforts to obtain exculpatory and impeaching information. These facts support the need for an evidentiary hearing, at which the government should be required to detail its efforts to seek out exculpatory information, to identify the documents and information Mr. Jin seeks that the government claims are not Brady/Giglio, and to identify the evidence that has been deleted or otherwise lost.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
DC Bar No. 979785
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.