**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 23CR91-CKK |
| | ) | |
| GUANGHUA JIN. | ) | |

**MOTION TO COMPEL PRODUCTION OF *BRADY* AND *GIGLIO*
INFORMATION RELATING TO FALSE TESTIMONY
REGARDING THE UNDERCOVER INVESTIGATION
<u>AND FALSE SWORN STATEMENTS BY CASE AGENT</u>**

Guanghua Jin, through counsel, and pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150, 154-155, (1972), and their progeny, respectfully moves the Court to compel the government to produce (1) the redacted and omitted portions of Dawson Anglin's grand jury testimony discussing the undercover operation, and (2) Agent Joy Gallante's communications with the prosecution team, including but not limited to Anglin, regarding the warrant affidavits and criminal complaints she signed under oath.

**BACKGROUND**

**A. Anglin's Redacted And Withheld Grand Jury Testimony Regarding the Undercover Investigation.**

Dawson Anglin testified before the grand jury about the undercover investigation. As discussed in detail elsewhere, the indictment contains a number of false and misleading allegations related to the undercover investigation.

For example, the indictment falsely alleges that Winney omitted North Korea from the bills of lading in order to evade sanctions, when in reality, the undercover investigation produced evidence that the omissions were directed by CTJ, Winney's tobacco supplier.

1

Likewise, the indictment falsely attributes statements to Mr. Jin that he did not make. In describing the July 2019 meeting in Argentina, the indictment alleges that Mr. Jin stated "[CTJ] was 'the ones committing fraud" and "I'm simply buying merchandise." See ECF 13–Indictment, at ¶66. In reality, Mr. Jin said: "We are not money laundering. We're buying goods. Are you sure? What is money laundering?" Exhibit 1 - Original Translated Transcript of 7/11/2019 Meeting at 18. This was clearly reflected in the government's own transcript of the meeting. Although the government's own transcript clearly identified that it was an interpreter who made this statement, the indictment attributed it to Mr. Jin. And as shown in the government's later, certified translation, the interpreter, like Mr. Jin, did not accuse anyone of committing fraud, but instead simply translated Mr. Jin's statement as saying: "I think you are mistaken. I'm buying merchandise." See Exhibit 2–July 11, 2019 Meeting Transcript, at 16.

Anglin may have repeated the same false allegations in the indictment in his testimony to the grand jury. Or he may have contradicted those allegations. We do not know, because portions of Dawson Anglin's grand jury testimony were carefully edited to remove statements Anglin made about the undercover investigation. The government redacted large portions of the first and last pages of relevant testimony, and removed all pages in between. Exhibit 3–Anglin Grand Jury Transcript at 80-87 (with pages 81 through 86 removed).

The redactions and omissions to Anglin's grand jury transcript were made alongside other, similar instances where the government removed or redacted statements by Anglin related to the undercover investigation, and more generally the government's pattern of scrubbing witness statements of exculpatory information. See, e.g., ECF 309–Motion to Dismiss for Flagrant Government Misconduct, at 14-16 (discussing pattern of redactions relating to

2

Bartoletti's false testimony); Id. at 26-27 (discussing redactions of exculpatory information in Anglin's emails).ECF 309.

As detailed in Mr. Jin' Motion to Dismiss for Flagrant Government Misconduct, Anglin interacted with HSI, and noticed apparent errors in HSI's reporting of the undercover operation. He informed AUSA Seifert that he had emailed HSI about the error. Exhibit 3 - Updated version of Emails from Anglin to AUSA Seifert on 1/24/2022. When the government initially produced the email, however, Anglin's entire statement about the error was redacted. Exhibit 4 - Original version of Emails from Anglin to AUSA Seifert on 1/24/2022. And when the government eventually produced a partially unredacted version, it still failed to disclose the document containing the error and Anglin's email to HSI describing the error. The government continues to refuse to provide the Anglin email.  See ECF 309.  Anglin also initially included a reference to discussion of bills of lading on the May 21, 2019 call in the criminal complaint he drafted, and emailed about this specific call with the prosecution, after which reference to the exculpatory information was omitted in the indictment.  As the Court is aware, the government has steadfastly refused to provide any substantive information about the documentation of the undercover investigation.

### B. Case Agent Joy Gallante's Communications with the Prosecution Team Regarding the False Or Misleading Affidavits She Signed Under Oath.

Dawson Anglin drafted the criminal complaint, which contains a plethora of false statements and material omissions. *See, e.g.*, ECF 309 at 16-21.  Agent Joy Agallante signed that complaint under penalty of perjury.  Prior to signing the complaint, Agent Gallante received the complaint from another member or members of the prosecution team, which included Anglin. The same is true of the affidavits that Agent Gallante signed.  As discussed in the Motion to Dismiss and elsewhere, the affidavits that Agent Gallante signed under penalty of perjury contain

a multitude of falsehoods and omissions, all of which are to the detriment of Mr. Jin and his colleagues at Winney.  ECF 309 at 9-10, 16-20.  The affidavits and the complaint contain substantially the same allegations.  The defense requested these communications that would show how Agent Gallante came to sign multiple false submissions to the Court under penalty of perjury.  But the government has failed to provide any response—even a representation that it reviewed these communications and made the determination that they are not exculpatory.[1]  As discussed below, the Court should order prompt disclosure of the *Brady* information sought.

## ARGUMENT

In Mr. Jin's first trial, the government's justification for its extensive redactions of Jencks was that "the redacted material is not the subject of [the witness'] testimony."  ECF 182–Motion to Compel Production of Unredacted Jencks, Brady, and Rule 16, at 16; ECF 182-14–September 2, 2025 Email of K Seifert to E. Gorokhov.  But if the government could avoid its *Brady* disclosure obligations by simply avoiding subjects that undermine its case or its witnesses, the right to exculpatory information would be meaningless.  Indeed, instances in which the government has withheld exculpatory information contained within what would ordinarily be considered Jencks constitute misconduct.  *See, e.g.*, DOJ Office of Professional Responsibility ("OPR"), 2012 Annual Report (finding misconduct where DOJ attorney failed to disclose information from a non-testifying witness that contradicted the testimony of a key government

---

[1]    At the March 12, 2026 telephonic hearing, the government twice asked the Court to permit an *ex parte* proffer in lieu of an affidavit from Agent Tarango.  There was no basis for the request, because a party's compliance (or lack thereof) with discovery obligations is not work product subject to protection from disclosure. The government's apparent belief that it can make representations concerning due process claims in secret, shielded from the adversarial process, is troubling.  The government's request is, however, a continuation of its intentional effort to conceal the fact of whether documentation from the undercover investigation exists or was retained.  On this record, if the government subsequently claims that information requested by the defense is not exculpatory or impeaching, the Court should be skeptical of such claims and at minimum perform an independent review.

witness regarding the defendant's actions.  OPR also found that the DOJ attorney failed to disclose information provided by the non-testifying witness that implicated the government witness in the crime with which the defendant was charged).[2]

Given that the indictment contains false allegations related to the undercover investigation, Anglin's grand jury testimony about the undercover investigation is either exculpatory or impeaching.  If Anglin's testimony about the UC investigation is consistent with the indictment's false allegations, then such testimony would be impeaching because it would show that Anglin adopted the same false allegations in his sworn testimony.  If Anglin's testimony contradicted the indictment's false allegations, then such testimony would be exculpatory.

Either way, *Brady* makes no distinction between exculpatory and impeaching information, and both types of information must be disclosed to the defense. *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988) ("Under *Brady* the government may not suppress evidence favorable to the accused when it is material to either guilt or punishment, and under *Giglio* and *Bagley* such evidence includes impeachment material."); Local Criminal Rule 5.1(b)(4) (government must produce "Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial). Information tending to show a lack of thoroughness, reliability, and good faith is considered *Brady* and must be disclosed.  *Kyles v. Whitley*, 514 U.S. 419, 445 (1995). Anglin's false or otherwise inaccurate statements under oath are powerful evidence of the lack of thoroughness and/or lack of good faith of a key member of the prosecution team.  False or misleading statements by Anglin under oath would also provide a basis to impeach Anglin under

---

[2]     *Available at* https://www.justice.gov/sites/default/files/opr/legacy/2013/08/21/annualreport2012.pdf (last visited March 13, 2026)

Fed. R. Evid. 608(b), regardless of whether the government again chooses to avoid the topic of the undercover investigation during Anglin's direct examination. Indeed, the D.C. Circuit reversed a conviction where a defendant was prohibited from cross-examining a police officer based on his false testimony under oath in an *unrelated* case. *United States v. Whitmore*, 359 F.3d 609, 620 (D.C. Cir. 2004) ("Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath . . . [C]ross-examination of a witness about past false statements he made under oath would be proper under Fed.R.Evid. 608(b) as an instance of the witness's conduct probative of untruthfulness") (citing *United States v. Cuffie,* 80 F.3d 514, 517 (D.C. Cir. 1996). And in *Cuffie*, the government conceded—and the D.C. Circuit agreed—that prosecutors' failure to disclose a witness's prior perjury, which could be used to attack the witness's credibility under Rule 608(b), was a *Brady* violation. 80 F.3d at 517. And deliberate efforts to hide *Brady* information–which the redactions of Anglin's testimony are–constitute prosecutorial misconduct. *United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2017 WL 4797829, at *3 (E.D.N.Y. Oct. 23, 2017) (describing "bad faith or deliberate efforts to knowingly hide *Brady* material" as prosecutorial misconduct); *See also United States v. Burnside*, 824 F. Supp. 1215, 1260 (N.D. Ill. 1993) ("AUSA Hogan sought to ensure that the defense would never seek out the *Brady* information by taking actions to mislead the defendants into thinking that no *Brady* information existed. The government should not be allowed to profit from its efforts to prevent defendants from obtaining *Brady* information.").

Anglin's redacted grand jury testimony regarding the undercover investigation is both exculpatory and impeaching, and must be produced to the defense. The government should not be permitted to withhold such information until its production of Jencks. *United States v. Moore*,

867 F. Supp. 2d 150, 152 (D.D.C. 2012) ("If information is both Jencks material and *Brady* material, it must be disclosed on the earlier *Brady* timeline.").

For substantially the same reasons, the Court should order the government to produce communications between Agent Gallante and the members of the prosecution team regarding the affidavits and criminal complaint she signed under penalty of perjury.  The Criminal Complaint, like the indictment, contained verifiable falsehoods that could have been easily checked against transcripts in the government's possession.

Mr. Jin is entitled to show, in his defense, that a former case agent in this case adopted false allegations, apparently drafted by another member of the prosecution team, in a sworn affidavit she signed under oath, all without performing her own independent evaluation of the truth of those allegations.  This undermines the thoroughness and integrity of the investigation. *Kyles*, 514 U.S. at  445.   Even if such communications are not admissible, they would certainly contain facts that can be pursued through cross-examination and that would lead to the discovery of admissible evidence. *United States v. Saffarinia*, 424 F. Supp. 3d 46, 91 (D.D.C. 2020)("items may still be material and favorable under *Brady* if not admissible themselves so long as they could lead to admissible evidence.")(cleaned up).  And Mr. Jin has a due process right to present the full story of government misfeasance and malfeasance coherently and completely. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment . . . the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (cleaned up); *Old Chief v. United States*, 519 U.S. 172, 187 (1997) (holding that a party is entitled to present its case as "a colorful story with descriptive richness.").

**CONCLUSION**

For all of the foregoing reasons, the Court should order the government to produce, forthwith, (1) the redacted and omitted portions of Dawson Anglin's grand jury testimony discussing the undercover operation, and (2) Agent Joy Gallante's communications with the prosecution team, including but not limited to Anglin, regarding the warrant affidavits and criminal complaints she signed under oath.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
DC Bar No. 979785
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.

9