**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No.: 23-CR-91-02 (CKK)** |
| | : | |
| **JIN GUANGHUA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**United States's Opposition to
Defendant's Notice of Expert Testimony [ECF No. 313]**

The United States respectfully files this opposition to the defendant's Notice of Expert Testimony for Mr. Michael Clarke.  ECF No. 313.  The notice does not offer cause for why it was filed within two weeks of trial.  The Court should prohibit Mr. Clarke's testimony both because it was noticed late without cause and because it should be excluded as irrelevant on the merits.  Mr. Clarke's proffered background and experience as an FBI undercover agent offer limited, if any, informative value on Homeland Security Investigations (HSI, which is a component of the Department of Homeland Security (DHS)) undercover operation applicable to this case.  Without any knowledge of the relevant policies applicable to this case, his testimony offers no valid basis to impeach the undercover agents that will testify in this case.  In addition, to the extent his opinions are offered to argue that HSI's policies are deficient, the Court should decline the defendant's invitation to inject an irrelevant policy debate into this trial under Fed. R. Evid 403.  Exclusion of this policy debate under Rule 403 is especially appropriate given the defendant's view that the mere fact that the undercover agents in this case worked at a politically controversial agency (that remains partially unfunded because of partisan debate) is relevant for impeaching the "thoroughness and integrity of the UC operation."  *See* ECF No. 319 at 8.

**I.    Mr. Clarke Is not an Expert in HSI Undercover Policy.**

As an initial matter, the defendant's expert notice ostensibly portrays an attempt to pigeonhole an FBI agent with experience in FBI undercover operations to the HSI undercover operation in this investigation. The defendant proffers that Mr. Clarke will "testify about documentation guidelines applicable to undercover investigations involving the FBI, including joint investigations between the FBI and DHS." ECF No. 313 at 2. Mr. Clarke attempts to expand on this cursory representation and broaden the aperture of his undercover experience in his accompanying affidavit by indicating he "worked numerous complex criminal investigations which utilized the *undercover investigate technique* (emphasis added) with FBI interagency partners such as DHS." These representations reveal that Mr. Clarke's experience is "applicable to an FBI undercover investigation," not an investigation run by DHS.

While the defendant offers the Court a vague submission that Mr. Clarke's experience as an undercover "include[es] investigations that involve other federal agencies such as DHS," he does not submit that he worked with, or has any knowledge of, specific DHS undercover policies, necessary to opine on the undercover investigation in this case. Based on his representations, his testimony is limited to "adhered to established guidelines and standard best practices" (ECF 313-2 at para. 1) for FBI operations.

Logically, a career with the FBI means Mr. Clarke's know-how on undercover operations is based on his experience as an FBI agent. Mr. Clarke never worked for DHS and does not claim to know about guidelines applicable to DHS. While Mr. Clarke posits he is an expert on the "undercover technique" discussed *supra,* Mr. Clarke does not, and conceivably cannot as an FBI agent, attest that he is an expert on internal DHS policy, even if he did interagency undercover operations with DHS. Assuming *arguendo* that Mr. Clarke took part in various undercover

investigations with DHS partners during his career, certainly such partnerships do not render Mr. Clarke an expert on the policies of a separate investigative agency.  Mr. Clarke is qualified to testify to his opinions regarding the "best practices" and what an agent "should" or "could" do in an undercover investigation, but his opinion draws from the wrong source material—that is, it is "based on sufficient facts or data" from his FBI experience, which is not relevant here.

Consequently, his enigmatic representations of his experience offer no clarity on the scope or extent by which his experience applies to DHS undercover operations, or more importantly, his knowledge of internal DHS policies as applied to undercover operations.  For example, perhaps Mr. Clarke was an undercover in a case where DHS was the *overt* agency and, therefore, never interacted with DHS *undercovers* and their respective undercover policies.

Similarly dubious is Mr. Clarke's representation that he has worked investigations which utilized "the undercover technique."  This singular, catch-all, representation of this investigative method offers no acknowledgement that techniques may differ across agencies, let alone based on the facts of a particular case.  Instead, Mr. Clarke's "my way or the highway" characterization in the defendant's proffer would force the jury to transpose Mr. Clarke's experience to that of the undercover agent in this case.  If Mr. Clarke were allowed to testify, it would either create a mis-impression that his opinions are broadly accepted across the undercover law enforcement community (and, therefore, that the undercover actions in this case either violated policy or were even illegal) or, because the government would have to rebut his testimony with evidence about relevant DHS undercover policies, it would invite the jury to question the merits of two undercover policies, only one of which is relevant to this case.

## II.    Mr. Clarke's testimony will turn the undercover operation into a sideshow for the jury and should be barred by Fed R. Evid. 403.

Equally concerning is the defendant's attempt to use Mr. Clarke to testify in this case on the eve of the retrial, giving notice less than two weeks before trial is set to begin.[1]  Simply put, the defendant wants to use Mr. Clarke to inject unnecessary confusion into the trial.  The Court should not let him.

The Court is acutely familiar with the complexity of this case.  *See* ECF No. 35 ("[T]he Court concludes that this case is so unusual and complex due to the nature of this prosecution…") The charges against him span a muti-national, decade long, conspiracy to commit bank fraud, violate U.S. sanctions, and launder money.  The narrative of this case covers a complex web of Chinese front companies to obfuscate payments for tobacco going to North Korea. The investigation was robust, delving into all facets of the defendant's conduct since 2009.  And the government's presentation of the defendant's criminal scheme will involve hundreds of exhibits covering this period.

To the contrary, the undercover operation is narrow, spanned two months from May-July 2019, *post-dated* the charged conspiracy, and is otherwise trivial compared to the investigation writ large.  In the first trial, the government only used the undercover investigation as a means of identifying the defendant and his Gmail address (and co-defendant Han and his email addresses). In the re-trial, the government will do the same thing, with the possible addition of adding the exact phone call the defendant claims is exculpatory.  Exhibit 404.  Despite the narrow relevance

---

[1] The government asks the Court to view this late-filed notice in the broader context of the defendant's wave on other filings and preclude the testimony on the alternative ground that the notice is untimely.  The government has raised this issue in a recent filing.  *See* ECF No. 316 at 13 (although no Rule 16 expert deadline was set in advance of the retrial, the government believes that is because there was no indication that additional experts would be called).

of the government's undercover evidence, the defense strategy seems focused on impeaching the "investigation" broadly by focusing on aspects of the undercover investigation.[2]  That is, because of perceived transgressions in the undercover operation, the defendant hopes the Court will allow him to use Mr. Clarke to turn the undercover operation into the focal point of this case.  Inevitably, doing so will distract the juror's attention away from the evidence that is probative of what the jury must decide, and invite the jury to ponder policy differences between investigative agencies that are not properly before it.  In short, the defendant would undeniably welcome a sideshow where the attention deviates to investigative best practices and overlooks the evidence of the defendant's crimes.

Naturally, given the government's limited use of the evidence collected from the undercover operation, it played a *de minimis* role in the first trial given the breadth of the charged conspiracy.  Additionally, the Court previously rejected attempts to attack the undercover investigation before based on its limited probative value. ECF No. 192 at 19 ("[O]n the present record, the Court concludes that the risk of presenting the proffered evidence to the jury will confuse the issues substantially outweighs the probative value of that evidence.") and ECF No. 200 at 3 ("Jin may not introduce, elicit, or cross-examine any witness about the content of any statements from the undercover investigation that is not admitted during the Government's case-in-chief.")  The proffered expert testimony is even more deserving of a Rule 403 exclusion.

The Court's previous rulings indicate that the defendant will have a limited leash to explore the undercover operation.  *Id.*  Even if the Court expands the defendant's ability to impeach the

---

[2] The government believes the Court should allow Exhibit 404 without further "opening the door."  That said, if the government proceeds as it did last time—by *only* using the undercover evidence to identify the defendant—the Court should invite the defendant to proffer a basis for how his proposed "impeachment" could possibly be probative of the government's mere identification evidence.

undercover investigation, it should limit such impeachment to cross-examination. When the government rests—likely after two weeks of trial—the Court should not permit the defendant to raise an immaterial policy debate during his case in chief. The Court is assembling a jury to weigh the evidence of the defendant's guilt, not the merits of bureaucratic back-room regulatory and policy decisions on investigative techniques. At bottom, the FBI policy on undercover operations is a waste of time and not relevant to the issues at hand.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court reject the defendant's efforts to introduce this irrelevant evidence and deny the defendant's efforts to have Mr. Clarke offer his view on proper procedures in undercover investigations.

Respectfully submitted,

JOHN A. EISENBERG
ASSISTANT ATTORNEY GENERAL
FOR NATIONAL SECURITY

By:  /s/ Eli Ross
Eli Ross (IL 6321411)
Christopher Magnani (MD 1512160075)
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Telephone: 202-616-5447
Eli.Ross2@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Eli Ross
Eli Ross
Trial Attorney

Date: March 16, 2026