UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | |
| | } | **Criminal No. 23-CR-91-CKK** |
| **v.** | } | |
| | } | |
| **GUANGHUA JIN,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |
| | } | |

## <u>DEFENDANT'S MOTION FOR A MISTRIAL</u>

Defendant Guanghua Jin, through counsel, respectfully moves the Court to declare a mistrial on account of jury deadlock and the coercive effects of further deliberations in this trial, which has extended well beyond the April 24, 2026 deadline originally communicated to the jury.

## BACKGROUND

After approximately two weeks of testimony in this trial, the jury began deliberations on April 13, 2026. Three days later, on April 16, 2026, the Court replaced one juror, who reported a health issue, with an alternate juror, and instructed the jury to begin deliberations anew.

On the fourth day of (renewed) deliberations, on April 21, 2026 at 2:02 PM, the Court received a jury note indicating deadlock. The note stated that: "we have reached an impass (sic) in deliberations and continue to have <u>concerns on the validity of evidence</u> and want direction from the court on how to continue." (emphasis added). At this point, the jury had already deliberated for 16 hours with the alternate juror (excluding the first three days). In response, the Court instructed the jury to continue deliberating.

Two days later, on April 23, 2026 at 11:44 AM, the Court received another jury note again indicating deadlock. The note stated: "[w]e have reached an impass (sic). After your last response

1

on Tuesday we have continued to deliberate at length and have tried our best to make progress.  It is not a matter of needing more time to discuss there is a fundamental gap that we as a jury cannot move past. We have tried our best but are unable to move forward from here."  (emphasis added).  Upon receiving this second note, the defense orally moved for a mistrial, which the Court denied.  Instead, the Court discharged the jury and ordered a recess until the following Monday.

When the jury returned the following Monday, on the morning of April 27, 2026, the Court delivered a *Thomas* instruction and told the jury to continue deliberating.  The jury then deliberated for another full day.  The next day, on April 28, 2026, the jury sent three notes to the Court in rapid succession.  Each note, though written by different jurors, was signed by the foreperson.  Each note also indicated deadlock.

The first note, at 9:52 AM, stated that one juror is experiencing financial hardship and health problems as a result of lengthy deliberations.  The juror stated that she is in danger of losing her health insurance as a result of being effectively unemployed for the past five weeks, and further stated that "the stress of this situation is causing [her] blood sugar levels to rise to unhealthy levels."  The juror also noted that "this difficult situation"—apparently referring to the length of deliberations--"does not have an end in site (sic)."

The second note, at 10:31 AM, repeated the sentiment that the length of deliberations is causing financial hardship, noting that the juror has "not received any paycheck since starting the jury selection" (over five weeks ago).  The second note also expressed continued deadlock and strongly implied that continued deliberations have not been productive, stating that "[w]e are debating the instructions including definitions of basic words" and adding that "[s]everal [jurors] have not changed their stance since deliberations began."

The third note, at 11:25 AM, explicitly stated that "[t]he deliberation process has met a standstill." This note, like the other two, also raised financial hardship as an issue with continued deliberations, stating that the juror has incurred over $2,000 in transportation expenses, and that the Court's compensation will offset only half of that amount. The note concluded by asking the Court to "please consider our release."

## ARGUMENT

At this juncture, given the repeated notes from the jury indicating deadlock, and the explicit statements of financial and medical hardship by multiple jurors, we respectfully submit that continued deliberations will be unproductive. Any guilty verdict produced under such conditions will be the effect of coercion, and this Court should declare a mistrial.

It is axiomatic that "trial judges may not coerce a verdict." *United States v. Harris*, 491 F.3d 440, 451 (D.C. Cir. 2007)(quoting *Lowenfield v. Phelps,* 484 U.S. 231, 241, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)). Here, there are multiple reasons why continued deliberations ~~has~~ have been and will continue to be coercive.

**A. It is coercive to require the jury to continue deliberating for days after multiple notes indicating deadlock.**

Juror coercion "typically arises when the jury, having been unable to agree, is sent back by the judge for further deliberations and the judge's instruction in sending the jury back had a 'possibly coercive effect." *United States v. Lloyd*, 515 F.3d 1297, 1302 (D.C. Cir. 2008)(internal quotations and citations omitted); *see also United States v. Armstead*, 116 F.4th 519, 526 (D.C. Cir. 2024)("In deadlock cases, for instance, an aggressive instruction to continue deliberating may suggest that holdout jurors should abandon their honestly held positions.")

However, juror coercion may occur even where the Court does not use any inherently coercive language, but simply ignores jury reports of deadlock. In *United States v. Mejia*, for

instance, the Second Circuit reversed a trial court for "its failure to respond to the report of deadlock" because it "in effect directed the jury to continue deliberations…[and] may have induced unanimity." 356 F.3d 470, 477 (2d Cir. 2004)(internal quotation marks omitted). In that case, the jury had only been deadlocked for three days, had repeatedly sent deadlock notes to the judge, and had received supplementary instruction encouraging unanimity. The D.C. Circuit, reviewing the facts of the *Mejia* case, concluded that it represented an "extreme" situation. *United states v. Harris*, 491 F.3d 440, 451 (D.C. Cir. 2007)(noting that the facts in *Mejia* are "much more extreme than those in the instant case.")

In this case, defense counsel estimates that the jury has already deliberated for well over 40 hours (after the alternate juror was added).[1] This is an extraordinary length of time for deliberations in a two-week trial. *Cf. United States v. Driscoll*, 984 F.3d 103, 113 (finding that district court's use of Red Book 2.601(I), the standard initial instruction, was coercive after 16 hours of deliberations in a 4-week trial). The jury has repeatedly sent notes indicating deadlock, which now totals five. Moreover, the notes indicate that some jurors have not changed positions since the beginning of deliberations more than two weeks ago. Multiple jurors have also expressed serious concerns with financial hardship due to the length of deliberations. Requiring the jury to continue deliberating under these circumstances would be unlikely to produce a verdict, but even if one is produced, it would likely be the result of the jury feeling that it is coerced to produce~~ed~~ a unanimous verdict by the Court.

**B. It is coercive to require continued deliberations after the jury has reported concerns about the "validity of the evidence."**

---

[1] The Court calculated that the jury had deliberated for 16 hours as of April 21, 2026 at approximately 2:00 PM. Since then, the jury has deliberated for 3 more hours on 4/21, a full day on 4/22, a half day on 4/23, a full day on 4/27, and nearly a full day on 4/28.

Independent of the length of deliberations, it is also coercive to require the jury to continue to deliberate where the jury's inability to reach the verdict is apparently the result of diverging views on the strength of the prosecution's case.  In *United v. Jenkins*, for example, the Supreme Court summarily found that a trial judge had coerced a verdict where the district court told the jury that "[y]ou have got to reach a decision in this case" when, "[s]lighty more than two hours after the jury retired to deliberate, the jury sent a note to the trial judge advising that it had been unable to agree upon a verdict 'on both counts because of insufficient evidence.'" *Jenkins v. United States*, 380 U.S. 445, 446, 85 S. Ct. 1059, 1060, 13 L. Ed. 2d 957 (1965).

In this case, the jury explicitly told the Court that even after sixteen hours of deliberations, it was at an impasse because some members of the jury continued to have "concerns on the validity of evidence."  Interpreted most naturally, this means that some jurors believe that the prosecution's evidence does not rise to the level of proof beyond a reasonable doubt.  Forcing the jury to continue deliberating in this posture is effectively coercing those jurors to change their views about the "validity of the evidence."

### C. It is coercive to invite the jury to ask for help from the Court to resolve disagreements when the jury has not indicated confusion about the governing law.

Finally, a separate reason to declare a mistrial in this case is because this Court has improperly attempted to insert itself into the deliberations process by offering assistance and soliciting questions "regarding the instructions" *sua sponte*, without any pending questions from the jury about the instructions.

On April 28, 2026, at the government's suggestion (and over defense objection), the Court sent a response to the jury stating: "one of the notes indicated that you were debating the legal instructions and there were questions being raised about the definition about some of the words in the instructions.  Would assistance from the Court regarding the instruction assist you in reaching

a verdict in this case?  If so, please send me a note identifying those instructions or the words of the instructions for which you are seeking further clarification."

But in fact, the jury notes sent that day did not indicate that the jury had any questions about the instructions.  The jury note that prompted the Court's response simply stated: "We are debating the instructions including definitions of basic words within the instructions."  That is not a question, nor an indication that the jury is confused with the instructions.  By offering to answer questions for the jury, the Court is effectively inviting one side of the jury to craft arguments that can be used to persuade the other side to change their views.

In *United States v. Yarborough*, the D.C. Circuit reversed a conviction where the trial court sent an instruction asking the jurors to "identify where [the jury] agree and where [they] disagree…and told them to consider identifying for the judge any questions [they] have about the evidence or the instructions for which [they] would like to have assistance from the Court or from the lawyers."  400 F.3d 17, 21 (D.C. Cir. 2005).  The D.C. Circuit reasoned that such an invitation to answer questions from the jury "openly invites an intrusion into the basic functions of the jury and does so in a manner that is rife with the potential for coercion."  *Id.*

In this case, the defense submits that if the jury sends notes the next day with questions about the evidence or the law, the Court should refrain from answering those questions, because such questions would have been prompted by this Court's unsolicited offer of assistance to reach a verdict.  Any response from the Court would be coercive of the side that did not ask those questions.  But even if the Court does not answer those questions, the fact that the Court offered its assistance to the jury is coercive by leading the minority in the jury to believe that (1) the Court is willing to help the majority with reaching and verdict, and (2) the jury cannot leave unless and until they reach a verdict in this case.

**CONCLUSION**

The Court should grant the defendant's motion and declare a mistrial.

By: /s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
D.C. Bar No. 979785
Gorokhov P.C.
Burnham & Gorokhov
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing motion via ECF which automatically sends a copy to all counsel of record.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.

8